Mark R. Thierman Cal SB# 72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500

Scott Miller, SBN 230322
**LAW OFFICES OF SCOTT MILLER, APC**
16133 Ventura Blvd. #1200
Encino, CA 91436
Tel: (818) 788-8081

Steven L. Miller, SBN 106023
**LAW OFFICES OF STEVEN L. MILLER, APC**
16133 Ventura Blvd. # 1200
Encino, CA 91436
Telephone: (818) 986-8900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FRANCISCO E. SALAZAR, JR., on
behalf of herself, the general public and
as an "aggrieved employee" under the
California Labor Code Private
Attorneys General Act,

      Plaintiff,

      v.

BALLY TOTAL FITNESS and each of
their subsidiaries doing business in
California under such names as
GORILLA SPORTS, PINNACLE
FITNESS and CRUNCH FITNESS and
DOES 1 through 50 inclusive,

      Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**No. CV 08-00175 JSW**

**Plaintiff's Notice of Motion and Motion to Strike Defendant's 30th and 31st (paragraphs 88 and 89 of Answer) Affirmative Defenses**

Hearing Date: August 15, 2008
Hearing Time: 9:00 a.m.
Courtroom: 2
Honorable Judge White

1
2          PLEASE TAKE NOTICE THAT ON August 15, 2008 at 9:00 a.m. in
3   Courtroom 2, or as soon thereafter as it may be heard by Honorable Judge White,
4
5   Plaintiff will move and hereby does move for an order striking Defendant's 30th and
6   31st Affirmative Defenses in its answer.
7          This motion is based upon the attached Memorandum of Points and Authorities
8
9   filed herewith, the declaration of Mark R. Thierman, and all pleadings and documents
10  on file in this case.
11         Executed this 3rd day of June, 2008 at Reno, Nevada.
12
13
14                              By:  /s/Mark R. Thierman
15                                   Mark R. Thierman
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Mark R. Thierman Cal SB# 72913
2  **THIERMAN LAW FIRM, P.C.**
   7287 Lakeside Drive
3  Reno, Nevada  89511
   Tel: (775) 284-1500
4

5  Scott Miller, SBN 230322
   **LAW OFFICES OF SCOTT MILLER, APC**
6  16133 Ventura Blvd. #1200
   Encino, CA 91436
7  Tel: (818) 788-8081

8  Steven L. Miller, SBN 106023
   **LAW OFFICES OF STEVEN L. MILLER, APC**
9  16133 Ventura Blvd. # 1200
   Encino, CA  91436
10 Telephone: (818) 986-8900

11 Attorneys for Plaintiffs

12              UNITED STATES DISTRICT COURT
13            NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
14

15 FRANCISCO E. SALAZAR, JR., on )    **No. CV 08-00175 JSW**
   behalf of herself, the general public and )
16 as an "aggrieved employee" under the )
17 California Labor Code Private )
   Attorneys General Act, )
18                            )              **Memorandum of Points and**
                              )              **Authorities in Support of Plaintiff's**
19        Plaintiff,          )              **Motion to Strike Defendant's 30th**
                              )              **and 31st  (paragraphs 88 and 89 of**
20     v.                     )              **Answer) Affirmative Defenses**
                              )
21                            )
   BALLY TOTAL FITNESS and each of )         Hearing Date:  August 15, 2008
22 their subsidiaries doing business in )     Hearing Time: 9:00 a.m.
23 California under such names as )           Courtroom:  2
   GORILLA SPORTS, PINNACLE )                 Honorable Judge White
24 FITNESS and CRUNCH FITNESS and )
   DOES 1 through 50 inclusive, )
25                            )
26        Defendants.         )
                              )
27 _____ )

28

1

1
2

**TABLE OF CONTENTS**

3

INTRODUCTION ........................................................................................................1

4

STATEMENT OF FACTS .........................................................................................1

5
6

ARGUMENT ...............................................................................................................3

7    I.  THE NORRIS LAGUARDIA ACT, 29 USC §102&3 DECLARES WAIVERS OF
        CLASS ACTION WAGE CLAIMS UNENFORCABLE AND DEPRIVES THIS
8       COURT JURISDICTION TO ORDER PLAINTIFF TO ARBITRATE ONLY ITS
9       INDIVIDUAL CLAIMS ........................................................................................3

10   II.  AN EMPLOYEE'S CLASS ACTION OVER THE METHOD OF PAYMENT OF
         WAGES FOR ALL SIMILARLY SITUATED CALIFORNIA EMPLOYEES IS
11       PER SE PROTECTED CONCERTED ACTIVITY UNDER THE NORRIS
12       LAGUARDIA ACT ..............................................................................................7

13   III.  THE COURT SHOULD NOT ENFORCE AN UNLAWFUL WAIVER OF
14        PROTECTED CONCERTED ACTIVITY EVEN IN THE CONTEXT OF A
15        PETITION TO COMPEL ARBITRATION .........................................................8

16   CONCLUSION ...........................................................................................................13

17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

3

Cases

4

*American Fedn. Of Labor v. American Sash & Door Co.*, 335 U.S. 538, 541 (1949)..................................................................................................9

5

6

*Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 495 (1948) .....................................5

7

*Brighton Retail, Inc*., 2006 NLRB LEXIS 233 (2006)...................................................7

8

*Carlisle Lumber Co*., etc., 2 NLRB 248, 265-266 (1936)...........................................10

9

*Cont'l Airlines, Inc. v. E. Pilots Merger Comm., Inc. (In re Cont'l Airlines, Inc.),* 484 F.3d 173, 185 (3d Cir. Del. 2007) is disting...................................................5

10

11

*Discover Bank v. Superior Court,* 36 Cal. 4th 148 (2005) ...........................................10

12

*Don Brentner Trucking Co*., 232 NLRB 428, 434 (1977)............................................10

13

*Eastex, Inc. v. NLRB,* 437 U.S. 556, 565-66, 57 L. Ed. 2d 428, 98 S. Ct. 2505 (1978)....................................................................................................................7

14

*Eddyleon Chocolate Co.*, 301 NLRB 887 (1991)........................................................11

15

*Erie Railroad Co. v. Williams*, 233 U.S. 685, 698, 702-705 (1914) .............................2

16

17

*First Legal Support Services, LLC( Warehouse Union Local 6, International Longshore and Warehousemen's Union, AFL-CIO)*, 342 N.L.R.B. 350, 362-363 (2004) ......................................................................................................9

18

19

*Fleming v. Dollar Tree Stores Inc*., 2006 U.S. Dist. LEXIS 67749, 11 Wage & Hour Cas. 2d (BNA) 1633 (N.D. Cal. Sept. 15, 2006) .........................................2

20

21

*Freund Baking Co. v. NLRB*, 334 U.S. App. D.C. 141 (D.C. Cir. 1999)......................7

22

*Gentry v. Superior Court (Circuit City)*, 2007 Cal. LEXIS 93786 (Aug. 30, 2007) ...........................................................................................................passim

23

24

*Harco Trucking, LLC and Scott Wood*, 2005 NLRB LEXIS 134, 176 L.R.R.M. 1545; 2004-5 NLRB Dec. (CCH) P16,882; 344 NLRB No. 56 (2005)..............8

25

*Hoffman Air & Filtration Sys.*, 316 NLRB 353 (1995)...............................................10

26

*Host International*, 290 NLRB 442, 443 (1988) ...........................................................8

27

*Knoxville Iron Co. v. Harbinson*, 183 U.S. 13, 20 (1901)............................................2

28

*Lauf v. E. G. Shinner & Co.,* 303 U.S. 323, 329 (1938).................................................5

*New Orleans S.S. Asso. v. General Longshore Workers*, 626 F.2d 455, 464 (5th Cir. 1980)......................................................................................................6

*Pratt Towers, Inc.,* 338 NLRB 61 (2002) ...................................................11

*Ra-Rich Manufacturing Corporation,* 120 NLRB 503, 506-7 (1958) ........10

*Roehl Transport, Inc. and Jeffery L. Swanson* 2004 NLRB LEXIS 619 (NLRB 2004) ...........................................................................................................11

*Solis v. Regis Corp*., 13 Wage & Hour Cas. 2d (BNA) 192 (N.D. Cal 2007)...............2

*Solis v. Regis Corp*., 2006 U.S. Dist. LEXIS 77327 ......................................2

*Superior Sprinkler, Inc*., 227 NLRB 204 (1976); Karsh's Bakery, 273 NLRB 1131 (1984)...............................................................................................10

*Trinity Trucking & Materials Corp,.* 221 NLRB 364 (1975)....................7, 8

Statutes

California's Labor Code Section 212 ..............................................................1

Federal Arbitration Act, 9 U.S.C. § 2 ..........................................................10

NORRIS LAGUARDIA ACT, 29 USC §102&3.........................................1, 3

Norris-LaGuardia Act, 29 U. S. C. § 113 (c)..................................................5

Norris-LaGuardia Act, 29 U.S.C. §§ 101-115.................................................5

Section 2 of the Norris LaGuardia Act, 29 U.S.C. § 102 ...........................1, 4

Section 3 of the Norris LaGuardia Act, 29 U.S.C. §103 ............................1, 6

section 8(d) of the National Labor Relations Act, 29 U.S.C. 158(d) ............7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

In addition to the general grounds of unconscionability of anti-class action arbitration agreements under the California Supreme Court opinion in ***Gentry v. Superior Court (Circuit City)***, 2007 Cal. LEXIS 93786 (Aug. 30, 2007), Defendant's anti-class action arbitration clause in an employment agreement is a species of "yellow dog" contact when applied to a wage claim because it requires employees to abandon group or concerted activities for the purpose of mutual aid or protection, a clear violation of the social policy  provisions  Section 2 of the Norris LaGuardia Act, 29 U.S.C. § 102.   Interpreting similar language in the context of an unfair labor practice, the National Labor Relations Board has repeatedly held anti-class action agreements are an infringement of protected concerted activities.   Therefore, by Section 3 of the Norris LaGuardia Act, 29 U.S.C. §103, a federal District court lacks jurisdiction to enforce any agreement to reframe from bringing a group, collective wage claim, including one that requires arbitration of all claims on an individual basis only.  Since Defendant's 30th and 31st Affirmative Defense (paragraphs 88 and 89 of Defendant's Answer) is to demand the Court enforce its anti-class action agreement against a claim over the method of payment of wages, the Court should dismiss the affirmative Defense as a matter of law.

## STATEMENT OF FACTS

Plaintiff brought a class action lawsuit over the method of payment of wages under California's Labor Code Section 212, a statute which basically requires that the

employer pay wages in cash unless the employer pays with a check that has the name and address on its face where the check can be cashed immediately for cash without discount or delay within this State.  Such state regulation of the method of payment of wages has been upheld by the United States Supreme Court in *Erie Railroad Co. v. Williams*, 233 U.S. 685, 698, 702-705 (1914), and *Knoxville Iron Co. v. Harbinson*, 183 U.S. 13, 20 (1901).  In *Erie Railroad*, the New York legislature mandated cash payments for its workers with a statute virtually identical to California Labor Code 212.   More recently, California's Labor Code 212 was specifically upheld by Judge Breyer of this Court in the case of  *Solis v. Regis Corp*., 13 Wage & Hour Cas. 2d (BNA) 192 (N.D. Cal 2007) and *Solis v. Regis Corp***.,** 2006 U.S. Dist. LEXIS 77327 and Judge Jenkins in *Fleming v. Dollar Tree Stores Inc*., 2006 U.S. Dist. LEXIS 67749, 11 Wage & Hour Cas. 2d (BNA) 1633 (N.D. Cal. Sept. 15, 2006).  Plaintiff was an employee of Defendant who claims he was adversely effected by the failure of the employer to follow Labor Code 212, and brings this action on behalf of himself and all other California employees who were paid with paychecks that did not conform to Labor Code 212.  Labor Code 212 states:

Defendant's 30th and 31st Affirmative Defense (paragraphs 88 and 89 of Defendant's Answer) are not that Plaintiff has waived this cause of action for himself, but that Plaintiff has waived its right to bring a class action on behalf of other employees by signing an employment agreement which states at the introductory paragraph, paragraph 8.4 and paragraph 26 that "BALLY TOTAL FITNESS

2

CORPORATION (hereinafter referred to as "Bally" or the "employer") considers it in everyone's best interest that all employment-related disputes be submitted exclusively to final and binding arbitration, pursuant to the Bally Employment Dispute Resolution Procedure ("EDRP"), employee acknowledges … that he/she is obligated to submit all covered disputes to mediation and/or binding arbitration pursuant to this EDRP, that employee is waiving his/her right to a jury trial based on covered disputes under this EDRP ... that all disputes related to the Employee, and <u>no disputes relating to any other employee, shall be submitted in the same proceeding</u> to the Arbitrator selected pursuant to this Article Eight." See, Bally Total Fitness Corporation Employment Dispute Resolution Procedure "EDRP" attached as Exhibit A to the Declaration of Mark R. Thierman filed in support herewith. Defendant requests this Court to order (an affirmative injunction) Plaintiff to arbitrate its individual claims only. Since Defendant's interpretation means the agreement is a contract with the employee to abandon group or concerted action, such as class action litigation over wages, Plaintiff asserts that such a contract is unlawful and Defendant's 30th and 31st Affirmative Defenses should be stricken.

**ARGUMENT**

I.      **THE NORRIS LAGUARDIA ACT, 29 USC §102&3 DECLARES WAIVERS OF CLASS ACTION WAGE CLAIMS UNENFORCABLE AND DEPRIVES THIS COURT JURISDICTION TO ORDER PLAINTIFF TO ARBITRATE ONLY ITS INDIVIDUAL CLAIMS**

An employee cannot waive its right to bring a collective or class action on behalf of himself and all others similarly situated California employees and any such waiver constitutes a "yellow dog" contract, i.e. an agreement by an employee to not engage in collective concerted activity, which is declared a violation of social policy by Section 2 of the Norris LaGuardia Act, 29 U.S.C. § 102. Section 2 [29 USCS § 102] states, with emphasis supplied:

> Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or *in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection*; therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States are hereby enacted.

Here, the concerted activity is a class action lawsuit over wages. The Defendant says the agreement means the employee has waived its right to engage in class actions in exchange for the consideration of an arbitration provision. But the statute does not consider the validity of the consideration supporting the agreement. The statute only concerns the object of the agreement. If the agreement requires the

employee to abandon his or her group claim, then it violates section 2 of the Norris LaGuardia Act.

In **Lauf v. E. G. Shinner & Co.,** 303 U.S. 323, 329 (1938),  the United States Supreme court said that the "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee."  In this case, the dispute between the employer and the employee over cashing his pay check constitutes a "labor dispute" over which there can be no agreement to reframe from collective action without findings of physical violence or other exceptions not present here. Norris-LaGuardia Act, 29 U. S. C. § 113 (c).[1]  And in the case of **Bay Ridge Operating Co. v. Aaron,** 334 U.S. 446, 495 (1948), the Supreme Court refused to defer to arbitration over the issue of "regular rate" under the Fair Labor Standards Act because this was a statutory right not left to the parties to define.

In addition, Defendant seeks an order from this Court compelling Plaintiff to abandon its class action and engage in individual arbitration.  But The Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, was adopted in 1932 to curb federal courts in

---

[1] **Cont'l Airlines, Inc. v. E. Pilots Merger Comm., Inc. (In re Cont'l Airlines, Inc.),** 484 F.3d 173, 185 (3d Cir. Del. 2007) is distinguished on the grounds that case involved claims by one group of employees against another group of employees rather than the employer, who was discharged from the contract by bankruptcy.   Here, the employees' dispute is with the employer.

their use of injunctions in labor disputes.  *New Orleans S.S. Asso. v. General Longshore Workers*, 626 F.2d 455, 464 (5th Cir. 1980).  this Court lacks jurisdiction to enter the Defendant's requested order pursuant to Section 3 of the Norris LaGuardia Act, 29 U.S.C. §103.  Section 4 of the Norris LaGuardia Act prohibits the Court from enjoining employee conduct, while Section 3 says the Court lacks jurisdiction to enforce or otherwise grant any "legal or equitable relief" based upon a contract that violates Section 2 of the Act.  And even without referring to Section 2, Section 3 of the Norris LaGuardia Act says that yellow dog contracts are unenforceable and contrary to social policy.  Section 3 states:

> Any undertaking or promise, such as is described in this section, or any other undertaking or promise in conflict with the public policy declared in section 2 of this Act [29 USCS § 102], is hereby declared to be contrary to the public policy of the United States, shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court, including specifically the following:
>
> Every undertaking or promise hereafter made, whether written or oral, express or implied, constituting or contained in any contract or agreement of hiring or employment between any individual, firm, company, association, or corporation, and any employee or prospective employee of the same, whereby
>    (a) Either party to such contract or agreement undertakes or promises not to join, become, or remain a member of any labor organization or of any employer organization; or
>    (b) Either party to such contract or agreement undertakes or promises that he will withdraw from an employment relation in the event that he joins, becomes, or remains a member of any labor organization or of any employer organization.

II.    **AN EMPLOYEE'S CLASS ACTION OVER THE METHOD OF PAYMENT OF WAGES FOR ALL SIMILARLY SITUATED CALIFORNIA EMPLOYEES IS PER SE PROTECTED CONCERTED ACTIVITY UNDER THE NORRIS LAGUARDIA ACT**

Section 2 parallels and uses the same language as Section 7 of the National Labor Relations Act.  The  right to engage in other mutual aid and protection is also protected under section 8(d) of the National Labor Relations Act, 29 U.S.C. 158(d). The definition of "other concerted activities for the purpose of . . . other mutual aid or protection" in 29 U.S.C. § 157 and 158 includes a class action for overtime pay, unlawful employee pay deductions and every other employment type of class action. The National Labor Relations Board and the federal courts have repeatedly held that the filing of a civil action by groups of employees seeking to improve their working conditions is protected concerted activity under the NRLA. *(See, e.g., **Trinity Trucking & Materials Corp***,. 221 NLRB 364 (1975).   Employee discussions about a possible class action for employment discrimination was held to be protected concerted activity in ***Brighton Retail, Inc***., 2006 NLRB LEXIS 233 (2006).  As stated in ***Freund Baking Co. v. NLRB***, 334 U.S. App. D.C. 141 (D.C. Cir. 1999):

> No party to this case has expressed any doubt that a union may, pursuant to § 7, file a lawsuit in its representative capacity. Cf. ***Eastex, Inc. v. NLRB***, 437 U.S. 556, 565-66, 57 L. Ed. 2d 428, 98 S. Ct. 2505 (1978) ("It has been held [by the lower courts and by the Board] that the 'mutual aid or protection' clause protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums").

In the case of **Harco Trucking, LLC and Scott Wood,** 2005 NLRB LEXIS 134, 176 L.R.R.M. 1545; 2004-5 NLRB Dec. (CCH) P16,882; 344 NLRB No. 56 (2005)[2] the charging party was refused hire because he was a named plaintiff in a class action lawsuit over failure to pay prevailing wages against another employer.  Administrative Law Judge Jay R. Pollak issued an opinion after trial which was upheld on appeal by the NLRB that the refusal to hire anyone because of their participation in a class action was an unfair labor practice, violating both Section 8(a)(1) because of the restraint of the agreement itself and violating Section 8(a)(3) because of the refusal to hire for an unlawful motive.  As ALJ Pollack stated in his opinion:

> Pursuant to Section 7 of the Act, employees have the right to engage in concerted activities for their mutual aid and protection. Accordingly, an employer may not, without violating Section 8(a)(1) of the Act, discipline or otherwise threaten, restrain,  or coerce employees because they engage in protected concerted activities.  [¶]  In regard to the Section 7 rights of employees filing civil actions against their employer, the Board has held that the filing of a civil action by a group of employees is protected activity unless done with malice or in bad faith. See **Trinity Trucking & Materials Corp**., 221 NLRB 364, 365 (1975); **Host International**, 290 NLRB 442, 443 (1988).

III.    **THE COURT SHOULD NOT ENFORCE AN UNLAWFUL WAIVER OF PROTECTED CONCERTED ACTIVITY EVEN IN THE CONTEXT OF A PETITION TO COMPEL ARBITRATION**

An agreement to not engage in protected concerted activity is generally considered a type of "yellow dog contract" albeit  a modern version because it is often not limited to union activity but any collective wage or employment claim.  See,

---
[2] The author represented the charging party in that case.

*American Fedn. Of Labor v. American Sash & Door Co.*, 335 U.S. 538, 541 (1949)

defining "yellow dog contract."   While usually thought of as anti-union membership

agreements, a Yellow Dog Contract includes all employer-employee agreements that

inhibit employees from exercising their rights under Section 7 of the National Labor

Relations Act.  *First Legal Support Services, LLC( Warehouse Union Local 6,*

*International Longshore and Warehousemen's Union, AFL-CIO)*, 342 N.L.R.B.

350, 362-363 (2004)(holding an agreement to join an association of independent

contractors which attests to certain non-employee status provisions tantamount to

signing an agreement not to be an employee protected by the NLRA, and thus, an

unlawful yellow dog contract.  ALJ Kennedy's opinion, adopted by the Board in *First*

*Legal Support Services, supra,* reviews the background of yellow dog contracts and

applies the principles to a modern day contract where the employees were forced to

state that they were really independent contractors, thus ineligible for union

membership or other protections of the National Labor Relations Act.  As ALJ

Kennedy states:

> By requiring the employees to sign the NICA agreements, which
> stripped them of the right to be employees under the Act, and
> therefore the right to organize as granted by § 7 of the Act,
> Respondent was essentially forcing them to sign an old-fashioned
> "yellow dog" contract. "Yellow dog" contracts were lawfully used
> from the late 1880s until 1932. These contracts of employment
> prohibited employees from joining labor unions, and made
> continued employment conditional on the employees' refraining
> from union activity. Such contracts were deemed pernicious, and a
> common source of labor strife, since a fundamental cause of labor
> disputes was, and still is, the refusal of employers to recognize
> labor unions. In 1932, the Norris-LaGuardia Act declared such

1    contracts to be unenforceable in the federal courts.

2    They were also a principal factor which Congress considered when
     passing the Wagner Act (the 1935 predecessor to the National
3    Labor Relations Act). While the "yellow dog" contract was not
     declared illegal per se by the Wagner Act, Section 7 of the Wagner
4    Act for the first time gave employees the specific right to engage in
     union activity, making it an unfair labor practice to condition
5    employment on the relinquishment of that right. Thus, de facto in
     1935, the "yellow dog" contract became and has remained illegal
6    as a violation of first, § 8(1), and as of 1947, § 8(a)(1). Similarly,
     insistence  upon such a contract became a hire and tenure violation
7    under § 8(3), now § 8(a)(3). [footnote:  See, e.g., **Carlisle Lumber
     Co**., etc., 2 NLRB 248, 265-266 (1936), enfd. 94 F.2d 138 (9th Cir.
8    1937), cert. den. 304 U.S. 575 (1938). (Requiring signing of
     yellow-dog contract as condition of returning to work after strike.)]
9

10   … In essence, the NICA agreement is nothing more than a yellow
     dog contract in disguise. Instead of forcing the employee to
11   affirmatively forswear unionization, the NICA agreements simply
     redefined these employees as something other than employees --
12   independent contractors who by definition cannot enjoy the
     protection of the Act. The result was the same, employees were
13   prohibited by agreement from engaging in union organizing
     activity. They were forced to relinquish the rights guaranteed them
14   by § 7 of the Act. **Don Brentner Trucking Co**., 232 NLRB 428,
     434 (1977) (forcing employees to sign individual contracts
15   requiring them to abandon the union); see generally **Ra-Rich
     Manufacturing Corporation,** 120 NLRB 503, 506-7 (1958), enfd.
16   276 F.2d 451 (C.A. 2, 1960); **Superior Sprinkler, Inc**., 227 NLRB
     204 (1976); Karsh's Bakery, 273 NLRB 1131 (1984); **Hoffman
17   Air & Filtration Sys.**, 316 NLRB 353 (1995), and many others.
     Nothing could be more pervasive or permanent. Moreover, the
18   perniciousness of such an approach perceived in the 1930s remains
     just as inimical to employee rights today as it did then. This is a
19   bell that cannot be unrung.

20

21

22

23       Under the Federal Arbitration Act, 9 U.S.C. § 2, an arbitration provision "shall

24   be valid, irrevocable, and enforceable" unless there is a ground for revocation of the

25   agreement to arbitrate such as the defense of unconscionability.  **Discover Bank v.**

26   **Superior Court,** 36 Cal. 4th 148 (2005)(Federal law does not preempt

27   unconscionability defense to class action waiver in arbitration provision).  **Gentry v.**

28

***Superior Court (Circuit City)***, 2007 Cal. LEXIS 9376 (Aug. 30, 2007).  Conditioning

employment on an employee's promise to abandon protected activity is

unconscionable because it is insistence upon an unlawful term or condition. See, e.g.,

***Pratt Towers, Inc.,*** 338 NLRB 61 (2002), ***Roehl Transport, Inc. and Jeffery L.***

***Swanson*** 2004 NLRB LEXIS 619 (NLRB 2004).   As the Board stated in ***Eddyleon***

***Chocolate Co.***, 301 NLRB 887 (1991)

> Even before passage of the Wagner Act, Congress enacted broad
> prohibitions against yellow-dog contracts. It is axiomatic that such
> agreements and their solicitation are barred under the 8(a)(1)
> prohibition of coercion directed at employee exercise of rights
> protected by Section 7. [Footnote omitted]

The Court in ***Gentry*** stated that the legal rights to minimum wage and overtime

compensation are *unwaivable* rights. The Court further observed that although wage

and hour claims *may* be raised in an administrative action before the Department of

Labor Standards Enforcement, the private civil action is a statutorily protected form of

redress.  ***Gentry*** at 456.  Further in ***Gentry***, the California Supreme Court reasoned

that the principle that a class action ban may be invalid where it interferes with the

enforcement of unwaivable statutory rights is an "arbitration-neutral rule:  it applies to

class waivers in arbitration and non-arbitration alike."  ***Gentry*** at 465.  The Court

stated, "we also continue to reject Circuit City's suggestion that class actions are

imcompatible with arbitration and that compelling class arbitration in the appropriate

case violates the FAA."  ***Ibid***.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, the ***Gentry*** decision made clear that the circumstances under which Circuit City got Gentry to agree to arbitration in 1995 constituted procedural unconscionability.  The Court stated:  "We conclude that the Court of Appeal erred in finding the present agreement free of procedural unconscionability."  (42 Cal.4th at 470).  The Court explained:

> Given the inequality between employer and employee and the economic power that the former wields over the latter [citation], it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement.  The lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability.  ***Id*** at 472.

In the instant action, the situation agreement demonstrates greater unconscionability of the agreement at issue in ***Gentry*** in that the employee in this case was not even provided an opportunity to opt out of the arbitration agreement.  The agreement itself provides that "THIS EDRP IS A TERM AND CONDITION OF EMPLOYMENT, AND THEREFORE, THE EMPLOYEE'S EMPLOYMENT OR CONTINUED EMPLOYMENT ON OR AFTER MAY 1, 2002 SHALL BE DEEMED TO BE ACCEPTANCE OF THE EMPLOYER'S OFFICE TO RESOLVE DIFFERENCES OR DISPUTES PURSUANT TO THIS EDRP."  See, Exhibit A to Thierman Dec. filed in support herewith.

This provision in the agreement clearly sets forth that whether the employee agrees with the EDRP or not, the employee's mere continued employment after May

1, 2002 is deemed to be acceptance of this EDRP.  This type of unconscionability is far greater than that set forth in the ***Gentry*** matter, where the employees had a choice whether or not to opt out of the arbitration agreement.

## CONCLUSION

Defendant's 30th and 31st Affirmative Defense (paragraphs 88 and 89 of Defendant's Answer) are a demand that the Court enforce its anti-class action agreement against a claim over the method of payment of wages.  As demonstrated herein, such contract is unlawful and as such, Plaintiff respectfully requests that the Court should dismiss the affirmative Defense as a matter of law.

Date:  June 3, 2008                                    **THIERMAN LAW FIRM**

By: /s/ Mark R. Thierman
      Mark R. Thierman
      Attorneys for Plaintiff
      FRANCISCO SALAZAR JR.

LA:210563.1

13

1  Mark R. Thierman Cal SB# 72913
2  **THIERMAN LAW FIRM, P.C.**
   7287 Lakeside Drive
3  Reno, Nevada  89511
4  Tel: (775) 284-1500

5  Scott Miller, SBN 230322
   **LAW OFFICES OF SCOTT MILLER, APC**
6  16133 Ventura Blvd. #1200
   Encino, CA 91436
7  Tel: (818) 788-8081

8  Steven L. Miller, SBN 106023
   **LAW OFFICES OF STEVEN L. MILLER, APC**
9  16133 Ventura Blvd. # 1200
   Encino, CA  91436
10 Telephone: (818) 986-8900

11 Attorneys for Plaintiffs

12                  UNITED STATES DISTRICT COURT
13                NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
14

15 FRANCISCO E. SALAZAR, JR., on     )   **No. CV 08-00175 JSW**
   behalf of herself, the general public and )
16 as an "aggrieved employee" under the  )
17 California Labor Code Private         )
   Attorneys General Act,                )
18                                       )   **Declaration of Mark R. Thierman In**
                                         )   **Support of Memorandum of Points**
19        Plaintiff,                     )   **and Authorities in Support of**
                                         )   **Plaintiff's Motion to Strike**
20     v.                                )   **Defendant's 30th and 31st**
                                         )   **(paragraphs 88 and 89 of Answer)**
21                                       )   **Affirmative Defenses**
   BALLY TOTAL FITNESS and each of )
22 their subsidiaries doing business in  )
23 California under such names as        )   Hearing Date:  August 15, 2008
   GORILLA SPORTS, PINNACLE           )   Hearing Time: 9:00 a.m.
24 FITNESS and CRUNCH FITNESS and )      Courtroom:  2
25 DOES 1 through 50 inclusive,          )   Honorable Judge White
                                         )
26        Defendants.                    )
27 _____ )

28

                                                                                    1

I, Mark R. Thierman, hereby declare and state:

1.    The following declaration is based upon my own personal observation and knowledge, and if called upon to testify the things contained herein, I could competently so testify.

2.    I am an attorney at law admitted to practice before the Supreme Courts of the states of California and Nevada, all federal district courts located in California and Nevada and the Unites States Court of Appeals for the Ninth Circuit, the Court of Appeals for the District of Columbia and the United States Supreme Court.

3.    I am the attorney for the Plaintiff and have handled this action since its inception.

4.    Attached hereto as Exhibit A is a true and correct copy of Bally Total Fitness Corporation Employment Dispute Resolution Procedure "EDRP".

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of June, 2008 at Reno, Nevada.

By: /s/Mark R. Thierman
Mark R. Thierman

1

EXHIBIT A

## BALLY TOTAL FITNESS CORPORATION
### EMPLOYMENT DISPUTE RESOLUTION PROCEDURE
#### ("EDRP")

BALLY TOTAL FITNESS CORPORATION (hereinafter referred to as "Bally" or the "Employer") considers it in everyone's best interest that all employment-related Disputes be submitted exclusively to final and binding arbitration, pursuant to the Bally Employment Dispute Resolution Procedure ("EDRP"). Bally recognizes that differences may arise between the Employer and the Employee arising out of or relating to the Employee's employment with the Employer, or the termination of that employment, and recognizes that resolution of any differences or Disputes is often time consuming and expensive. The Employer and the Employee (collectively hereinafter referred to as the "Parties") agree to submit, for resolution, as provided in this EDRP, any Covered Disputes, in order to gain the mutual benefit of resolving employment-related disputes in a timely and cost-effective manner. Each Party's promise to resolve Disputes in accordance with the provisions of this EDRP is consideration for the other Party's like promise. Because the employment relationship can be terminated by either the Employee or the Employer for any reason not otherwise prohibited by law, with or without cause, it is agreed that the Employee's employment and/or continued employment is additional consideration to Employee for Employee's promises herein.

THIS EDRP IS A TERM AND CONDITION OF EMPLOYMENT AND, THEREFORE, THE EMPLOYEE'S EMPLOYMENT OR CONTINUED EMPLOYMENT ON OR AFTER MAY 1, 2002 SHALL BE DEEMED TO BE ACCEPTANCE OF THE EMPLOYER'S OFFER TO RESOLVE DIFFERENCES OR DISPUTES PURSUANT TO THIS EDRP.

EMPLOYEES ARE URGED TO REVIEW THIS EDRP IN DETAIL. EMPLOYEES ARE FREE TO SEEK REVIEW OF THIS EDRP BY LEGAL COUNSEL.

1.    Covered Disputes (hereinafter referred to as "Dispute(s)")

1.1    Except as set forth below, the parties agree to submit to this EDRP, any and all Disputes between the parties that arise from or relate to the Employee's employment with the Employer, and that concern legally protected rights for which a court or administrative tribunal, in the absence of this EDRP, would be authorized by law to grant relief. By way of example, the type of claims covered by this EDRP include, but are not limited to, failure to hire, wages or other compensation due, breach of any contract or covenant, express or implied, torts, discrimination and/or harassment, including, but not limited to, discrimination and/or harassment based on race, color, sex, pregnancy, religion, national origin, ancestry, age, marital status, sexual orientation, mental or physical disability (actual or perceived), medical condition, veteran status, or any other protected status under state, local or federal law, benefits, whistleblower, defamation, violation of public policy and violations of any federal, state, or other governmental constitution, statute, ordinance or regulation.

1.2    For purposes of this EDRP, the term "Employer" is understood to include each of the Employer's subsidiary and/or affiliated entities, predecessors and successors, and all of their respective owners, stockholders, directors, officers, employees and pension or benefit plans and their fiduciaries.

1.3    For purposes of this EDRP, the term "Employee" is understood to include current and former employees and applicants for employment.

1.4    The following claims are not Disputes covered by this EDRP:

1.    claims for workers' compensation benefits, monetary or otherwise;

2.    claims for unemployment compensation benefits;

3.    claims subject to the exclusive jurisdiction of the National Labor Relations Board; and

4.    claims based upon an employee pension or other benefit plan, the terms of which contain an arbitration or other non-judicial dispute resolution procedure, unless and until those procedures have been exhausted.

1.5    This EDRP shall apply to any Dispute whether it arises or is asserted during or after termination of the Employee's employment with Employer.

1.6    Retaliation against any Employee for using this EDRP is prohibited, and claims of such retaliation are to be resolved under this EDRP.

1.7    Any disagreement concerning the formation, applicability, interpretation or enforceability of this EDRP, including any claim that all or any part of this EDRP is void or voidable, shall be resolved by the Arbitrator selected in accordance with Paragraph 8.3, and not by any federal, state, or local court or agency, except that either party may initiate a legal action in state or federal court to compel the parties to resolve any Disputes pursuant to this EDRP.

2.    **Exclusivity, Exhaustion, Waiver and Binding Effect**

2.1    All Disputes shall be presented for resolution pursuant to this EDRP.

2.2    Resolution of any Dispute pursuant to this EDRP is intended to be final and binding on the Parties to the fullest extent permitted by law.

2.3    The failure of a Party to initiate this EDRP within the time limits set forth in Article Four shall be deemed a waiver and release by that Party with respect to any Disputes relative to that Party in any forum, unless otherwise expressly agreed to in writing by the Employee and by the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2.4    Once this EDRP is initiated to adjudicate a Dispute, the failure of the opposing Party to state a counterclaim of which the opposing Party is or should have been aware within the time limits of Paragraph 6.5 shall be deemed a waiver and release by the opposing Party with respect to that counterclaim in any forum, unless otherwise expressly agreed to in writing by the Employee and by the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2

2.5     As to any Dispute, the Parties intend this EDRP to substitute for court action and any administrative action as the exclusive, final, and binding method to resolve the Dispute, whether based on federal, state or other governmental constitution, statute, ordinance or regulation, except as otherwise provided in Paragraph 2.7. The Parties shall be precluded from bringing or raising in court or before another forum, any Dispute which could have been brought or raised pursuant to this EDRP, unless otherwise expressly agreed to in writing by both the Employee and the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2.6     Notwithstanding any claim or judicial determination that this EDRP is not the exclusive forum for final and binding resolution of Disputes, such Disputes shall be submitted for resolution hereunder (even if that resolution is determined to be non-binding) before filing or pursuing such Disputes in any other forum, except as otherwise provided in Paragraph 2.7.

2.7     Nothing herein shall preclude the Employee from pursuing or participating in administrative proceedings of the Equal Employment Opportunity Commission, or similar applicable state agency, or the National Labor Relations Board. However, if an agency issues a right to sue notice or letter, or an Employee seeks to intervene as a private party in a lawsuit commenced by such agency, final and binding arbitration pursuant to this EDRP will be the sole and exclusive remedy or formal method of resolving the Employee's Disputes.

3.     **Distribution of EDRP**

3.1     The Employer will give a copy of this EDRP to the Employee: a) at the time the Employee makes application for employment, b) for current employees, as soon as this EDRP is adopted by the Employer, c) at any time, upon Employer's receipt of a written request for a copy of this EDRP from Employee, or d) at any time the Employer deems appropriate, in its discretion, during an Employee's employment.

4.     **Time Limit on Submitting Disputes**

4.1     The Parties are committed to resolving their Disputes expeditiously. Accordingly, as to any Dispute(s), except Disputes arising under State or Federal statutory law, the Parties agree to waive all statutes of limitations that would apply in a court of law or administrative proceeding, and initiate this EDRP no later than one (1) year after the Dispute arises. As to any Dispute(s) arising under State or Federal statutory law, that statute's limitations period shall apply. Failure to initiate this EDRP within these time limits is intended to, and shall to the furthest extent permitted by law, be a waiver and release with respect to the Dispute, and, in the absence of a timely submitted Dispute, an Arbitrator has no authority to resolve the Dispute or render an Award. The time limit for initiating this EDRP shall not be subject to tolling, equitable or otherwise.

5.     **Representation**

5.1     The Employee and the Employer have the right to consult with an attorney or other representative at any phase of this EDRP, and the right to be represented by an attorney or other representative at any phase of the mediation or arbitration process; provided, however, that no current or former supervisory or managerial employee of the Employer shall represent

3

another Employee. If a Party intends to use a representative during mediation or arbitration, that Party must notify the other Party, in writing, of the name, address and telephone number of its representative prior to the entrance of the representative into the dispute resolution process.

## 6.    Initiation of EDRP and Time Limit for Counterclaim

6.1    It is specifically understood between the Parties that prior to initiation of this EDRP, the Parties must first exhaust the Bally Employee Problem Solving Procedure found in the Employee Handbook.

6.2    For an Employee to initiate this EDRP to resolve a Dispute, the Employee shall give written notice to the Employer as follows:

| Harold Morgan | cc: | Cary A. Gaan, Esquire |
|---|---|---|
| Senior Vice President of Human | | Senior Vice President & General |
| Resources | | Counsel |
| Bally Total Fitness | | Bally Total Fitness |
| 8700 W. Bryn Mawr, 2nd Floor | | 8700 W. Bryn Mawr, 2nd Floor |
| Chicago, IL 60631 | | Chicago, IL 60631 |

This notice must be served within the time limit set forth in Paragraph 4.1 and in the manner specified in Article 7. The Employee's notice shall also state the address which the Employee will use for the purpose of this EDRP.

6.3    For the Employer to initiate this EDRP to resolve a Dispute, the Employer shall give written notice to the Employee pursuant to Paragraph 7.3. This notice must be postmarked within the time limit set forth in Paragraph 4.1.

6.4    The initiating Party's notice (hereinafter, the "Notice of Claim") shall state in detail the nature of the Party's claim(s), the date when the Dispute first arose, the names, work locations, and telephone numbers of any co-workers, members, or supervisors with knowledge of the Dispute and the relief requested.

6.5    Within thirty (30) calendar days after a Party's Notice of Claim is given, the opposing Party shall give a written answer to the claim(s) (the "Answer") and set forth any counterclaim(s) (the "Counterclaim") then known to the opposing Party.

6.6    Within thirty (30) calendar days after a Counterclaim is given, the Party initiating the EDRP shall give the counterclaiming Party a written statement of defenses to the Counterclaim ("Answer to Counterclaim").

6.7    Within thirty (30) calendar days after the filing of the Answer or the Answer to Counterclaim, whichever is later, the Parties shall hold an in-person meeting in an attempt to informally resolve all Disputes, including the Counterclaim, if any.

6.8    If the Parties are unsuccessful in resolving a Dispute, including any counterclaims, pursuant to a meeting held in accordance with Paragraph 6.7, the Parties shall select a mediator within sixty (60) calendar days thereafter from a list of mediators supplied by

4

Rev. 3/10/02

the American Arbitration Association ("AAA"). The Parties shall hold the mediation no later than sixty (60) calendar days after selection of the mediator. The mediator may make settlement suggestions to the Parties, but shall not have the power to impose a settlement upon them. If the Dispute is resolved in mediation to the satisfaction of the Parties, the matter shall be deemed resolved. If the Dispute is not resolved in mediation and proceeds to arbitration, any proposals or compromises suggested by either of the parties or the mediator shall not be referred to in the arbitration proceeding, and the Arbitrator will neither admit into the record nor consider any such proposals and compromises. The mediator cannot also serve as the Arbitrator in the subsequent proceeding unless all Parties expressly agree in writing. The Employer shall be solely responsible for the expenses of the mediation (other than the Employee's attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any Employee witnesses).

6.9    Except as otherwise provided in this EDRP, any mediation shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time of receipt from the other party of written notice of the Dispute.

7.    **Timing and Method of Giving Notice**

7.1    Service of any notice and/or submission, commencing with notice given pursuant to Article Six, shall be made by certified United States mail, return receipt requested, and shall be deemed effective on the date postmarked.

7.2    Service may also be made by a non-U.S. Postal Service package delivery service which provides a return receipt as proof of delivery such as Federal Express or similar overnight delivery services and shall be deemed effective on the date tendered and accepted by such service.

7.3    The Employer shall use the address last listed by the Employee with the Employer for income tax withholding in order to give the Employee any notices required hereunder, unless the written notice of the Employee required to commence this EDRP pursuant to Paragraph 6.2. specifies a different address. For all purposes, the Employee shall use the Employer's address specified in Paragraph 6.2.

7.4    The production of an affidavit of service or a signed and dated return receipt shall be adequate proof to presume delivery.

7.5    Any notices and/or submissions made by any Party pursuant to this EDRP to the Arbitrator shall also be made contemporaneously on the opposing Party. There shall be no communication by or with the Arbitrator by one Party without the participation of all other Parties.

8.    **Request for Arbitration and Motions to Dismiss**

8.1    In the event that mediation in accordance with Paragraph 6.8 is unsuccessful, the Party initiating this EDRP may file a request for arbitration with the AAA office nearest the county of venue specified in Paragraph 9.1. The request for arbitration shall be filed within thirty (30) calendar days after completing mediation in accordance with Paragraph 6.8 and shall

5

include copies of the Notice of Claim, the Answer, the Counterclaim, if any, the Answer to Counterclaim, if any, and a copy of this EDRP. All documents filed by a Party with the AAA shall be served at the same time on the other Party as specified in Article Six and in the manner provided for in Article Seven.

8.2    Any Dispute will be decided by a single decision maker called the "Arbitrator."

8.3    The Parties will confer and attempt to agree on the selection of the Arbitrator. If the Parties cannot so agree, the Employer shall request a list of proposed arbitrators from the AAA. The list shall consist of at least seven proposed arbitrators with the educational and professional biographies of each. Each proposed arbitrator must reside within the state of venue as specified in Paragraph 9.1 and must be a licensed attorney with experience in employment disputes. The Employer and Employee may each reject one entire list of proposed arbitrators before beginning the selection process. The Arbitrator shall be selected by the Parties by alternately striking names from the list. The Employee strikes first. The last name remaining on the list shall be the Arbitrator selected to resolve the Dispute(s). The Employer and Employee shall make every reasonable effort to complete selection of the Arbitrator within ninety (90) calendar days after a request for arbitration is filed pursuant to Paragraph 8.1.

8.4    Unless the Employee and the president or other representative of the Employer specifically set forth in Paragraph 6.2 jointly agree otherwise in writing, all Disputes related to the Employee, and no Disputes relating to any other employee, shall be submitted in the same proceeding to the Arbitrator selected pursuant to this Article Eight.

8.5    The Employer shall notify the Arbitrator within ten (10) calendar days after his/her selection and provide the Arbitrator with a copy of this EDRP, whereupon the Arbitrator shall promptly notify the Parties of proposed hearing dates.

8.6    If a Party contends that some or all of the claims set forth in the Notice of Claim or the counterclaim filed pursuant to Paragraph 6.4 or 6.5 are barred as a matter of law, that Party may file with the AAA a Motion to Dismiss, setting forth the legal authorities in support of its position, within thirty (30) calendar days after the request for arbitration is filed pursuant to Paragraph 8.1. The non-moving Party shall have twenty (20) calendar days to respond to the Motion to Dismiss. Motions to Dismiss and responses must be in writing and served on the opposing Party, and the Arbitrator, if selected as of the due date.

8.7    Absent good cause, the Arbitrator shall issue a written decision resolving a Motion to Dismiss filed pursuant to Paragraph 8.6 within fifteen (15) calendar days of the filing of the non-moving party's response or fifteen (15) calendar days after the Arbitrator has been notified of his selection, whichever is later, but in no circumstances shall the decision be rendered later than sixty-five (65) calendar days after the Arbitrator has been notified of his selection. Discovery shall be stayed until issuance of the Arbitrator's decision.

9.    Venue, Time and Place of Hearing and Applicable Law

9.1    For failure to hire Disputes, the venue of any Dispute shall be the county where the Employee made application for employment. For all other Disputes, the venue shall be the county in which the Employee performed the principal duties of his/her job.

6

Rev. 3/10/02

9.2    Unless the Parties otherwise agree, or the Arbitrator otherwise directs, any hearing shall be conducted and the arbitration shall be held in the AAA office nearest the county of venue.

9.3    The hearing shall be conducted no earlier than four (4) months nor later than eight (8) months from the date the Arbitrator receives notice of his/her selection unless the Arbitrator sets an earlier or later date. The hearing shall not be interrupted or postponed, but shall continue from day to day, without interruption, until completed, unless the Parties and the Arbitrator all agree otherwise on the record.

9.4    No later than thirty (30) calendar days prior to the hearing, the Arbitrator shall hold a formal, in-person settlement conference in a final attempt to resolve the Dispute prior to the formal arbitration hearing. The parties may waive this final settlement conference if both parties agree, after consulting with the Arbitrator, that such final settlement conference would be futile and such a conference could compromise the neutrality of the Arbitrator.

9.5    Except as otherwise provided in this EDRP, any arbitration shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time this EDRP is initiated pursuant to Article Six.

9.6    The Arbitrator shall resolve Disputes in accordance with Federal law, if applicable, and the internal substantive law of the state of venue as specified in Paragraph 9.1 without reference to that state's choice of law rules.

10.    Discovery, Submission of Briefs and Dispositive Motions

10.1    The Parties shall cooperate in the voluntary exchange of such documents and information as will serve to expedite the arbitration.

10.2    Discovery shall be conducted after selection of the Arbitrator in the most expeditious and cost-effective manner possible. All discovery shall be limited to that which is relevant, as determined by the Arbitrator. The Parties shall not engage in any harassing discovery techniques.

10.3    Upon request, the Employer shall be entitled to take the deposition of the Employee, the Employee shall be entitled to take the deposition of the Employer's representative designated by the Employee, and each deposition shall not exceed eight (8) hours in length. In addition, each party shall be entitled to take one additional deposition of any person, and said deposition is not to exceed four (4) hours in length. Further, each Party may take the deposition from any expert designated by the other Party and all other depositions are subject to the Arbitrator's discretion under Paragraph 10.5. The Parties shall also be entitled to otherwise use and exercise all of the same rights, remedies and procedures, including interrogatories and documents requests, and be subject to all of the same duties, liabilities and obligations as provided in the Federal Rules of Civil Procedure to the extent they do not conflict with the provisions of this EDRP.

10.4    Any discovery disputes shall be presented to the Arbitrator for final and binding resolution.

7

Rev. 3/10/02

10.5 . The Arbitrator may grant either Party's request for discovery in addition to or limiting that for which this Article Ten expressly provides as the Arbitrator considers necessary for a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. The Arbitrator shall have authority to extend the hearing deadline specified in Paragraph 9.3 to accommodate the Parties' discovery requests to the extent determined by the Arbitrator to be reasonable and necessary. The Arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties as can or may be imposed in like circumstances in a civil action under the Federal Rules of Civil Procedure.

10.6 All discovery must be concluded not later than sixty (60) calendar days before the hearing. Each party shall be responsible for all costs associated with discovery which that party initiates (e.g., depositions), except that the party or third party witness being deposed shall be responsible for the cost of a copy of the transcript if he/she chooses to order a copy.

10.7 The Parties may stipulate in writing not later than forty-five (45) calendar days before the hearing that the Dispute be decided based upon the written briefs in lieu of a hearing. Upon receipt of a timely submitted stipulation, the Arbitrator will promptly confer with the Parties and determine a briefing schedule providing for the contemporaneous submission of briefs and contemporaneous replies. All briefs and replies must be submitted not later than sixty (60) calendar days after the briefing schedule is determined. The Arbitrator shall issue his/her Award within sixty (60) calendar days after all briefs and replies are submitted. The Arbitrator's Award shall comply with the provisions of Article Seventeen of this EDRP.

10.8 If the Parties do not stipulate as provided in Paragraph 10.7, the Parties may submit pre-hearing motions for summary judgment, as defined by Federal Rule of Civil Procedure 56. All dispositive motions and briefs in support thereof must be submitted to the Arbitrator not less than forty-five (45) calendar days before the hearing. Opposition briefs must be submitted within fifteen (15) calendar days after the motion is received. Reply briefs must be submitted within ten (10) calendar days after the opposition brief is received. The Arbitrator shall issue written rulings on all dispositive motions not less than fifteen (15) calendar days before the hearing. The Arbitrator shall continue the hearing date if dispositive motions have been timely submitted and remain pending within fifteen (15) calendar days of the hearing. The Arbitrator is empowered to dispose of any and all Disputes, in whole or in part, on dispositive motions. Such ruling(s) shall have the same effect as an Award and shall comply with the provisions of Article Seventeen of this EDRP.

## 11.    Subpoenas

11.1 Upon the request of any Party, the Arbitrator may issue a subpoena to compel the production of witnesses or documents to the same extent permitted under the Federal Rules of Civil Procedure in a judicial proceeding.

11.2 Unless the Arbitrator directs otherwise, the Party requesting the production of any witnesses or documents shall bear the costs of such production.

8

## 12.    Order of Presentation

12.1    At the hearing, the Party initiating this EDRP shall first present his evidence unless the Parties and the Arbitrator agree that a different order is warranted due to the unique circumstances of a particular issue.

12.2    The order of presentation as to any other issue, including counterclaims, shall be determined by the Arbitrator.

12.3    At the conclusion of a Party's case in chief, the opposing Party may submit a motion for judgment as a matter of law, which the arbitrator shall resolve in accordance with the standards set forth in Rule 50 of the Federal Rules of Civil Procedure.

12.4    Each Party shall have the right to present closing argument at the conclusion of all testimony.

12.5    In addition to or in lieu of closing argument, each Party shall have the right to submit a post-hearing brief not later than thirty (30) calendar days after the close of the hearing. The Arbitrator shall determine the exact due date and procedure such that all Parties' briefs are submitted on the same date.

## 13.    Standard and Burden of Persuasion

13.1    In order for a Party to prevail on any claim or counterclaim, the Party shall have the burden of proving each element of each of that Party's claim or counterclaim as governed by applicable law.

13.2    Each Party bears the burden of persuasion by a preponderance of the evidence or as otherwise required by law on any claim or counterclaim raised by that Party under this EDRP.

## 14.    Evidence and Argument

14.1    The Arbitrator shall afford each Party a full and fair opportunity to present any relevant proof, to call and cross-examine witnesses, to rebut evidence presented by an opposing Party, and to present its argument.

14.2    The Arbitrator shall not be bound by any formal rules of evidence with the exception of applicable law regarding attorney-client privilege and work product. The Arbitrator shall not accept affidavits, except as provided by Paragraph 7.4 or in support of or opposition to a motion for summary judgment pursuant to Paragraph 10.8.

14.3    The Arbitrator shall decide the relevance of the evidence offered, and the Arbitrator's decision on any question of evidence or relevance shall be final and binding. The Arbitrator shall be guided by the Federal Rules of Evidence on issues of relevance.

14.4    Evidence of any proposals or compromises suggested by either Party in an effort to informally resolve the Dispute(s) shall not be admissible to the Arbitrator except that the Employer may enter into evidence any unconditional offers of hire, rehire, reinstatement, promotion, or transfer as may be related to the Employee's request for damages or other relief.

9

14.5    All testimony shall be under oath.  Oaths shall be administered by the Arbitrator or a court reporter.

14.6    At the request of any Party, the Arbitrator shall order the sequestration of witnesses, except for the Employee, a representative of the Employer, and counsel for any Party.

## 15.    Confidentiality

15.1    All aspects of the arbitration pursuant to this EDRP, including the hearing and record of the proceedings, are confidential and shall not be open to the public, except: a) to the extent both Parties agree otherwise in writing, b) as may be appropriate in any subsequent proceedings between the Parties, or c) as may otherwise be appropriate in response to a governmental agency or legal process.

## 16.    Expenses

16.1    The Employer shall be solely responsible for the expenses of the arbitration (other than the Employee's attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any Employee witnesses). The "expenses of the arbitration" shall mean the expenses of the Arbitrator (such as daily fee and travel) and filing fee and shall exclude the Parties' respective attorneys' fees and disbursements, expenses of witnesses and costs of producing other evidence.

## 17.    The Award

17.1    The Arbitrator shall render his/her decision and Award (collectively the "Award") based solely on the evidence and authorities presented, the applicable law argued by the Parties and the provisions of this EDRP as interpreted by the Arbitrator.

17.2    The Award shall be in writing and signed and dated by the Arbitrator and shall contain express findings of fact (including findings on each issue of fact raised by a Party), the rationale for the Award, and, if necessary to dispose of any issues of law, conclusions of law and discussions of legal authorities.  The Arbitrator shall give signed duplicate original copies of the Award to each Party.

17.3    The Award shall be issued within sixty (60) calendar days after the later of: a) the close of the hearing or b) the submission of post-hearing briefs.

17.4    Unless applicable law provides otherwise, the Award shall be final and binding and not subject to review or appeal.

## 18.    Record of Proceeding

18.1    A record of the hearing shall be made, at the expense of the Employer, by audio or video tape or by verbatim transcription.

18.2    The Arbitrator shall be responsible, in cooperation with the Parties, for assembling the record of the proceeding and shall maintain possession of the record for at least

10

one (1) year after issuing the Award unless the Parties, with the Arbitrator's consent, agree otherwise.

18.3   The record of the proceeding shall include, at a minimum, the following: the notice and any statements required by Article Six; any documents, briefs, motions and depositions discovered pursuant to Article Ten; any evidence and argument (including any briefs) submitted pursuant to Article Fourteen; the record of the hearing pursuant to Paragraph 18.1 and the Award pursuant to Article Seventeen.

### 19.   Damages and Relief

19.1   The Arbitrator is permitted to award any remedies available in law or equity that are requested by the Parties and that the Arbitrator determines to be supported by the credible, relevant evidence.

19.2   A Party may apply all or any portion of an Award and/or an Award of sanctions in favor of that Party pursuant to Article Twenty as a set-off against any monetary relief awarded by the Arbitrator to the opposing Party.

19.3   Any final Award of front pay provided by the Arbitrator shall be paid by the Employer to the Employee, bi-weekly over the regularly scheduled pay periods, just as if the Employee were in fact employed during said period. In the event the Employee obtains future employment after receiving an award of front pay, front pay shall be eliminated if the future employment is at a rate equal to or greater than the bi-weekly front pay award, or if the future employment compensation is less than the bi-weekly award, the bi-weekly front pay shall be reduced by an amount equal to the new earnings received from the new employment.

19.4   Except as provided in Paragraph 19.4, any final Award exceeding $50,000 in value shall be payable by the losing Party over 12 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue. Any final Award exceeding $150,000 in value shall be payable by the losing Party over 24 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue. Any final Award exceeding $300,000 in value shall be payable by the losing Party over 36 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue.

19.5   The Parties have a duty to mitigate their damages by all reasonable means including, but not limited to, in the case of the Employee, mitigation by way of seeking other work and making application for unemployment, disability, retirement or other available benefits. The Arbitrator shall take a Party's failure to mitigate into account in granting relief.

### 20.   Sanctions

20.1   The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or documents, upon a finding that the claim or counterclaim was frivolous or brought solely to harass the other Party.

11

Rev. 3/10/02

20.2    The Arbitrator may award either Party its reasonable attorneys' fees and costs reasonably related to any of the following conduct by the other party: (a) unreasonable delay, (b) failure to comply with the Arbitrator's discovery order, (c) failure to comply with requirements of confidentiality under this EDRP; or (d) commencing or pursuing litigation or an administrative proceeding in contravention of Paragraph 23.2.

### 21.    Arbitration Statute and Non-Violation of Law

21.1    Any proceeding pursuant to this EDRP shall be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

21.2    The Arbitrator shall have all powers granted to arbitrators and the Arbitrator's Award shall be enforceable as would an Arbitrator's Award, pursuant to the applicable law.

21.3    If any part of this EDRP is in conflict with any mandatory requirement of applicable law, applicable law shall govern and that part of this EDRP shall be reformed and construed in conformance with the applicable law.  This EDRP shall remain otherwise unaffected and enforceable.

21.4    The Award may be vacated or modified only on the grounds specified in the applicable law.

### 22.    Voluntary use of EDRP

22.1    After a claim, Dispute or an issue has arisen, the Parties may agree in writing voluntarily to employ this EDRP to hear and resolve with finality that claim, dispute or issue although it is not related to matter(s) covered by this EDRP.

### 23.    Court and Administrative Proceedings

23.1    Nothing in this EDRP shall prevent a Party from bringing a proceeding pursuant to the applicable law to vacate or enforce an Award, to compel the submission of a Dispute for resolution under this EDRP, to compel arbitration or to seek temporary or preliminary equitable relief in aid of arbitration.

23.2    Except as provided in Paragraph 23.1, the Parties agree not to commence or pursue any litigation or administrative proceeding on any Dispute and will promptly move to discontinue any such proceeding if commenced, except as otherwise provided by Paragraph 2.7.

### 24.    At-Will Employment

24.1    This EDRP does not in any way alter the "At-Will" status of Employee's employment, is not a promise of employment, and is not intended to and does not change the agreement and understanding between a hired Employee and the Employer for an at-will employment relationship.  The terms of that at-will relationship are, as described in the Application for Employment and Employee Handbook, that the employment is subject to:  1) at the will or sufferance of the Employer, termination without recourse at any time for any or no reason, and 2) a hired Employee's reserved right to voluntarily terminate his/her employment with the Employer at any time for any reason.  The at-will employment relationship may be

Rev. 3/10/02

modified only by written agreement signed by the Employee and the president or other representative of the Employer specified in Paragraph 6.2.

24.2    The Arbitrator shall have no authority to alter or otherwise modify the at-will relationship described in Paragraph 24.1 above and must enforce Article Twenty Four of this EDRP, except that the Arbitrator may order hire, rehire, promotion or reinstatement to the extent required by applicable law.

24.3    Captions and Section headings used in this EDRP are for convenience of reference only and shall not be deemed part of the contents of this EDRP nor affect its interpretation.

25.    Choice of Law

25.1    Bally is a Delaware corporation with its principal place of business in Chicago, Illinois. The Parties agree that this EDRP was entered into in the State of Illinois, and that all issues relating to the construction, formation and enforceability of this EDRP shall be governed by the FAA and, to the extent state law is applied, the internal laws of the State of Illinois, without reference to Illinois choice of law rules.

13

26.    <u>Voluntary Agreement</u>

EMPLOYEE ACKNOWLEDGES THAT HE/SHE IS OBLIGATED TO READ THIS EDRP, THAT AN ADDITIONAL COPY OF THIS EDRP WILL BE MADE AVAILABLE TO THE EMPLOYEE UPON WRITTEN REQUEST, THAT HE/SHE UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS BETWEEN THE EMPLOYEE AND THE EMPLOYER RELATING TO THE SUBJECTS COVERED IN THIS EDRP ARE CONTAINED IN IT, THAT HE/SHE IS OBLIGATED TO SUBMIT ALL COVERED DISPUTES TO MEDIATION AND/OR BINDING ARBITRATION PURSUANT TO THIS EDRP, THAT EMPLOYEE IS WAIVING HIS/HER RIGHT TO A JURY TRIAL BASED ON COVERED DISPUTES UNDER THIS EDRP AND THAT HE/SHE HAS ENTERED INTO THIS EDRP VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE EMPLOYER OTHER THAN THOSE CONTAINED IN THIS EDRP ITSELF.

EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE HAD A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS EDRP BEFORE SIGNING IT AND THAT HE/SHE HAD AN OPPORTUNITY TO DISCUSS THIS EDRP WITH HIS/HER PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT HE/SHE WISHES TO DO SO.

BALLY TOTAL FITNESS CORPORATION

_____
Signature of Employee

By: _____

Frank   Salazar   Jr
Print Name of Employee

_4_/_29_/_05_
Date:

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
Employee Social Security Number

4-29-05
Date:

Front Desk
Department/Club Location

14

Rev. 3/10/02

1  Mark R. Thierman Cal SB# 72913
2  **THIERMAN LAW FIRM, P.C.**
3  7287 Lakeside Drive
   Reno, Nevada  89511
4  Tel: (775) 284-1500

5  Scott Miller, SBN 230322
   **LAW OFFICES OF SCOTT MILLER, APC**
6  16133 Ventura Blvd. #1200
   Encino, CA 91436
7  Tel: (818) 788-8081

8  Steven L. Miller, SBN 106023
   **LAW OFFICES OF STEVEN L. MILLER, APC**
9  16133 Ventura Blvd. # 1200
   Encino, CA  91436
10 Telephone: (818) 986-8900

11 Attorneys for Plaintiffs

12            UNITED STATES DISTRICT COURT
13          NORTHERN DISTRICT OF CALIFORNIA
             SAN FRANCISCO DIVISION
14

15 FRANCISCO E. SALAZAR, JR., on          )   **No. CV 08-00175 JSW**
16 behalf of herself, the general public and )
   as an "aggrieved employee" under the   )
17 California Labor Code Private            )
   Attorneys General Act,                  )
18                                          )   **[PROPOSED] Order Granting
                                            )   Plaintiff's Motion to Strike
19       Plaintiff,                         )   Defendant's 30th and 31st
                                            )   (paragraphs 88 and 89 of Answer)
20    v.                                    )   Affirmative Defenses**
21                                          )
   BALLY TOTAL FITNESS and each of )        Hearing Date:  August 15, 2008
22 their subsidiaries doing business in    )   Hearing Time: 9:00 a.m.
   California under such names as          )   Courtroom:  2
23 GORILLA SPORTS, PINNACLE               )   Honorable Judge White
24 FITNESS and CRUNCH FITNESS and )
   DOES 1 through 50 inclusive,            )
25                                          )
26       Defendants.                        )
   _____ )
27
28

                                                                                1

1

2     The motion of Plaintiff to strike the 30th and 31st Affirmative Defenses in

3   Defendant's Answer came on regularly for hearing before this Court, Honorable

4
    Judge Jeffrey S. White presiding, and counsel of record appearing for Plaintiffs and
5

6   Defendant.

7     After full consideration of the evidence and on the separate statements of each

8
    party, and the authorities submitted by counsel, as well as counsel's oral argument,
9

10  and the submitted documentation the court finds that Defendant's 30th and 31st

11  Affirmative Defense are without merit and therefore strikes them.

12
      It is THEREFORE ORDERED that the said motion to strike is GRANTED.
13

14                              Dated this ___ day of _____, 2008.

15

16                              _____

17                              Honorable Jeffrey S. White

18

19

20

21

22

23

24

25

26

27

28