1  PAUL J. COADY (SBN: 81698)
   Email:  pcoady@winston.com
2  S. SHANE SAGHEB (SBN: 109878)
   Email:  ssagheb@winston.com
3  WINSTON & STRAWN LLP
   333 South Grand Avenue, 38th Floor
4  Los Angeles, CA  90071-1543
   Telephone:    213-615-1700
5  Facsimile:    213-615-1750

6  JOAN B. TUCKER FIFE (SBN: 144572)
   Email: jfife@winston.com
7  ROBERT SPAGAT (SBN: 157388)
   Email:  rspagat@winston.com
8  WINSTON & STRAWN LLP
   101 California Street, Suite 3900
9  San Francisco, CA 94111
   Telephone:    415-591-1000
10 Facsimile:    415-591-1400

11 Attorneys for Defendant
   BALLY TOTAL FITNESS CORPORATION

12

13                UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17 FRANCISCO E. SALAZAR, JR., on behalf of      No. C 08-00175 JSW
   himself, and all others similarly situated and as
18 an "aggrieved employee" under the California   OPPOSITION OF DEFENDANT, BALLY
   Labor Code Private Attorneys General Act,     TOTAL FITNESS CORPORATION, TO
19                                               PLAINTIFF'S MOTION TO STRIKE 30TH
                Plaintiff,                        AND 31ST AFFIRMATIVE DEFENSES OF
20                                               ANSWER; DECLARATION OF MARIAH
          vs.                                    MACHNIKOWSKI; DECLARATION OF
21                                               PAUL J. COADY
   BALLY TOTAL FITNESS, a Delaware
22 corporation doing business within the State of   Date:  August 15, 2008
   California, and each of its subsidiaries doing   Time:  9:00 a.m.
23 business in California, and DOES 1 through 50,   Dept:  Courtroom of Hon. Jeffrey S. White
   inclusive,
24
                Defendants.
25

26

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDUAL HISTORY ......................................................................................2

III.    STATEMENT OF FACTS .....................................................................................2

        A.      Plaintiff Was A Statutory Supervisor At Bally...........................................2

        B.      Plaintiff Executed An Agreement To Arbitrate His Employment Disputes
                Individually. ...............................................................................................3

        C.      Defendant Raised Plaintiff's Agreement To Arbitrate On An Individual Basis As
                An Affirmative Defense To Plaintiff's Class Allegations...........................3

        D.      Plaintiff Filed And Withdrew An Unfair Labor Practice Charge With The
                National Labor Relations Board Raising The Precise Issue Presented In The
                Motion To Strike.........................................................................................4

IV.     ARGUMENT .........................................................................................................5

        A.      Legal Standard ...........................................................................................5

        B.      Federal Labor Law Is *Inapplicable* To Plaintiff Because He Was A Statutory
                Supervisor. .................................................................................................5

        C.      The NLRA Does Not Provide Grounds For The Court To Strike The Class
                Action Waiver. ...........................................................................................7

                1.      The Court Cannot Issue A Decision That Encompasses A
                        Determination That Bally Has Committed An Unfair Labor Practice. .......7

                        a.      *Garmon* Preemption Prevents Plaintiff From Obtaining The
                                Relief He Seeks Through His Motion To Strike.........................7

                        b.      Plaintiff Has Precluded The Relief He Seeks By His Own
                                Conduct. ...................................................................................9

                2.      Plaintiff's Claim Is Time-Barred Under Section 10(b) Of The Act. ...........9

                3.      The Class Action Waiver Does Not Violate NLRA § 8(a)(1). .................10

        D.      The Norris-LaGuardia Act Does Not Prevent Federal Courts From Enforcing
                Arbitration Agreements With Class Action Waivers...............................12

                1.      Section 4 of Norris-LaGuardia Does Not Enumerate "Bringing
                        Putative Class Actions" As An Act That Cannot Be Enjoined.................12

                2.      Bally's Arbitration Agreement Is Not A Prohibited "Yellow Dog"
                        Contract Within the Meaning Of Section 3 Of Norris-LaGuardia. ..........12

V.      CONCLUSION.....................................................................................................13

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1

**TABLE OF AUTHORITIES**

2

CASES                                                                                    PAGE(S)

3

4

*American Federation of Labor v. American Sash & Door Co.*,
    335 U.S. 538 (1949)................................................................. 12

5

*Brighton Retail, Inc.*,
    2006 NLRB Lexis 233 (2006) ...................................................10, 11

6

7

*Bureerong v. Uvawas*,
    922 F.Supp. 1450 (C.D. Cal. 1996) ...........................................5

8

*CAB Assocs.*,
    340 NLRB 1391 (2003) ...........................................................10

9

10

*EEOC v. Bay Ridge Toyota, Inc.*,
    327 F.Supp.2d 167 (E.D.N.Y. 2004) .........................................5

11

12

*First Legal Support Services, LLC*,
    342 NLRB 350 (2004) ...........................................................13

13

*Freund Baking Co. v. NLRB*,
    165 F.3d 928 (D.C. Cir. 1999) ................................................11

14

15

*Harco Trucking, LLC.*,
    334 NLRB 478 (2005) ........................................................... 11

16

17

*Hi-Craft Clothing Co. v. NLRB*,
    660 F.2d 910 (3d Cir. 1981)....................................................6

18

19

*Lirtzman v. Spiegel, Inc.*,
    493 F.Supp. 1029 (N.D. Ill. 1980) ...........................................5

20

*Litton Financial Printing Division v. NLRB*,
    501 U.S. 190 (1991)...............................................................12

21

22

*Long Beach Youth Center*,
    230 NLRB 648 (1977), *enforced*, 591 F.2d 1276 (9th Cir. 1979) .............................5

23

24

*Myers v. Bethlehem Shipbuilding Corp.*,
    303 U.S. 41 (1938).................................................................. 9

25

*Oakwood Healthcare, Inc.*,
    348 NLRB No. 37 ..................................................................6

26

27

*RDF Media Ltd. v. Fox Broadcasting Co.*,
    372 F.Supp.2d 556 (C.D. Cal. 2005) .........................................5

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

ii

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

*San Diego Building Trades v. Garmon,*
    359 U.S. 236 (1959)..................................................................1, 7, 8, 9, 10

*Sears, Roebuck & Co. v. San Diego District Council of Carpenters,*
    436 U.S. 180 (1978)..................................................................................8

*SEC v. Sands,*
    902 F.Supp. 1149 (C.D. Cal. 1995) .........................................................5

*Sheridan v. IBEW Local 455,*
    945 F.Supp. 12 (D. Mass. 1996) ..............................................................8

*State of Cal. ex rel. State Lands Commission v. U.S.,*
    512 F.Supp.36 (N.D. Cal. 1981) ..............................................................5

*Steelworkers v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960) ..............................................................................12

*Textile Workers v. Lincoln Mills,*
    353 U.S. 448 (1957) ..............................................................................11

*Trialty dba Iron Workers Local 509 (Rodney Gene Watson),*
    290 NLRB 98 (1988) ...............................................................................6

*Trinity Trucking & Materials Corp.,*
    221 NLRB 364 (1975) ...........................................................................10


**STATUTES**

28 U.S.C. § 1332(d) ........................................................................................2

29 U.S.C. §7 ............................................................................................5, 7, 8

29 U.S.C. § 8(a)(1) ............................................................................... *passim*

29 U.S.C. § 8(a)(3) .......................................................................................10

29 U.S.C. § 10(b) .........................................................................................10

29 U.S.C. § 103 ............................................................................................12

29 U.S.C. § 104 ............................................................................................12

29 U.S.C. § 151, *et seq.*.................................................................................1

29 U.S.C. § 152(11) ...................................................................................5, 6

29 U.S.C. § 160(a) .........................................................................................9

29 U.S.C. § 160(b) ................................................................................................10

29 U.S.C. § 160(e) ..................................................................................................9

29 U.S.C. § 160(f) ..................................................................................................9

29 U.S.C. § 164(a) ..................................................................................................6

Cal. Labor Code § 212 ........................................................................................3, 4

**OTHER AUTHORITIES**

NLRB Case Handling Manual
    § 10120.2, (CCH) ¶ 1202 ..................................................................................9

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## I.      INTRODUCTION

Plaintiff, Francisco Salazar's ("Plaintiff"), motion seeks to strike two affirmative defenses raised by defendant, Bally Total Fitness Corporation ("Defendant" or "Bally"), alleging that Plaintiff's class allegations are barred by a class action waiver contained in Bally's Employment Dispute Resolution Procedure ("EDRP"), an arbitration agreement.  Plaintiff's motion argues that asserting class action allegations constitutes protected, concerted activity within the meaning of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 151 *et seq.*, with which EDRP's class action waiver unlawfully interferes, and therefore, that Bally's 30th and 31st affirmative defenses should be stricken.  Plaintiff's arguments are without merit.

Initially and perhaps most fundamentally, Plaintiff's motion fails because he was a statutory supervisor.  Accordingly, he cannot claim the protections of the NLRA.  Additionally, even if Plaintiff were covered by the Act, the Court does not have jurisdiction to issue relief based on a finding that Bally engaged in an unfair labor practice in violation of the Act.  Exclusive primary jurisdiction to determine whether conduct violates the Act rests with the National Labor Relations Board ("NLRB" or "Board").  As Plaintiff has alleged that Bally's conduct actually violates the NLRA, *Garmon* preemption precludes the Court from deciding that allegation.  *San Diego Building Trades v. Garmon,* 359 U.S. 236 (1959).  Even if this Court had jurisdiction to decide the issue, there would be no basis upon which to decide that enforcement of the class action waiver constitutes an unfair labor practice.   Neither the NLRB nor any court has ever held that enforcing such a waiver violates the Act, and none of the authorities cited by Plaintiff so hold.  That the class action waiver does *not* violate the NLRA is made manifest by the fact that Plaintiff filed an unfair labor practice charge with Region 32 of the NLRB, and then *withdrew* it before the Region issued its decision on the merits of the charge.

It is Plaintiff's burden on his motion to strike to establish that there is no issue of fact that might allow Bally to succeed on its affirmative defenses, and that there is no substantial question of law.  Here, Plaintiff has not satisfied that burden.

---

1

## II.  PROCEDURAL HISTORY

Plaintiff filed this putative class action in San Francisco Superior Court on October 22, 2007. Following service, Bally removed the action to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), where it was initially assigned to Hon. Phyllis J. Hamilton.  As Plaintiff had previously filed and voluntarily dismissed a substantially identical action that had been assigned to this Court for resolution, this case was re-assigned to this Court upon Bally's filing a notice of related case.

On April 25, 2008, this Court conducted an Initial Case Management Conference. When Bally disclosed that it intended to file a motion to compel arbitration of plaintiff's claims on an individual basis, the Court set a hearing date of August 15, 2008 on Bally's anticipated motion. The parties also agreed to stay discovery until after that hearing had been conducted. There was no discussion at that time of any other anticipated motions, including any motion to strike affirmative defenses.  The parties' Joint Case Management Conference Statement, filed a few days before the April 25 conference, was also silent with respect to any anticipated motion to strike affirmative defenses.

Rather than waiting to oppose Bally's motion, Plaintiff filed the instant motion to strike on June 3, 2008, setting it for hearing at the same time and on the same date as that which the Court had set for a hearing on Bally's anticipated motion to compel arbitration. Although Plaintiff's motives are impossible to divine with certainty, at a bare minimum he has increased by a factor of two the amount of time the Court and the parties must dedicate to the briefing relating to the arbitrability of Plaintiff's claims, and, in the process, has given himself two additional opportunities (this Motion's opening and reply briefs) to oppose Bally's motion to compel arbitration.

## III.  STATEMENT OF FACTS

### A.  Plaintiff Was A Statutory Supervisor At Bally.

Plaintiff's Complaint nowhere identifies Plaintiff's job title or alleges what his job duties were while he was employed with Bally.  The Complaint alleges only that Plaintiff is similarly situated to "managers and assistant managers."  (Complaint, ¶ 7.)  In fact, Plaintiff was employed by Bally as a Sales Manager at its Chatsworth, California club.  (Declaration of Mariah Machnikowski in support

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   of Defendant's Opposition to Plaintiff's Motion to Strike ("Machnikowski Decl."), ¶ 3.)  The primary

2   duty of Sales Managers is to sell memberships to members and new members and to oversee the

3   sales team working in the club to which they are assigned.  (*Id.*, ¶ 4.)  Sales managers are also

4   responsible for assigning work to the sales team at their club.  (*Id.*)  They have the authority to

5   effectively recommend that individuals be hired, disciplined, terminated, and critically evaluated in

6   their performance reviews.  (*Id.*)  These recommendations are more than perfunctory; they constitute

7   a factor that the club manager relies upon in determining employment decisions relative to sales

8   personnel.  (*Id.*)

### B.  Plaintiff Executed An Agreement To Arbitrate His Employment Disputes Individually.

On April 29, 2005, Plaintiff executed the Bally Total Fitness Corporation Employment

Dispute Resolution Procedure (the "EDRP").  (Declaration of Mark R. Thierman in Support of

Plaintiff's Motion to Strike ("Thierman Decl."), Exh. A.)  Through the EDRP, Plaintiff and Bally

agreed to submit "Covered Disputes" to final and binding arbitration.  (*Id.*, §§ 1.1, 2.2).  "Covered

Disputes" include disputes over wages and alleged statutory violations.  (*Id.*, ¶ 1.1.)  The definition,

however, excludes "claims subject to the exclusive jurisdiction of the National Labor Relations

Board." (*Id.*, ¶ 1.4(3).)  The EDRP confirms that Plaintiff may pursue or participate in administrative

proceedings before the NLRB.  (*Id.*, § 2.7.)  The EDRP provides that, unless otherwise agreed, "all

Disputes related to the Employee, and no Disputes relating to any other employee, shall be submitted

in the same proceeding to the Arbitrator."  (*Id.*, ¶ 8.4.)

### C.  Defendant Raised Plaintiff's Agreement To Arbitrate On An Individual Basis As An Affirmative Defense To Plaintiff's Class Allegations.

The Complaint alleges that Bally violated California Labor Code Section 212 by issuing

Plaintiff paychecks issued from an out-of-state bank that Plaintiff is unable to negotiate without

discount at an established place of business in the state.  (Complaint, ¶ 37.)  Although not germane

to this motion, Plaintiff makes this allegation notwithstanding the fact that he attaches as Exhibit A

to his Complaint a copy of a Bally paycheck issued to him during his employment, which

prominently displays a California address for Bally.  There is no allegation that Plaintiff ever

attempted to negotiate any paycheck, including that attached to the Complaint, at the California

---

3

address appearing on the check, or, for that matter, that his efforts were unsuccessful. Plaintiff nonetheless seeks to represent a class of "all persons who are or were employed by Defendant in the State of California" who received paychecks allegedly in violation of Labor Code § 212."

(Complaint, ¶ 12.)

In its Answer, Bally raised, *inter alia*, the following affirmative defenses:

> Plaintiff's claims, if any, are barred because, pursuant to agreements entered into by Plaintiff, arbitration on an individual, non-class basis is a condition precedent to commencement and maintenance of this action, and the action is barred in the absence of an arbitration. By filing its Answer, Defendant does not waive its rights to arbitrate this matter.

> Plaintiff's claims are subject to arbitration on an individual, non-class basis. By filing its Answer, Defendant does not waive its rights to arbitrate this matter.

(Answer, ¶¶ 88-89.) By the instant motion, Plaintiff moves to strike these affirmative defenses.

### D.  Plaintiff Filed And Withdrew An Unfair Labor Practice Charge With The National Labor Relations Board Raising The Precise Issue Presented In The Motion To Strike.

On May 8, 2008, Plaintiff, represented by the same attorney representing him in this action, filed an unfair labor practice charge with Region 32 of the National Labor Relations Board (the "Charge"). (Declaration of Paul J. Coady in Support of Defendant's Opposition to Plaintiff's Motion to Strike ("Coady Decl."), Exh. A.) The Charge alleged that Bally had committed a violation of Section 8(a)(1) of the NLRA by requiring employees to execute arbitration agreements with a class action waiver. (*Id.*) Plaintiff's attorney verified the Charge under penalty of perjury. (*Id.*)

On June 4, 2008, Plaintiff filed the instant Motion to Strike (the "Motion"). Plaintiff's Motion asserts the same claims that Plaintiff asserted in his charge, *i.e.,* that Bally's arbitration agreement violates Section 8(a)(1) of the NLRA and is a prohibited "yellow dog" contract because it includes a class action waiver.

On June 17, 2008, after an investigation by a Board agent, as required by the NLRA, Plaintiff withdrew the Charge. (Coady Decl., Exh. B.)

IV.    **ARGUMENT**

A.    **Legal Standard**

Motions to strike are disfavored because they often are used as delaying tactics, and because of the policy favoring resolution on the merits.  *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D. Cal. 2005); *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).  To prevail on a motion to strike an "insufficient defense," the plaintiff must show that there is no issue of fact that might allow the defense to succeed, nor any substantial question of law, and that Plaintiff would be prejudiced by inclusion of the defense."  *EEOC v. Bay Ridge Toyota, Inc.*, 327 F.Supp.2d 167, 170 (E.D.N.Y. 2004); *RDF Media, supra.*  Even when the defense under attack presents a purely legal question, "courts are reluctant to determine disputed or substantial questions of law on a motion to strike."  *SEC v. Sands*, 902 F.Supp. 1149, 1165 (C.D. Cal. 1995).  When ruling on a motion to strike, the court must view the pleading under attack in the light most favorable to the pleader.  *RDF Media*, 372 F.Supp.2d at 561; *State of Cal. ex rel. State Lands Commission v. U.S.*, 512 F.Supp.36 (N.D. Cal. 1981).  In *Lirtzman v. Spiegel, Inc.*, 493 F.Supp. 1029 (N.D. Ill. 1980), the plaintiff moved to strike an affirmative defense alleging that the plaintiff's class claims were barred.  The court denied the motion, reasoning that it was "not convinced that under no set of circumstances could this affirmative defense succeed."  *Id.*, at 1034.  As set forth below, when this standard is applied to the instant motion, it must be denied.

B.    **Federal Labor Law Is *Inapplicable* To Plaintiff Because He Was A Statutory Supervisor.**

An obvious and fundamental premise of federal labor law is that it governs the relationship between management and *labor*.  It does not govern the relationship between management and its own agents.  Supervisors are deemed to be the agents of management for purposes of federal labor law, and therefore, the NLRA excludes individuals employed as supervisors from the definition of "employee."  29 U.S.C. § 152(11); *Long Beach Youth Center,* 230 NLRB 648 (1977), *enforced*, 591 F.2d 1276 (9th Cir. 1979).  The NLRA's protections, including the right "to engage in concerted activity for mutual aid or protection," and the right to be free from interference for engaging in such right, are limited to "employees."  29 U.S.C. §§ 7, 8(a)(1).  No such protections exist under the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   NLRA for supervisors.  To the contrary, the NLRA provides that "no employer subject to [the

2   NLRA] shall be compelled to deem individuals defined herein as supervisors as employees for the

3   purpose of any law, ether national or local, relating to collective bargaining."  29 U.S.C. § 164(a).

4   Significantly, a supervisor does *not* engage in concerted activity protected by the Act by bringing or

5   threatening legal action.  *Hi-Craft Clothing Co. v. NLRB*, 660 F.2d 910 (3d Cir. 1981) (employer did

6   not commit unfair labor practice by discharging a supervisor for threatening to bring an unfair labor

7   practice charge over wage issue); *Triality dba Iron Workers Local 509 (Rodney Gene Watson)*, 290

8   NLRB 98 (1988) (statutory supervisor is ineligible to file decertification petition under the Act).

9        The NLRA defines a "supervisor" as:

> Any individual having the authority, in the interest of the employer, to
> hire, transfer, suspend, lay off, recall, promote, discharge, assign,
> reward, *or* discipline other employees, *or* responsibility to direct them,
> *or* to adjust their grievances, *or* to effectively recommend such action,
> if in connection with the foregoing exercise of such authority is not of
> a merely routine or clerical nature, but requires the use of independent
> judgment.

14  29 U.S.C. § 152(11).  (Emphasis added.)  The definition is in the disjunctive.  Therefore, individuals

15  need only "hold the authority to engage in any 1 of the 12 supervisory functions (*e.g.,* 'assign' or

16  'responsibility to direct') listed in Section 2(11)" to meet the duties test for supervisory status.

17  *Oakwood Healthcare, Inc.*, 348 NLRB No. 37; 2006 WL 2842125 (NLRB), at p. 2 (2006).   An

18  individual is a supervisor if he or she exercises any one of the twelve supervisory functions in the

19  interest of the employer through the exercise of independent judgment.  (*Id.*)

20        Here, there is no evidence whatsoever, much less undisputed evidence, to support a

21  conclusion that Plaintiff was a non-supervisory employee entitled to the protections of federal labor

22  law.  To the contrary, Bally has established through competent, admissible evidence that the position

23  of Sales Manager had as its job duties the assignment of work *and* the making of effective

24  recommendations to hire, fire, discipline and critically evaluate employees in the interest of Bally,

25  and that these decisions involved the exercise of independent judgment.  (Machnikowski Decl., ¶ 4.)

26  Plaintiff's Complaint concedes, albeit evasively, that Plaintiff was a "manager" in that he seeks to

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  represent a class of managers and assistant managers.  (Complaint, ¶ 7.)  Otherwise, the Complaint

2  studiously avoids alleging the nature of Plaintiff's job or his job duties.  (*See* Complaint, ¶¶ 4-8.)

3        Because Plaintiff cannot establish that he indisputably was a statutory employee rather than a

4  statutory supervisor, he cannot establish for purposes of this motion that he is entitled to the

5  protection of the federal labor laws upon which his motion is founded.  Instead, although it was not

6  its burden to meet, Bally has established that Plaintiff was a statutory supervisor who was exempt

7  from the Act.  The motion to strike must therefore be denied.

8    **C.    The NLRA Does Not Provide Grounds For The Court To Strike The Class Action Waiver.**

9

10       Ignoring his supervisory status, Plaintiff argues that Bally' reliance upon the class action

11  waiver of the EDRP constitutes an unfair labor practice under Section 8(a)(1) of the NLRA.  He

12  asserts erroneously that:  (1) bringing a wage and hour claim as a putative class action is protected,

13  concerted activity under Section 7 of the NLRA; (2) the EDRP's class action waiver interferes with

14  Plaintiff's supposed Section 7 right to bring a putative class action in violation of Section 8(a)(1) of

15  the NLRA; (3) Section 7 is "analogous" to Section 2 of Norris-LaGuardia; and (4) therefore, the

16  Court must strike Bally's affirmative defenses raising the class action waiver.  The argument fails

17  because the Court lacks jurisdiction to grant relief that encompasses a finding that Bally has

18  committed an unfair labor practice, and because the waiver does not violate Section 8(a)(1).  In

19  short, if Plaintiff were correct, and Bally's enforcement of the class action waiver constitutes an

20  unfair labor practice in violation of Section 8(a)(1) of the Act, the inevitable conclusion is that the

21  District Court lacks authority to strike the 30th and 31st affirmative defenses, ***not*** that they should be

22  stricken as Plaintiff urges.

23    **1.    The Court Cannot Issue A Decision That Encompasses A Determination That Bally Has Committed An Unfair Labor Practice.**

24        **a.    *Garmon* Preemption Prevents Plaintiff From Obtaining The Relief He Seeks Through His Motion To Strike.**

25        The motion fails because Plaintiff's claim – that the class action wavier is unenforceable

26  because its enforcement constitutes an unfair labor practice – is preempted under *San Diego Building*

27  *Trades Council v. Garmon*, 359 U.S. 236 (1959).  The theory underlying *Garmon* preemption is that

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE; DECALRATIONS, CASE NO. C-08-00175 JSW

Congress has seen fit to establish a uniform system of enforcement of the national labor laws, and as such, courts cannot apply state laws that require a finding that employee or employer conduct is actually or arguably protected or prohibited by Sections 7 or 8 of the Act.

In *Garmon*, the Supreme Court held that that states are preempted from regulating conduct that is arguably protected or prohibited by the NLRA. The same analysis applies equally to federal courts sitting in diversity, applying the substantive law of the forum state. In *Sears, Roebuck & Co. v. San Diego District Council of Carpenters,* 436 U.S. 180, 197-205 (1978) the Supreme Court clarified that *Garmon* preempts claims arising out of arguably or actually protected or prohibited conduct where the issues to be decided under state law are identical to those which could be presented to the NLRB, and where the aggrieved party has a reasonable opportunity to invoke NLRB jurisdiction. *See also Sheridan v. IBEW Local 455*, 945 F.Supp. 12 (D. Mass. 1996) (state law claim preempted where conduct arguably constituted an unfair labor practice and Board had in fact asserted jurisdiction over the unfair labor practice charge). As the Court reasoned in *Garmon*, 359 U.S. at 244-45:

> The adjudication in California has throughout been based on the assumption that the behavior of the petitioning unions constituted an unfair labor practice. The conclusion was derived by the California courts from the facts as well as their view of the Act. It is not for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to § 7 or § 8 of the Act, the States *as well as the federal courts* must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

(Emphasis added.) *Garmon* thus stands for the proposition that potential or actual conflict with federal labor policy triggers preemption in federal and state courts. *Garmon* specifically prohibits courts from finding that conduct arguably or actually prohibited by the NLRA is unlawful. This determination is to be left to NLRB, the agency with specialized expertise in the area. In short, the *Garmon* preemption doctrine, rather than authorizing or compelling the order that Plaintiff seeks, forecloses the issuance of such an order.

Here, the centerpiece of Plaintiff's argument is that Bally's attempt to enforce the class action waiver constitutes an unfair labor practice forbidden by Section 8(a)(1) of the Act. Plaintiff's

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  claim is therefore preempted under *Garmon*.  Accordingly, the Court lacks authority to invalidate the

2  EDRP's class action waiver on the ground that it violates the NLRA.

3          **b.**    **Plaintiff Has Precluded The Relief He Seeks By His Own Conduct.**

4         As set forth above, the NLRB has exclusive jurisdiction to decide the issue of whether the

5  EDRP's class action waiver violates Section 8(a)(1).  29 U.S.C. § 160(a) (Board has power to

6  prevent unfair labor practices); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938).  In

7  *Myers*, the Supreme Court held that assertion of jurisdiction in the District Court prior to a Board

8  hearing on an unfair labor practice complaint would be "at war with the long settled rule of judicial

9  administration that no one is entitled to judicial relief for a supposed or threatened injury until the

10  prescribed administrative remedy has been exhausted."  *Id.*, at 50-51.  By filing a Charge alleging

11  that Bally's enforcement of its class action waiver constitutes an unfair labor practice, Plaintiff

12  concedes that this issue is within the exclusive, primary jurisdiction of the Board.

13         The Courts may not assume jurisdiction over an alleged unfair labor practice except to

14  review a final order of the NLRB in unfair labor practice cases.  29 U.S.C. § 160(e) (NLRB may

15  petition the District Court to enforce orders issued in ULP proceedings), 29 U.S.C. § 160(f) (any

16  person aggrieved by an order of the NLRB may obtain review of such order in the United States

17  Court of Appeals); *Myers*, at 50 (Sections 160(e) and 160(f) are the exclusive means of court review

18  of unfair labor practice proceedings).  By withdrawing his charge, Plaintiff has prevented the NLRB

19  from deciding the issue.  Plaintiff cannot now ask this Court to issue an order striking Defendant's

20  affirmative defenses enforcing the class action waiver in the EDRP because the Court cannot do so

21  without deciding the precise issue that Plaintiff has prevented the NLRB from deciding.[1]

22  Accordingly, the motion must be denied.

23          **2.**    **Plaintiff's Claim Is Time-Barred Under Section 10(b) Of The Act.**

24         To the extent that Plaintiff is contending that it constituted a violation of Section 8(a)(1) of

25  the Act for Bally to have entered into an EDRP with Plaintiff that contains a class action waiver, that

26  

---

27  [1]  When the Board's Regional Office determines, following an investigation, that the charge is non-
meritorious, it must give the charging party the opportunity to withdraw it.  If the charging party

28  refuses to withdraw the charge, the Regional Office then dismisses it.  NLRB Case Handling
Manual, § 10120.2, (CCH) ¶ 1202, at p. 615.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE; DECALRATIONS, CASE NO. C-08-00175 JSW

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

1  claim is time-barred.  Under Section 10(b) of the Act, a claim that an employer has violated Section

2  8 must be filed within six months of its occurrence.  29 U.S.C. § 160(b) ("no complaint shall issue

3  upon any unfair labor practice occurring more than six months prior to the filing of the charge with

4  the Board"); *CAB Assocs.*, 340 NLRB 1391 (2003) (limitations period begins to run when charging

5  party has actual or constructive notice of unfair labor practice; constructive notice occurs when

6  charging party would have discovered the unfair labor practice in the exercise of reasonable

7  diligence).  As Plaintiff entered into the EDRP on April 29, 2005 (Thierman Dec., Exh. A), and did

8  not file this Motion until June 3, 2008, Plaintiff's allegation is untimely.  Accordingly if the District

9  Court were to entertain Plaintiff's allegations concerning the purported illegality of the class action

10  waiver, notwithstanding the broad preemptive reach of the *Garmon* doctrine, the Court would be

11  required to find that Plaintiff's claim is time-barred because the Motion was filed over two-and one-

12  half years late.

13         **3.**        **The Class Action Waiver Does Not Violate NLRA § 8(a)(1).**

14        Even if the Court could decide whether the class action waiver constitutes an unfair labor

15  practice, Plaintiff's motion still would fail because it does not.  Neither the Board nor any Court has

16  ***ever*** held that bringing claims as a putative class action constitutes protected, concerted activity that

17  cannot be "interfered with" by entering into an arbitration agreement with a class action waiver.  The

18  authorities cited in Plaintiff's brief stand only for the non-controversial proposition that filing a

19  lawsuit over employment conditions may constitute protected, concerted activity, and an employer

20  may not lawfully retaliate against an employee or group of employees who have done so.  *See*

21  *Trinity Trucking & Materials Corp.*, 221 NLRB 364 (1975) (denying summary judgment to NLRB

22  General Counsel where General Counsel contended that employer violated Sections 8(a)(1) and

23  8(a)(3) by terminating employees who filed a lawsuit against it); *Brighton Retail, Inc.,* 2006 NLRB

24  Lexis 233 (2006) (Administrative Law Judge ("ALJ") found that employer unlawfully terminated

25  two employees, and disciplined another because they had complained about the conduct of their

26  supervisor.  ALJ also found that employer had engaged in other unlawful activity because of the

27  coercive circumstances in which it had interrogated two of the same employees to determine if they

28  were aware that yet another employee intended to file lawsuit against employer, and about other

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

protected activity in which they had engaged.  Class action waiver issue not addressed or adjudicated); *Freund Baking Co. v. NLRB*, 165 F.3d 928 (D.C. Cir. 1999) (union's sponsorship of employee lawsuit against employer constituted an unfair labor practice where union publicized lawsuit one day before Board-supervised union election); *Harco Trucking, LLC.*, 334 NLRB 478 (2005) (employer's sole defense to a charge that it had refused to hire an employee because of his participation in lawsuit against employer's predecessor in interest was that employer did not exist as an incorporated entity at the time the unfair labor practice occurred.  Board rejected this defense in light of employer's admissions in its answer, but did not address or decide whether a class action waiver was unlawful or ineffective).

Plaintiff makes much of the fact that, in *Brighton Retail, Inc.*, at *7, an ALJ decision not endorsed by the NLRB, the ALJ recited in passing that the employees "even discussed a possible class action based on age discrimination," and that, in *Harco Trucking, LLC,* at 482, the ALJ noted the employee lawsuit was a class action, and the employer-respondent did not dispute that the lawsuit was protected, concerted activity.  As noted above, neither case purports to decide that class action allegations constitute protected, concerted activity distinct from the maintenance of the lawsuit they are part of, let alone that an employer violates Section 8(a)(1) if it includes a class action waiver in an agreement to arbitrate employment disputes.

On its face, the EDRP's class action waiver does *not* interfere with any protected, concerted activity.  It does not prevent employees from discussing their disputes, agreeing to bring claims, filing arbitration demands together, or supporting each other by testifying at each other's arbitration hearing.  The EDRP does not reach organizing activity or union membership.  It expressly allows employees to file unfair labor practice charges and participate in unfair labor practice proceedings. (Thierman Decl., Exh. A, § 2.7.)  In short, the waiver does not require employees to abandon "concerted activities" for their "mutual aid or protection."  It is simply a procedural bar that precludes employees from having their claims heard in a single arbitration proceeding before the same arbitrator.  There simply is no authority holding that the NLRA forbids this result.  To the contrary, it is a bedrock principle of federal labor law that Courts must enforce arbitration agreements according to their terms. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 457-59 (1957)

(rejecting the notion that the Norris-LaGuardia Act withdrew jurisdiction of the federal courts to compel arbitration); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) (court should order arbitration unless it can be said with positive assurance that arbitration agreement is not susceptible of an interpretation that covers the asserted dispute); *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991) (arbitration will not be imposed upon parties beyond the scope of their agreement).

Plaintiff's assertion that the NLRA prohibits class action waivers in arbitration agreements is not supported by applicable precedent and is without merit. If, however, Plaintiff's assertion were presented to the District Court for resolution, the claim would be preempted under *Garmon*, as explicated above.

> ### D. The Norris-LaGuardia Act Does Not Prevent Federal Courts From Enforcing Arbitration Agreements With Class Action Waivers.

Sections 3 and 4 of the Norris-LaGuardia Act ("Norris-LaGuardia"), 29 U.S.C. §§ 103, 104, enumerate the specific acts that are not subject to restraining orders or injunctions. Neither section applies here, notwithstanding Plaintiff's assertion.

> #### 1. Section 4 of Norris-LaGuardia Does Not Enumerate "Bringing Putative Class Actions" As An Act That Cannot Be Enjoined.

Section 4 of the Norris-LaGuardia enumerates specific acts that are not subject to retraining orders or injunctions in a labor dispute. "Including class action allegations in a lawsuit" is *not* on the list. No case has held that Section 4 encompasses pursuing claims as putative class actions.

> #### 2. Bally's Arbitration Agreement Is Not A Prohibited "Yellow Dog" Contract Within the Meaning Of Section 3 Of Norris-LaGuardia.

Plaintiff's contention that the class action waiver in Bally's arbitration agreement renders it a "yellow dog" contract prohibited by Norris-LaGuardia is without merit. Section 3 of Norris-LaGuardia, 29 U.S.C. § 103, defines a "yellow dog" contract as one in which (a) an employee or prospective employee "undertakes or promises not to join, become or remain a member of any labor organization"; or (b) "undertakes or promises that he will withdraw from his employment relation in the event that he joins, becomes or remains a member of any labor organization." In *American Federation of Labor v. American Sash & Door Co.*, 335 U.S. 538, 541 (1949), cited by Plaintiff, the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   Supreme Court defined "yellow dog" contract as "a contract not to join or become a member of any

2   labor organization as a condition of getting or holding a job."  In *First Legal Support Services, LLC*,

3   342 NLRB 350, 362 (2004), also cited by Plaintiff, an employer responded to a union organizing

4   drive by requiring employees to sign "independent contractor" agreements, which had the effect of

5   stripping them of the right to organize.  The ALJ, with Board approval, held that the independent

6   contractor agreements were a sham, and were disguised "yellow dog" contracts aimed at prohibiting

7   employees "by agreement from engaging in union organizing activity."  *Id.*, at 363.

8        Bally's arbitration agreement does not even address, let alone prohibit, Plaintiff from joining,

9   becoming, or remaining a member of a labor union.  It has neither the purpose nor the effect of

10  prohibiting union organizing.  Plaintiff's motion does not contend otherwise.  Accordingly,

11  Plaintiff's reliance upon the Norris-LaGuardia Act is misplaced.

12  **V.    CONCLUSION**

13       Based upon the foregoing facts, arguments, and legal theories, Bally submits that the instant

14  motion should be denied.

15

16  Dated:  July 7, 2008                    WINSTON & STRAWN LLP

17

18                                          By:   /s/ Paul Coady
                                                  _____
19                                                Paul Coady
                                                  S. Shane Sagheb
20                                                Attorneys for Defendant
                                                  BALLY TOTAL FITNESS CORPORATION

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## <u>DECLARATION OF MARIAH MACHNIKOWSKI</u>

I, MARIAH MACHNIKOWSKI, declare as follows:

1.      I have personal knowledge of the following facts, and if called upon as a witness, I could and would testify competently thereto.

2.      I am currently employed by Bally Total Fitness Corporation ("Bally" or the "Company") as a Regional Director of Human Resources. I have held this position since August 2003. Prior to this, I held the position of Human Resources Manager from October 2000 until August 2003. Previously, I held the position of Training and Recruiting Manager. As such, I am thoroughly familiar with the job duties and responsibilities of club personnel, including sales managers.

3.      Plaintiff, Francisco Salazar, Jr. ("Salazar"), was employed by Bally from on or about May 6, 2005 to September 26, 2005. At the time of his termination, he was employed in the position of "sales manager" at the Chatsworth, California club.

4.      Employees assigned to the position of sales manager have as their primary duty the sale of memberships to members and new members. They also are responsible for overseeing the sales team working in the club to which they are assigned. Among other things, the sales managers are responsible for assigning work by ensuring that new member "leads" are divided among the employees in their sales team and properly followed-up upon. Moreover, they have the authority to effectively recommend that individuals be hired, disciplined, terminated, and critically evaluated in their performance reviews. Such recommendations are ordinarily made to the club manager at the club where the sales manager is assigned to work. These recommendations are more than perfunctory, and constitute a factor that the club manager relies upon in determining employment decisions relative to sales personnel. These responsibilities are among those performed by sales managers today, as also was the case during the time that Salazar was employed as a sales manager.

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3        Executed on July ___, 2008 in Norwalk, California.

4    LA:217175.1

5

6                                 _____
                                         Mariah Machnikowski

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PAUL J. COADY

## DECLARATION OF PAUL J. COADY

I, PAUL J. COADY, declare as follows:

1.     I am a member of the State Bar of California and the Bar of this Court.  I am a partner in the law firm of Winston & Strawn LLP, counsel of record to defendant, Bally Total Fitness Corp. ("Bally"), in this action.  I have personal knowledge of the following facts, and if called as a witness, could and would testify competently thereto.

2.     Attached hereto as Exhibit A is a true and correct copy of unfair labor practice charge no. 32-CA-23887, filed by plaintiff, Francisco E. Salazar, Jr. ("Plaintiff"), with the National Labor Relations Board on May 7, 2008.  This document was served upon Bally and forwarded to me for case-handling.

3.     Upon my receipt of Plaintiff's unfair labor practice charge, I had a series of communications with Catherine A. Ventola, the Board agent assigned to investigate the charge. In the course of these communications, I advised Ms. Ventola of Bally's position regarding the charge's lack of legal and factual merit.

4.     On or about May 27, 2008, I received a telephone call from Ms. Ventola, in which she advised me that Plaintiff had elected to withdraw the charge.  Attached hereto as Exhibit B is a true and correct copy of a letter from the Regional Director of Region 32 of the National Labor Relations Board, advising the parties of Plaintiff's withdrawal of the charge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 2, 2008 in Los Angeles, California.

_____
Paul J. Coady

EXHIBIT A

MAY-08-2008  15:58    NLRB REGION 20

FORM EXEMPT UNDER 44 U.S.C. 3512

FORM NLRB-501
(9-07)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-23887 | 5-8-2008 |

**INSTRUCTIONS:**
File an original together with four copies and a copy for each additional charged party named in item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Number of workers employed |
|---|---|
| BALLY TOTAL FITNESS and each of their subsidiaries doing business in California | over 1000 |

| c. Address (Street, city, state, and ZIP code) | d. Employer Representative | e. Telephone No. ( ) - |
|---|---|---|
| 8700 West Bryn Mawr Avenue Chicago, IL 60631 | | Fax No. ( ) - |

| f. Type of Establishment (factory, mine, wholesaler, etc.) | g. Identify principal product or service |
|---|---|
| Gym | Fitness |

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) **3** of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

BALLY TOTAL FITNESS is a corporation and commercial operator of fitness centers in California and throughout the United States and Canada employing thousands of employees in offices in almost every state. This employer has told its employees that as a condition of employment with the company, the employees must sign a compensation agreement which contains a mandatory arbitration provision. The arbitration provision provides, in part, that "BALLY TOTAL FITNESS CORPORATION (hereinafter referred to as "Bally" or the "employer") considers it in everyone's best interest that all employment-related disputes be submitted exclusively to final and binding arbitration, pursuant to the Bally Employment Dispute Resolution Procedure ("EDRP"), employee acknowledges ... that he/she is obligated to submit all covered disputes to mediation and/or binding arbitration pursuant to this EDRP, that employee is waiving his/her right to a jury trial based on covered disputes under this EDRP ... all Disputes related to the Employee, and no Disputes relating to any other employee, shall be submitted in the same proceeding to the Arbitrator selected pursuant to this Article Eight. The company requires its employees to sign the agreement before employment.

The National Labor Relations Board and the federal courts have repeatedly held that conditioning employment on an employee's promise to abandon protected activity is tantamount to insistence upon a so-called "yellow dog contract." See, e.g., Pratt Towers, Inc., 338 NLRB 61 (2002), Roehl Transport, Inc. and Jeffery L. Swanson 2004 NLRB LEXIS 619 (NLRB 2004).

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | | |
|---|---|---|
| FRANCISCO E. SALAZAR, JR, an individual | | |

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Telephone No. |
|---|---|
| c/o Thierman Law Firm, 7287 Lakeside Dr., Reno, NV 89523 | 775- 284-1500 |
| RECEIVED 5/7/2008 NLRB, Reg. 20 | Fax No. 775- 703-5027 |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _____ (signature of representative or person making charge) | Mark R. Thierman, Attorney (Print/type name and title or office, if any) | |
|---|---|---|
| 7287 Lakeside Dr., Reno, NV 89523 | (fax) 775- 703-5027 | 5-14-08 |
| Address | (775- 284-1500 (Telephone No.) | (date) |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

COPY SENT NLRB
Date 5/09/08 By ____



**United States Government**

**NATIONAL LABOR RELATIONS BOARD**
**Region 32**
1301 Clay Street, Room 300N
Oakland, CA  94612-5224

Telephone:  (510) 637-3300
Fax:  (510) 637-3315

June 17, 2008

Francisco E. Salazar, Jr.
c/o Thierman Law Firm
7287 Lakeside Drive
Reno, NV 89511

Mr. Mark R. Thierman, Esq.
Thierman Law Firm
7287 Lakeside Drive
Reno, NV 89511

Re:    **Bally Total Fitness and each of their subsidiaries doing business in California**
       **32-CA-23887**

Dear Mr. Salazar and Mr. Thierman:

This is to advise that, with my approval, the charges in the above-captioned matters have
been withdrawn.

Yours truly,

Alan B. Reichard
Regional Director



cc:    Bally Total Fitness
       8700 West Bryn Mawr Avenue
       Chicago, IL 60631