1   PAUL J. COADY (SBN: 81698)
    Email:  pcoady@winston.com
2   S. SHANE SAGHEB (SBN: 109878)
    Email:  ssagheb@winston.com
3   WINSTON & STRAWN LLP
    333 South Grand Avenue, 38th Floor
4   Los Angeles, CA  90071-1543
    Telephone:    213-615-1700
5   Facsimile:    213-615-1750

6   JOAN B. TUCKER FIFE (SBN: 144572)
    Email:  jfife@winston.com
7   WINSTON & STRAWN LLP
    101 California Street, Suite 3900
8   San Francisco, CA 94111
    Telephone:    415-591-1000
9   Facsimile:    415-591-1400

10  Attorneys for Defendant
    BALLY TOTAL FITNESS CORPORATION

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15  FRANCISCO E. SALAZAR, JR., on behalf of        No. C 08-00175 JSW
    himself, the general public and as an "aggrieved
16  employee" under the California Labor Code
    Private Attorneys General Act,                  **DEFENDANT, BALLY TOTAL FITNESS**
17                                                  **CORPORATION'S, MOTION TO**
                                                    **COMPEL ARBITRATION ON AN**
18              Plaintiff,                          **INDIVIDUAL BASIS AND TO STAY**
                                                    **FURTHER PROCEEDINGS PENDING**
19      vs.                                         **ARBITRATION; MEMORANDUM OF**
                                                    **POINTS AND AUTHORITIES IN**
20  BALLY TOTAL FITNESS a Delaware                  **SUPPORT**
    corporation doing business within the State of
21  California, and each of its subsidiaries doing  [Proposed Order filed concurrently herewith]
    business in California, and DOES 1 through 50,
22  inclusive,                                      Date:      August 15, 2008
                                                    Time:      9:00 a.m.
23              Defendants.                         Dept:      Courtroom of Hon. Jeffrey S. White

24

25

26

27

28

*Winston & Strawn LLP*
*333 South Grand Avenue*
*Los Angeles, CA 90071-1543*

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, Defendant, Bally Total Fitness Corporation ("Bally"), will, and hereby does, move for an order compelling plaintiff, Francisco E. Salazar, Jr., to arbitrate his claims against Bally on an individual basis and for an order staying further proceedings before this Court pending the completion of the arbitration.

Bally's motion is based upon this Notice, the Memorandum of Points and Authorities in support thereof, the Proposed Order filed concurrently herewith, the declarations of Mariah Machnikowski and S. Share Sagheb, the Request for Judicial Notice, all pleadings, records and files herein, and upon such oral argument as may be made at the hearing on this motion.

Dated:  July 11, 2008                    WINSTON & STRAWN LLP


By:   /s/
      Paul J. Coady
      Attorneys for Defendant
      BALLY TOTAL FITNESS
      CORPORATION

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................................................1

II.    ISSUE .....................................................................................................................1

III.   PROCEDURAL BACKGROUND.........................................................................1

IV.    STATEMENT OF FACTS .....................................................................................1

V.     ARGUMENT ..........................................................................................................3

    A.    The FAA Requires That Plaintiff's Individual Employment Claims Be
        Arbitrated ....................................................................................................3

    B.    The United States Supreme Court Has Found That A Party's Inability To
        Pursue Class Action Relief In Arbitration Does Not Render An Agreement To
        Arbitrate Unenforceable..............................................................................5

    C.    The EDRP Contains a Choice of Law Provision Requiring Application of
        Illinois Law to the Extent That State Law is Considered ............................6

    D.    Under Illinois Law, the Class Action Waiver at Issue is Enforceable.........8

    E.    To the Extent That *Gentry* Applies, Plaintiff Cannot Meet His Burden of
        Proving that *Gentry* Precludes Enforcement of the EDRP. .....................10

        1.    Plaintiff Cannot Demonstrate that the Potential Individual Awards Are
            Modest. ...........................................................................................11

        2.    There Is No Potential for Retaliation for Current Bally Employees
            Raising Wage and Hour Concerns. ................................................11

        3.    Bally Educates Its Employees of Their Rights Under Wage and Hour
            Laws. ..............................................................................................13

        4.    There Are No Real World Obstacles To the Vindication of Class
            Members' Rights, Which Should Invalidate the EDRP....................15

    F.    The EDRP Is Not Otherwise Substantively Unconscionable. ...................18

VI.    CONCLUSION......................................................................................................20

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrahim v. ESIS, Inc.*,
    No. C-07-04014, JCS, 2008 WL 220104 (N.D. Cal. Jan. 25, 2008) ...................................... 7

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002) .......................................................................................... 5

*Armendariz v. Foundation Health Psychcare Svcs., Inc.*,
    24 Cal. 4th 83 (2000) ............................................................................................ 18, 19, 20

*Bowen v. First Family Fin. Servs., Inc.*,
    233 F.3d 1331 (11th Cir. 2000) ...................................................................................... 5

*Carter v. Countrywide Credit Indus., Inc.*,
    362 F.3d 294 (5th Cir. 2004) .......................................................................................... 5

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ........................................................................................................ 4

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................................................ 3

*Discover Bank v. Superior Court*,
    134 Cal. App. 4th 886 (2005) ..................................................................................... 6, 18

*Dominium Austin Partners, L.L.C. v. Emerson*,
    248 F.3d 720 (8th Cir. 2001) .......................................................................................... 5

*Gentry v. Superior Court (Circuit City)*,
    42 Cal. 4th 443 (2007) ............................................................................................. passim

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20, 111 S. Ct. 1647 (1991) .............................................................................. 5

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79, 121 S. Ct. 513 (2000) ............................................................................... 5

*Hall v. Prudential-Bache Secs., Inc.*,
    662 F. Supp. 468 (C.D. Cal. 1987) ................................................................................. 4

*Harris v. The DirecTV Group, Inc.*,
    2008 U.S. Dist. LEXIS 8240 (N.D. Ill. Feb. 5, 2008) ................................................... 9

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) .......................................................................................... 5

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

ii

*Johnson v. West Suburban Bank*,
  225 F.3d 366 (3d Cir. 2000) ........................................................................ 5

*Kinkel v. Cingular Wireless*,
  857 N.E.2d 250 (Ill. 2006) ...........................................................8, 9, 10, 18

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
  74 Cal. App. 4th 1105 (1999) .................................................................... 20

*Livingston v. Associates Fin., Inc.*,
  339 F.3d 553 (7th Cir. 2003) ....................................................................... 5

*Melena v. Anheuser-Busch, Inc.*,
  847 N.E.2d 99 (Ill. 2006) ..................................................................... 18, 19

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................... 4

*Murphy v. Check 'N Go*,
  156 Cal. App. 4th 138 (2007) ............................................................... 17, 18

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal.4th 459 (1992) .................................................................................... 6

*Omstead v. Dell, Inc.*,
  473 F. Supp. 2d 1018 (N.D. Cal. 2007) ...................................................... 7

*Omstead v. Dell, Inc.*,
  Case No. C06-6293 PJH, 2008 WL 341099 (N.D. Cal. Feb. 5, 2008) .......... 6, 7, 8

*Rosen v. SCIL, LLC*,
  799 N.E.2d 488 (Ill. App. Ct. 2003) ........................................................... 6

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) ............................................................................... 10

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220, 107 S. Ct. 2332 (1987) .......................................................... 5

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ..................................................................................... 3, 4

*Washington Mut. Bank v. Superior Court*,
  24 Cal. 4th 906 (2001) ................................................................................ 7


**STATUTES**

9 U.S.C. § 1 ..................................................................................................... 4

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

9 U.S.C., §§ 1-16 ............................................................................................................ 2, 3

9 U.S.C. § 2 .......................................................................................................................... 3

9 U.S.C. § 4 .......................................................................................................................... 4

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .......................................................................... 16


**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 26(a)(1)(A)(iii) .................................................................................... 11

Fed. R. Civ. Proc. 26(a)(1)(C) .......................................................................................... 11

*Restatement (Second) of Conflicts of Laws* § 187(2) ...................................................... 6

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND FOR A STAY, MPA IN SUPPORT;
Case No. C08-00175 JSW

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant, Bally Total Fitness Corporation ("Bally"), files this motion to compel arbitration on an individual, non-class basis, of the claims of plaintiff, Francisco E. Salazar, Jr. ("Salazar"). Salazar voluntarily executed an agreement with Bally that unambiguously requires final and binding arbitration of all legal disputes between them.  The terms of the arbitration agreement expressly cover the wage and penalty claims that Salazar asserts in this action on his own behalf.  Furthermore, the arbitration agreement requires that Salazar pursue an arbitration proceeding individually, *i.e.*, on a non-class basis.

### II.    ISSUE

Can Salazar pursue wage and hour claims against his former employer when he signed an arbitration agreement that requires all disputes between him and his employer to be arbitrated on an individual basis?

### III.    PROCEDURAL BACKGROUND

On October 22, 2007, Plaintiff filed this action, on behalf of himself individually and on behalf of others similarly situated, in the Superior Court of the State of California, for the County of San Francisco.  The Complaint purports to allege claims for (1) failure to pay overtime wages, (2) failure to provide meal periods, (3) failure to provide paid rest periods, (4) waiting penalties, and (5) relief for paychecks being issued from an out of state bank.  Bally timely removed the action to this Court.

### IV.    STATEMENT OF FACTS

Plaintiff is a former Sales Manager of Bally.  Declaration of Mariah Machnikowski ("Machnikowski Decl.") ¶ 2 .  He was terminated on September 26, 2005 for stealing money from a member.  He then had fraudulent reinstatement paperwork created that he submitted to Bally in an attempt to be rehired.  However, his scheme was discovered and he has not worked at Bally since September 2005.  Machnikowski Decl. ¶ 2.  In connection with his employment, on April 29, 2005, Plaintiff entered into a written agreement entitled, "Bally Total Fitness Corporation Employment Dispute Resolution Procedure" ("EDRP").  (A copy of the EDRP is attached as Exhibit A to

1

1   Machnikowski Decl. ¶ 3.)  Pursuant to the terms of the EDRP, the claims that Plaintiff has asserted

2   here must be resolved by final and binding arbitration on an individual basis.

3          Section 1.1 of the EDRP requires Plaintiff and Bally to submit to arbitration "any and all

4   Disputes between the parties that arise from or relate to the Employee's employment with the

5   Employer, and that concern legally protected rights for which a court or administrative tribunal, in

6   the absence of this EDRP, would be authorized by law to grant relief."  *See* EDRP, § 1.1.  By way of

7   example, the EDRP identifies as "Covered Disputes" all claims for unpaid "wages or other

8   compensation due" and "violations of any … state … statute, ordinance or regulation."  *Id*.  The

9   EDRP binds not only Bally, but also its "subsidiary and/or affiliated entities…."  *Id*. at § 1.2.

10         Under its terms, the EDRP's arbitration procedure substitutes for any court action as the

11  exclusive, final and binding method to resolve all covered disputes.  *See* EDRP, § 2.5.  Moreover, by

12  entering into the EDRP, the parties agreed not to "commence or pursue any litigation … on any

13  Dispute" covered by the EDRP.  See EDRP, § 23.2.

14         Accordingly, under the EDRP, Plaintiff must bring his employment claims against Bally in

15  arbitration, not in court, and he must bring his claims individually.  Section 8.4 of the EDRP bars

16  collective and class-wide arbitrations.  It provides:

17              Unless the Employee and the president or other representative of the
                Employer specifically set forth in Paragraph 6.2 jointly agree
18              otherwise in writing, all Disputes related to the Employee, and no
                Disputes relating to any other employee, shall be submitted in the
19              same proceeding to the Arbitrator selected pursuant to this Article
                Eight.
20

21  EDRP, § 8.4 (emphasis added).

22         The EDRP expressly acknowledges that it is governed by the Federal Arbitration Act

23  ("FAA").  "Any proceeding pursuant to this EDRP shall be an arbitration proceeding subject to the

24  Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA')."  *See* EDRP, § 21.1.  Section 25 of the EDRP,

25  entitled "Choice of Law," states:

26

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4

> Bally is a Delaware corporation with its principal place of business in Chicago, Illinois.  The Parties agree that this EDRP was entered into in the State of Illinois, and that all issues relating to the construction, formation, and enforceability of this EDRP shall be governed by the FAA and, to the extent state law is applied, the internal laws of the State of Illinois, without reference to Illinois choice of law rules.

5  EDRP § 25.1.

6  An arbitration under the EDRP must be initiated in the county where the employee

7  performed the employment duties.  See EDRP, § 9.1.  Salazar was employed at the Bally fitness club

8  located in Chatsworth, California.  Machnikowski Decl. ¶ 3.  Thus, Salazar was required to initiate

9  an arbitration concerning his disputes in Los Angeles County.

10  The allegations in Plaintiff's Complaint involve matters that arise out of his employment

11  relationship with Bally.  The parties mutually intended and agreed to submit all disputes regarding

12  such matters to final and binding arbitration pursuant to the terms of the EDRP.  Inasmuch as the

13  EDRP requires Plaintiff to proceed individually in an arbitration proceeding, this Court should

14  compel Plaintiff to submit individually his claims to arbitration, and stay this proceeding until after

15  the completion of the arbitration.

16  **V.    ARGUMENT**

17  **A.    The FAA Requires That Plaintiff's Individual Employment Claims Be Arbitrated**

18

19  The Federal Arbitration Act ("FAA"), 9 U.S.C. section 1, *et seq*., governs the arbitrability of

20  Plaintiff's individual claims.  The EDRP explicitly provides, "Any proceeding pursuant to this

21  EDRP shall be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16…."

22  *See* EDRP, § 21.1.

23  The EDRP is enforceable under the FAA.  The FAA provides, in relevant part:

24  > A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter
25  > arising out of such contract or transaction … ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law
26  > or in equity for the revocation of any contract.

27  9 U.S.C. § 2 (emphasis added).

28

1    Thus, the FAA establishes a strong federal policy favoring arbitration as an expeditious and

2    economical alternative means of dispute resolution. *Southland Corp. v. Keating*, 465 U.S. 1, 10

3    (1984); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (The FAA requires courts to

4    "rigorously enforce agreements to arbitrate..."). Moreover, the FAA applies to all employment

5    agreements except the employment contracts of transportation workers. *Circuit City Stores, Inc. v.*

6    *Adams*, 532 U.S. 105, 109 (2001); 9 U.S.C. § 1.

7    It is well-settled that the FAA preempts any inconsistent state law. In *Southland Corp. v.*

8    *Keating*, 465 U.S. 1 (1984), the United States Supreme Court held that the FAA is a body of

9    substantive law applicable in both state and federal courts. *Id.* at 12. By enacting the FAA,

10   Congress declared a national policy favoring arbitration and withdrew the power of the states to

11   require a judicial forum for the resolution of claims which the contracting parties agreed to resolve

12   by arbitration. *Id. See also*, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

13   (1983) (the FAA is a body of federal substantive law, enforceable in both state and federal courts,

14   and preempts any state laws or policies to the contrary); *Hall v. Prudential-Bache Secs., Inc.*, 662 F.

15   Supp. 468, 470-471 (C.D. Cal. 1987) (same).

16   The scope of the EDRP that Plaintiff signed is broad and expressly encompasses any legal

17   dispute between Plaintiff and Bally arising from Plaintiff's employment by Bally. *See* EDRP, § 1.1.

18   Plaintiff's Complaint alleging claims for unpaid overtime compensation, penalties for missed meal

19   and rest breaks, and penalties for paychecks written on out of state banks are predicated on

20   allegations stemming from his employment. His claims against Bally, therefore, fall squarely within

21   the scope of the arbitration provision contained in the EDRP. Thus, there can be no doubt as to the

22   arbitrability of all claims asserted in Plaintiff's Complaint.

23   Where, as here, a party refuses to arbitrate claims within the scope of a valid arbitration

24   agreement, a judicial order compelling arbitration is mandatory under applicable law:

25       [U]pon being satisfied of the making of the agreement for arbitration
         or the failure to comply therewith is not an issue, the court shall make
26       an order directing the parties to proceed to arbitration in accordance
         with the terms of the agreement.

27

28

1    9 U.S.C. § 4.  (Emphasis added.)  An order compelling arbitration of Plaintiff's claims is warranted

2    here.

3         **B.    The United States Supreme Court Has Found That A Party's Inability To
         Pursue Class Action Relief In Arbitration Does Not Render An Agreement To
4        Arbitrate Unenforceable.**

5         To defeat Bally's motion, *Plaintiff bears the burden* of showing that the arbitration

6    agreement at issue is not enforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-

7    92, 121 S. Ct. 513, 522 (2000); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227,

8    107 S. Ct. 2332, 2337 (1987).

9         The United States Supreme Court and numerous circuit courts have considered and rejected

10   the argument that an arbitration agreement is unenforceable because it may preclude class or

11   collective action relief.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S. Ct. 1647

12   (1991) (arbitration was not inadequate, despite plaintiff's contention that arbitration procedures did

13   not provide for class actions); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159,

14   174-75 (5th Cir. 2004) (arbitration clause was not rendered unconscionable by provision barring

15   arbitrator's ordering of consolidation or class arbitration); *Carter v. Countrywide Credit Indus., Inc.*,

16   362 F.3d 294, 298 (5th Cir. 2004); *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 558-59 (7th Cir.

17   2003); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) (finding

18   an arbitration agreement precluding class claims valid and enforceable); *Adkins v. Labor Ready, Inc.*,

19   303 F.3d 496, 502-03 (4th Cir. 2002); *Johnson v. West Suburban Bank*, 225 F.3d 366, 371 (3d Cir.

20   2000); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1337-39 (11th Cir. 2000).

21        In *Gilmer*, the former employee Plaintiff argued he should not be compelled to arbitrate his

22   claims under the Age Discrimination in Employment Act ("ADEA") because he would be unable to

23   pursue collective treatment in arbitration. *Id.*, 500 U.S. at 41. The United Supreme Court rejected

24   Plaintiff's argument, finding that "even if the arbitration could not go forward as a class action or

25   class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the

26   possibility of bringing a collective action does not mean that individual attempts at conciliation were

27   intended to be barred."  *Id.* at 32 (citation omitted).

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

5

1    In ruling on this motion, the Court should give weight to the significant federal case law that

2    has considered and rejected the argument that an arbitration agreement is unenforceable if class

3    treatment is unavailable.

4    **C.    The EDRP Contains a Choice of Law Provision Requiring Application of Illinois
         Law to the Extent That State Law is Considered.**

5

6    As cited above, Section 25.1 of the EDRP states that to the extent state law applies, the laws

7    of Illinois apply. Accordingly, to the extent this Court looks to state law to determine whether the

8    class action waiver is enforceable, this Court must look to the state law of Illinois. Illinois courts

9    have found class arbitration waivers to be valid and enforceable, without reliance upon the factors

10   identified in *Gentry v. Superior Court (Circuit City),* 42 Cal. 4th 443, 463 (2007). *See, e.g., Rosen v.*

11   *SCIL, LLC*, 799 N.E.2d 488 (Ill. App. Ct. 2003) (class arbitration waiver not unconscionable).

12   *Gentry*, discussed *infra*, therefore does not apply.

13   "In determining whether to enforce a contractual choice-of-law provision, California courts

14   follow *Restatement (Second) of Conflicts of Laws* § 187(2), which reflects a strong policy favoring

15   the enforcement of such provisions." *Omstead v. Dell, Inc.*, Case No. C06-6293 PJH, 2008 WL

16   341099, *23-26 (N.D. Cal. Feb. 5, 2008) ("*Omstead II*") (*citing Nedlloyd Lines B.V. v. Superior*

17   *Court*, 3 Cal.4th 459, 464-65 (1992)). The court must first determine either: (1) whether the chosen

18   state (i.e. Illinois) has a substantial relationship to the parties or their transaction, **or** (2) whether

19   there is any other reasonable basis for the parties' choice of law. If either of these inquiries is met,

20   the court must next determine whether the chosen state's law is contrary to a fundamental policy of

21   California. If there is no such conflict, the court must enforce the parties' choice of law. If,

22   however, there is a fundamental conflict with California public policy, the court must then determine

23   whether California has a materially greater interest than the chosen state in the determination of the

24   particular issue. *See Nedlloyd Lines B.V*, 3 Cal. 4th at 466; *Discover Bank v. Superior Court*, 134

25   Cal. App. 4th 886 (2005).

26   Bally's burden is only to demonstrate that Illinois has a substantial relationship to the parties

27   **or** their transaction, **or** that a reasonable basis otherwise exists for the choice of law. *Omstead II,*

28   2008 WL at *24. Bally has met this burden because, as set out in the EDRP, the principal place of

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  business and the corporate headquarters for Bally is Illinois.  Accordingly, the parties' choice should

2  be enforced unless Plaintiff can establish "both that the chosen law [Illinois law] is contrary to a

3  fundamental policy of California **and** that California has a materially greater interest in the

4  determination of a particular issue." *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 917

5  (2001) (emphasis added).  *See also Omstead II*, 2008 WL at *23-26.

6          Plaintiff cannot show that Illinois law is "contrary to a fundamental policy of California."

7  Illinois law enforces class action waivers in certain circumstances, as does California.  The Court in

8  *Gentry* stated, "We cannot say categorically that all class arbitration waivers in overtime cases are

9  unenforceable." *Gentry*, 42 Cal. 4th at 46.  "A class action waiver in an arbitration policy is not per

10  se invalid." *Abrahim v. ESIS, Inc.*, No. C-07-04014, JCS, 2008 WL 220104 (N.D. Cal. Jan. 25,

11  2008) (*citing Gentry*, 42 Cal. 4th at 463).  In *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018 (N.D. Cal.

12  2007) ("*Omstead I*"), the court considered a similar situation.  There, the court had granted

13  defendant's motion to compel arbitration on an individual basis, thereby enforcing a class action

14  waiver.  The court reaffirmed its decision when the plaintiff sought reconsideration after *Gentry* was

15  decided by the California Supreme Court.  *Omstead II*, 2008 WL 341099, *23-26.  In that case, the

16  California plaintiff had purchased a laptop from Dell over the internet.  The purchase agreement

17  included a provision requiring arbitration of all disputes, on an individual, non-class basis, and

18  application of Texas law.  The court rejected plaintiff's argument that applying Texas law, which

19  would enforce a class action waiver, would run contrary to California's public policy that class

20  action waivers are unenforceable in certain instances.  While acknowledging California cases that in

21  certain circumstances invalidated class action waivers, the Court relied on the fact that the California

22  Supreme Court has "made it clear that there is no blanket policy in California against class action

23  waivers in the consumer context." *Omstead II*, 2008 WL 341099, *29.  On reconsideration

24  following the issuance of *Gentry*, the court again found that applying Texas law, which would

25  enforce a class action waiver, was not "contrary to a fundamental policy of California." *Id.* at *6.

26  The court noted that the Supreme Court in *Gentry*, "refused 'to say categorically that all class

27  arbitration waivers in overtime cases are unenforceable.'"  Rather, "[t]he court simply ruled that in a

28  case where it is alleged that an employer has systematically denied overtime pay to a class of

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   employees and a class action is sought despite the presence of an arbitration agreement that contains

2   a class action waiver, the trial court must consider the factors," including "the modest size of the

3   potential individual recovery, the potential for retaliation against members of the class, the fact that

4   absent members of the class may not be adequately informed of their rights, and 'other real world

5   obstacles to the vindication of class members' right to overtime pay through individual arbitration.'"

6   *Omstead II*, 2008 WL 341099, at *21.

7         Plaintiff cannot show that application of Illinois law is contrary to a fundamental policy of

8   California.  Therefore, it is unnecessary for the Court to decide whether Plaintiff can meet his

9   additional burden of showing that California has a materially greater interest in the determination of

10   this issue.

11         **D.    Under Illinois Law, the Class Action Waiver at Issue is Enforceable.**

12         In *Kinkel v. Cingular Wireless*, 857 N.E.2d 250 (Ill. 2006), the Illinois Supreme Court set out

13   the standard to apply in determining whether a class action waiver is unenforceable.  As set forth

14   below, the application of this standard compels the conclusion that the class action waiver in the

15   parties' EDRP is enforceable.

16         At issue in *Kinkel* was a consumer's claim against a cell phone company that a $150 early

17   termination fee in a standard service agreement constituted an unlawful penalty, *inter alia*.  The

18   service agreement contained an arbitration clause with a class action waiver.  The court held that the

19   waiver was procedurally and substantively unconscionable because under the arbitration agreement,

20   the plaintiff had to pay $125, plus attorney's fees, to pursue an individual claim of only $150.

21   Accordingly, the plaintiff could not be made whole without a class action.

22         The court held that in Illinois, a contract of adhesion, i.e. a take it or leave it contract, is not

23   procedurally unconscionable.  It noted that contracts of adhesion are "a fact of modern life," and "[i]t

24   cannot reasonably be said that all such contracts are so procedurally unconscionable as to be

25   unenforceable." *Kinkel*, 857 N.E.2d at 266.  Instead, the court defined procedural unconscionability

26   as where a contract term is "so difficult to find, read, or understand that the plaintiff cannot fairly be

27   said to have been aware he was agreeing to it." *Id.* at 264.  The court found a "degree" of procedural

28   unconscionability in the agreement at issue because it did not inform the plaintiff that she would

8

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    have to pay anything towards the cost of arbitration (when in fact she would have to pay the $125

2    filing fees); rather she was merely told that "fee information" was available upon request. *Id.* The

3    court noted, however, that this degree of procedural unconscionability was not sufficient to render

4    the class action waiver unenforceable. *Id.*

5           The court also found the agreement to be substantively unconscionable because, without the

6    class action, the $125 undisclosed arbitration filing fee for litigating the $150 individual claim would

7    leave the plaintiff without an effective remedy.  The court noted that class arbitration waivers are not

8    per se unconscionable: "a class action waiver will not be found unconscionable if the plaintiff had a

9    meaningful opportunity to reject the contract term *or* if the agreement containing the waiver is not

10   burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular

11   claim being asserted in a cost-effective manner.  If the agreement is so burdened, the 'right to seek

12   class-wide redress is more than a procedural device.'" *Kinkel*, 857 N.E.2d at 274 (emphasis added;

13   citations omitted).

14          The standard set out in *Kinkel* was analyzed more fully in *Harris v. The DirecTV Group, Inc.*,

15   2008 U.S. Dist. LEXIS 8240 (N.D. Ill. Feb. 5, 2008), where the court found that a class action

16   waiver in a term sheet that DirectTV provided to its customers was not procedurally or substantively

17   unconscionable.  Despite the fact that the consumer, Harris, and DirecTV were in a "disparate

18   bargaining position," and DirecTV's term sheet "[was] a contract of adhesion," the arbitration

19   provision was not procedurally unconscionable." *Id.* at *9.  The court noted that the arbitration

20   provision was conspicuous in the term sheet, and the consumer could have cancelled the agreement

21   and terminated the service, thereby rejecting the agreement, without substantially changing his

22   economic position, i.e. he was already a customer when the agreement was put in place, and

23   therefore would have only needed to cancel his service to reject the agreement. *Id.* at *11.  The court

24   also held that the agreement was not substantively unconscionable.  While the plaintiff in *Harris*

25   would have to pay an arbitration initiation fee equal to a court filing fee (like *Kinkel*), if Harris were

26   to prevail on the statutory claim at issue, he could receive actual or statutory damages of not less

27   than $100 and not more than $1000, plus punitive damages, costs and attorneys fees (unlike *Kinkel*).

28   The court recognized that although the amount of statutory damages was small, "unlike in *Kinkel*, it

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    is not 'an absolute certainty that [plaintiff] would not be made whole,'" because if the consumer

2    prevailed, he could obtain more than the $125 cost of arbitration plus attorneys fees.  The court also

3    found that the agreement was not substantively unconscionable because the facts did not suggest a

4    scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

5    *Id.* at *15.

6        Accordingly, under the standard enunciated in *Kinkel*, there is no basis under Illinois law for

7    plaintiff to argue that the class action waiver of the EDRP is both procedurally and substantively

8    unconscionable.  The employees do not have to accept the agreement;  they can freely decline to

9    execute the agreement and reject employment.  There are no hidden terms, buried in boilerplate or

10    referring to other sources.  Unlike the situation in *Kinkel*, the EDRP makes clear that the employer

11    not the employee pays the fees of arbitration.  Section 16.1 of the EDRP provides that, "The

12    Employer shall be **solely** responsible for the expenses of the arbitration (other than the Employee's

13    attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any

14    Employee witnesses).  The 'expenses of the arbitration' shall mean the expenses of the Arbitrator

15    (such as daily fee and travel) and filing fee …."  (Emphasis added.)  Finally, the employee can be

16    made whole by pursuing an individual claim in arbitration, unlike the plaintiff in *Kinkel*, without

17    being burdened by other features limiting the plaintiffs' ability to obtain a remedy in a cost-effective

18    manner.  Thus, under the unconscionability standard enunciated in *Kinkel* for evaluating the validity

19    of a class action waiver, the provisions of Section 8.4 of the EDRP limiting the number of employee

20    claims that can be submitted in the same arbitral proceeding must be found to be valid.

21        E.    **To the Extent That *Gentry* Applies, Plaintiff Cannot Meet His Burden of Proving**
        **that *Gentry* Precludes Enforcement of the EDRP.**
22

23        If this Court decides to apply California state law, notwithstanding the agreement of the

24    parties that Illinois law controls, plaintiff cannot meet his burden of showing that the class action

25    waiver is unenforceable.  Once the moving party demonstrates that an arbitration agreement exists,

26    the burden shifts to the opposing party to prove by a preponderance of evidence that there is a

27    ground for denying the enforceability of the agreement.  *Rosenthal v. Great W. Fin. Sec. Corp.*, 14

28    Cal. 4th 394, 413 (1996).  Plaintiff has not and cannot meet this burden.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    In *Gentry v. Superior Court (Circuit City)*, 42 Cal. 4th 443, 463 (2007), the California

2    Supreme Court ruled that in determining whether a class action waiver is enforceable, the trial court

3    is to consider four factors: (1) the modest size of the potential individual recovery; (2) the potential

4    for retaliation against members of the class; (3) the fact that absent members of the class may be ill-

5    informed about their rights; and (4) other real-world obstacles to the vindication of class members'

6    right to overtime pay through individual arbitration. *Gentry*, 42 Cal.4th at 463. In so ruling, the

7    Court also recognized that not "all class arbitration waivers in overtime cases are unenforceable" and

8    that the decision does "not foreclose the possibility that there may be circumstances under which

9    individual arbitrations may satisfactorily address the overtime claims of a class of similarly

10   aggrieved employees." *Id*. at 462-64. The Court did not prescribe any particular weighting as to

11   these four disjunctive factors, and left to the trial courts' discretion the issue of how to apply these

12   factors in particular cases.

13   Here, there is insufficient evidence to support ***any*** of the four factors cited in *Gentry*.

14   **1.    Plaintiff Cannot Demonstrate that the Potential Individual Awards Are**
         **Modest.**

15

16   In *Gentry*, the Court found that "individual awards in wage and hour cases tend to be

17   modest" because "overtime litigation … usually involves workers at the lower end of the pay scale."

18   However, the Supreme Court did not set any bright-line rule for how large a claim must be to be

19   more than "modest" so that the plaintiff would have adequate incentive to bring a claim

20   notwithstanding a class action waiver. *Gentry*, 42 Cal. 4th at 457-58. Plaintiff has provided no

21   evidence that his claims are modest. He has not alleged a particular dollar amount at issue in his

22   Complaint or in his Initial Disclosures, despite the obligation of Federal Rule of Civil Procedure

23   26(a)(1)(A)(iii) that he do so. *See* Docket nos. 1 and 11; Federal Rule of Civil Procedure

24   26(a)(1)(A)(iii) (a party must provide "a computation of any category of damages claimed by the

25   disclosing party. . . .").

26   **2.    There Is No Potential for Retaliation for Current Bally Employees**
         **Raising Wage and Hour Concerns.**

27

28   Bally has gone to great lengths to ensure its employees are not subjected to retaliation for

11

raising wage and hour concerns.  Although the *Gentry* court makes the generalized finding that "a current employee who individually sues his or her employer is at greater risk of retaliation," there is no evidence that, *in this case*, current Bally employees are at risk of potential retaliation for asserting their rights under wage and hour laws.  *Gentry*, 42 Cal. 4th at 459.

The attached Declaration of Mariah Machnikowski sets forth these measures in more detail.  But in general, Bally provides the following assurances to its employees that they will not be subjected to reprisals for raising concerns and complaints about their employment rights, including wage and hour matters.

- The "*Statement of Understanding Regarding Timekeeping Obligation*s" states that employees should report any timekeeping concerns immediately to Human Resources, Bally's confidential hotline, payroll@ballyfitness.com, or the Employee Problem Solving Procedure (described below), or an employee may bypass any supervisor or manager and report to a higher level of Bally management and/or Bally's Human Resources Department.  It specifically provides there will be no retaliation for such a report.  M. Machnikowski Decl. ¶15.

- The "*Report All Time Worked*" policy states that employees will not be retaliated against for reporting any timekeeping violation, and that employees can raise such concerns to the Department Manager, the Area Director or Regional Director of Human Resources.  Machnikowski Decl. ¶ 7.

- The "Company Timekeeping Policies," provides that employees should report any timekeeping violation "to the Department Manager, Area Director, Regional Director of Human Resources or the company confidential report line," and assures employees that they will not be punished for making such a report.  Machnikowski Decl. ¶ 14.

- The Employee Handbook describes Bally's "Open Door Policy," discusses employee's rights as Bally employees in detail, sets out Bally's comprehensive internal grievance procedure, the "Employee Problem Solving Procedure ("EPSP"), and states that "[e]very Bally employee has [the] right [to raise concerns] without fear of retaliation."  Machnikowski Decl. ¶ 17, 20.

- The Employee Handbook also has a section and a section entitled "PayDay," which makes clear that if employees have questions about their paychecks, they should contact their supervisors.  Machnikowski Decl. ¶ 11.

- A posting at all clubs informs employees that they may report any violations of company policy or procedures, confidentially, to their Human Resources Representative or to a confidential Hotline. Machnikowski Decl. ¶ 18.

- Every pay stub for every employee states, "Please report any timekeeping &/or payroll discrepancies to your manager, the Human Resources Department, the employee HR Hotline @ 1-866-572-2559 or payroll@ballyfitness.com." Machnikowski Decl. ¶ 19.

- During club visits, the Regional Human Resources Director speaks to employees to ensure they are getting their meal and rest breaks, answers any questions they have, and encourages employees to contact Human Resources with any concerns,  Machnikowski Decl. ¶ 22.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

12

- On their very first day of work during training, Bally tells all employees that they should not hesitate to report any such concerns up the chain of command, outside the chain or command, or directly to Human Resources, and they are given the name and phone number of the Regional Human Resources Director for this express purpose. Machnikowski Decl. ¶ 13.

In practice, these policies, encouraging the making of complaints and prohibiting any retaliation, are effective. For instance, if an employee complains about not being given meal or rest breaks or any other wage and hour violations, and it has not been resolved at the club level, the complaint is forwarded to the Regional Human Resources Director, who investigates the concern and resolves it. Machnikowski Decl. ¶ 27. Bally's Regional Human Resources Director, with responsibility for California clubs, has attested that in her experience, over 15 years working with Bally, virtually every wage and hour concern that has been raised has been resolved. Machnikowski Decl. ¶ 28. Even more compelling is the fact that, as far as she is aware, no employee has ever been subject to retaliation after raising such a concern. Machnikowski Decl. ¶ 28.

Human Resources personnel address promptly and confidentially any concerns raised, and take every step to ensure that there is no retaliation against any employee for raising a concern. Machnikowski Decl. ¶ 30. To ensure that there is no retaliation against any employee who has complained about an employment matter, club management also cannot terminate any employee without the approval of Human Resources. Machnikowski Decl. ¶ 31.

Bally takes extraordinary efforts to ensure that employees are comfortable raising concerns internally, without fear of retaliation. Thus, the "potential for retaliation" factor, elucidated in *Gentry*, does not support the invalidation of the class action waiver in this instance.

### 3. Bally Educates Its Employees of Their Rights Under Wage and Hour Laws.

Bally engages in extensive measures to educate its employees with regard to wage and hour matters and their rights as employees in general. There is no evidence that putative class members are or were unaware of their rights under California laws, such as their right to be paid for all time worked, including overtime, and to be provided with meal and rest breaks. Unlike *Gentry*, where the employer was found to have misled its employees regarding their employment rights, Bally *affirmatively* informs employees both orally and in writing of their right to be paid for all hours

13

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

worked, to overtime and meal and rest breaks, from the very first day of their employment, and throughout their employment.  Bally also has created numerous venues, each of which is available to employees, to correct any mistake in pay.

A number of written policies that are distributed to employees detail these rights.  The *Employee Handbook*, for example, which is given to employees on day one, makes clear that:

- "You must clock in at the beginning of your work day, out and in for meals, and out at the end of your work day;"

- "Non-exempt [hourly] employees are paid for all time worked;"

- "There is no such thing as donated time, time worked 'off the clock,' or compensatory time off;"

- Employees are urged to take their meal and rest periods at their scheduled times. Machnikowski Decl. ¶ 10-12 (Exhibits C, D).

The following information about employment rights and obligations is also distributed to all Bally employees.

- Bally also provides to employees a notice entitled, "Company Timekeeping Policies" which details the timekeeping policies.  Machnikowski Decl. ¶ 14.

- Bally employees receive annually a "*Statement of Understanding Regarding Timekeeping Obligations,*" which reminds employees to record all hours worked, and requires that the employees verify that they "understand that [they] may not volunteer time, work 'off the clock' or work 'on [their] own time,' even if [they] would like to do so and even if a supervisor or manager requests or instructs [them] to do so."  Machnikowski Decl. ¶ 15.

- Bally managers must attend a ninety minute wage and hour training session approximately once per year about California wage and hour requirements, including the requirement that employees must be paid for all time worked, that meals breaks must be duty-free, uninterrupted, and at least 30 minutes in length, and must commence before the sixth hour of work, and that employees must be given 10 minute rest breaks for each four hours worked. In these meetings, managers are also trained as to how to respond to employees' concerns surrounding paychecks, and how to ensure employees are paid correctly.  Managers are then instructed to take such training back to their clubs, and communicate these requirements to employees.  Machnikowski Decl. ¶ 24.

- Regional Human Resources Directors reiterate California wage and hour policies in teleconferences with managers twice a year, and directly to employees during club visits. Machnikowski Decl. ¶¶ 22, 26.

- The required California postings, which are prominently displayed in the clubs, advise employees of their rights under California law relating to meal and rest breaks, as well as their rights to be paid overtime, and comprehensive statements of the criteria for various exemptions under state law.  Machnikowski Decl. ¶ 16.

It is the Plaintiff's burden to demonstrate that the employees have been rendered unaware of

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

14

1   their rights.  Plaintiff cannot meet this burden in light of the extensive measures that Bally takes to

2   ensure that its employees are educated on these matters.  Thus, this *Gentry* factor is also not met, and

3   does not support the invalidation of the class action waiver.

4           **4.      There Are No Real World Obstacles To the Vindication of Class**
            **Members' Rights, Which Should Invalidate the EDRP.**
5

6           Finally, with regard to "real world obstacles" to the vindication of class members' right to

7   overtime pay through individual arbitration, the *Gentry* Court provides few examples of what such

8   obstacles would be.  As noted above, individual employees of Bally are not in any way impeded

9   from presenting and/or prosecuting claims for alleged unpaid wages and related penalties.

10  Consequently, there is no impediment to an employee's ability to file such actions individually,

11  rather than on a class basis.  Indeed, there is abundant evidence that proves that in the real world,

12  employees freely file individual claims against their California employers, even where the monetary

13  value is not large.

14          The files of the Superior Courts in California are filled with single plaintiff wage and hour

15  cases, many of which allege damages less than $100,000.  Bally submits herewith 129 civil

16  complaints, filed in one year alone.  This is only a small sample of the wage and hour complaints

17  filed by individual employees in the State of California.  It represents just some of the single plaintiff

18  wage and hour cases filed in the Los Angeles Superior Court, Central District, in 2007 alone.  This

19  sample does not include complaints filed in branch courts in Los Angeles County; it does not include

20  complaints filed in other counties; and it does not include complaints filed in the federal courts.  See

21  Declaration of Shane Sagheb ("Sagheb Decl.") at ¶ 3.

22          Each of these complaints contains an individual employee's claim premised on the

23  employer's alleged failure to pay all wages due and/or claims that seek a penalty under the

24  California Labor Code.  Complaints in which the individual employee attempts to recover restitution

25  under the unfair competition law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) not only for himself, but

26  also on behalf of other employees, have been excluded, as have complaints in which the employee

27  seeks relief as a private attorney general.  Similarly, complaints that include unrelated causes of

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

15

1    actions, such as claims for discrimination or wrongful termination, in addition to claims for alleged

2    wage and hour violations, also have been excluded.  Sagheb Decl. at ¶ 3.

3         Most of the single plaintiff wage and hour complaints in this sample, 72, contain no

4    allegation regarding the specific amount of damages and/or penalties sought by the employee or are

5    highly ambiguous regarding this subject.  However, a significant number, 57, are very specific

6    regarding the amount sought to be recovered.  19 of the 57 complaints that specify the amount in

7    controversy allege an entitlement in excess of $100,000.  The remaining 38 complaints seek an

8    award under $100,000, exclusive of interest, attorneys' fees and recoverable costs, and any alleged

9    entitlement to punitive damages (which cannot be awarded in these cases).  Each of the employees

10   initiating these 38 actions succeeded in engaging counsel, as is evidenced by the face of each

11   complaint.

12        The following five examples of the 38 actions referenced above illustrate that attorneys will

13   represent individual employees:

14        A.     The Pearl Law Firm of Encino filed a complaint on May 18, 2007 on behalf of Martin

15   Gonzalez (L.A. Superior Court no. BC371401) seeking recovery of alleged unpaid regular wages in

16   the amount of $490.00, unpaid overtime wages in the amount of $5,007.00, wages for rest break

17   violations in the amount of $8,484.00, penalties in the amount of $4,000.00 for the alleged failure to

18   provide accurate wage statements, and waiting time penalties in the amount of $2,520.00 (total =

19   $20,501.00).

20        B.     The Law Offices of Michael L. Tracy of Irvine filed a complaint on June 6, 2007 on

21   behalf of Marti Lunquist (L.A. Superior Court no. BC372307) seeking recovery of alleged unpaid

22   overtime wages in the amount of $7,039.00 and liquidated damages under federal law also in the

23   amount of $7,039.00, wages for meal period violations in the amount of $3,520.00, waiting time

24   penalties in the amount of $1,620.00, and penalties in the amount of $4,000.00 for the alleged failure

25   to provide accurate wage statements (total = $23,218.00).

26        C.     The law firm of Lopez Kohanski Adelstein & Dickinson of Burbank filed a complaint

27   on October 1, 2007 on behalf of Ryan Kushner (L.A. Superior Court no. BC378396) seeking

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    recovery of alleged unpaid wages in the amount of $16,800.00 and waiting time penalties in the

2    amount of $9,000.00 (total = $25,800.00).

3         D.    The law firm of Harris & Ruble of Los Angeles filed a complaint on June 7, 2007 on

4    behalf of Michael Connors (L.A. Superior Court no. BC372435) seeking recovery of waiting time

5    penalties in the amount of $14,437.50, alleged unpaid minimum wages in the amount of $60.00 and

6    an additional $60.00 of liquidated damages (the plaintiff included a similar claim under federal law

7    in the amount of $51.50, rather than $60.00), alleged unpaid overtime wages in the amount of

8    $131.25, damages in the amount of $100.00 for the alleged issuance of a paycheck drawn on an

9    account with insufficient funds and additional damages in the amount of $14,437.50 for the same

10    event, and penalties in the amount of $50.00 for the failure to provide a pay stub (total =

11    $29,276.25).

12         E.    The Bander Law Firm LLP of Los Angeles filed a complaint on April 2, 2007 on

13    behalf of Antonio DeLa Cruz (L.A. Superior Court no. BC368859) seeking recovery of alleged

14    unpaid overtime wages in the amount of $23,678.65, wages for meal and rest break violations in the

15    amount of $4,216.00, and penalties in the amount of $4,000.00 for the failure to provide accurate

16    wage statements (total = $31,894.65).[1]

17         Accordingly, the extensive evidence Bally submits herewith distinguishes this case from

18    *Murphy v. Check 'N Go*, 156 Cal. App. 4th 138 (2007), where a California Court of Appeal affirmed

19    a trial court's finding that a class action waiver was unenforceable in a wage and hour

20    misclassification case. The plaintiffs in *Murphy* claimed that class actions are the **only** effective way

21    to redress wage and hour violations because of the difficulty of prosecuting such cases individually.

22    A critical difference, however, between *Murphy* and the case at hand is that in *Murphy*, the

23    defendants presented **no** evidence addressing plaintiffs' contention that employment lawyers in

24    California as a group are unwilling to undertake single plaintiff wage and hour cases. Instead, the

25

26    ---
     [1] These five sample complaints are attached as Exhibit A to Defendants' Request for Judicial Notice
     ("RJN") filed herewith. The 33 remaining complaints alleging damages less than $100,000 are

27    attached to the RJN as Exhibit B. The 19 complaints alleging damages in excess of $100,000 are
     attached thereto as Exhibit C, and the 72 complaints that are non-specific or ambiguous with respect

28    to the amount in controversy are attached as Exhibit D.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

17

defendant exclusively relied upon a declaration authenticating the arbitration agreement.  Whereas the defendant in *Murphy* failed to present any evidence to rebut plaintiffs' claim, Bally has submitted substantial evidence that individual wage and hour claims routinely are prosecuted individually.

In *Murphy*, the trial court had considered whether under *Discover Bank* class actions would be "the only effective way to halt and redress" the alleged violations.  The court of appeal held, "[t]his issue was essentially a factual question, and plaintiff's declarations of counsel were the **only** evidence presented on that question.…  Those opinions [of counsel] constituted substantial evidence supporting the [trial] court's ruling that the class action waiver provisions of the agreement were 'exculpatory clauses' under *Discover Bank*, and therefore substantively unconscionable." *Murphy*, 156 Cal. App. 4th at 148.  The court noted that the decision of the trial court finding unconscionability was bolstered by *Gentry*, stating, "*Gentry* also confirmed that whether a class action waiver is exculpatory in the wage and hour context involves a 'factual showing' …[and] **[d]efendant failed to controvert [the plaintiffs'] declarations**." *Id.* at 148-49 (emphasis added.).  Thus, *Murphy* is entirely distinguishable and inapposite to the resolution of the pending petition.

### F.    The EDRP Is Not Otherwise Substantively Unconscionable.

In general, the enforceability of arbitration agreements in the employment setting has been evaluated based on principles of procedural and substantive unconscionability.  *See, e.g., Kinkel v. Cingular Wireless*, 857 N.E.2d 250 (Ill. 2006); *Armendariz v. Foundation Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83 (2000).  The EDRP is valid, enforceable and not unconscionable under both Illinois and California law.

Under Illinois law, arbitration agreements in the employment context are governed by "the regular principles of contract law" and are generally "enforceable except for state-law grounds for ordinary contract revocation." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 107, 109 (Ill. 2006).  Arbitration agreements are not unconscionable simply because the employee and employer do not have equal bargaining power. *Id.* at 109-110,  To the contrary, Illinois public policy favors employment-related arbitration and the Illinois Supreme Court has held that agreements to arbitrate employment-related disputes are valid and enforceable where they (1) do not cause the employees to forego the full range of remedies available at law; and (2) do not require the employees to bear

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

18

1    arbitral costs that are so large and prohibitive so as to have the effect of precluding employees from

2    effectively vindicating their statutory right. *Id.* at 111.

3            The EDRP meets both of these requirements. First, it allows plaintiff to pursue all remedies

4    that would be available to him in a court of law and requires that the arbitrator's decision be in

5    writing. Under Section 17.1, plaintiff is entitled to any award based on the evidence and the

6    applicable law. *See* EDRP § 17.1. Under Section 17.2, the award shall be in writing, signed and

7    dated by the arbitrator. *See* EDRP § 17.2.

8            Second, it does not require Plaintiff to bear *any* costs, let alone prohibitive costs.

9    Specifically, Section 16.1 of the EDRP provides that defendants are responsible for all costs that are

10   unique to the arbitral forum, such as the arbitrator's fees. *See* EDRP § 16.1. Given the absence of

11   any factors suggesting unconscionability under Illinois law and the Illinois policy favoring

12   arbitration agreements in the employment context, the EDRP is valid and enforceable.

13           Similarly, the EDRP satisfies California law as well, should the Court decide that it is

14   applicable notwithstanding the EDRP's choice of law provision. The California Supreme Court in

15   *Armendariz* held that agreements to arbitrate employment-related disputes are valid and enforceable

16   if, at a minimum, they: (1) provide for a neutral arbitrator; (2) provide the employee with an

17   opportunity for discovery, *i.e.* something less than the full panoply of discovery available in civil

18   actions; (3) allow the employee to seek all remedies that would be available in a court of law; (4)

19   provide for a written award by the arbitrator; and (5) provide that the employer would be responsible

20   for all costs that are unique to the arbitral forum, such as the arbitrator's fees. 24 Cal. 4th at 102,

21   105. Assuming *arguendo* that these requirements must be established here, notwithstanding

22   preemption of the FAA, and application of Illinois law, the EDRP satisfies each of them and

23   therefore cannot be found to be substantively unconscionable. Accordingly, it is fully enforceable.

24           First, the EDRP provides for the selection of a neutral arbitrator. *See* EDRP §§ 8.1-8.3.

25   Under Sections 8.2-8.3, the EDRP establishes a procedure whereby the American Arbitration

26   Association provides a list of potential arbitrators. *Id.* Bally and plaintiff have one opportunity each

27   to reject one entire list. *Id.* The arbitrator is then selected by each party alternatively striking

28   arbitrators from the list. *Id.* The last remaining arbitrator on the list shall be the arbitrator selected

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

19

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  to resolve the dispute.  *Id.*  Indisputably, this procedure ensures neutrality of the selected arbitrator.

2  Further, the EDRP provides that arbitrations are to be conducted under the ruled of the American

3  Arbitration Association.  *See* EDRP, ¶ 9.5.  California courts have acknowledged that the American

4  Arbitration Association's rules are "generally regarded to be neutral and fair."  *Lagatree v. Luce,*

5  *Forward, Hamilton & Scripps,* 74 Cal. App. 4th 1105, 1127 (1999).

6       Next, the EDRP provides the plaintiff with an opportunity for discovery.  For example, the

7  EDRP provides for the use of all discovery devices such as interrogatories and requests for

8  production to the extent they are allowed under the Federal Rules of Civil Procedure.  *See* EDRP §

9  10.3.  The EDRP also provides that plaintiff is entitled to take the deposition of one of Bally's

10  representatives, one additional witness and any expert(s) designated by Bally.  *Id.*  Finally, the

11  EDRP provides that the arbitrator may grant any additional requests for discovery necessary for a

12  "full and fair exploration of the issues."  EDRP § 10.5.  Given plaintiff's extensive opportunities for

13  discovery, this requirement is satisfied.

14       As discussed above the final two requirements of *Armendariz* are met because the EDRP also

15  allows plaintiff to pursue all remedies and damages that would be available to him in a court of law,

16  and it requires defendants to pay all arbitral fees.  *See* EDRP § 17.2, 16.1.

17       In sum, because the EDRP meets all the requirements under *Armendariz*, the agreement is

18  enforceable under California law, as well as Illinois law.

19  **VI.     CONCLUSION**

20       Based on the foregoing, Bally request that this Court issue an order (1) compelling plaintiff

21  to submit the claims herein to final and binding arbitration on an individual basis; and (2) staying

22  further judicial proceedings herein until after the arbitration is completed.

23

24  Dated:  July 11, 2008                    WINSTON & STRAWN LLP

25

26                                          By:    /s/
                                                   Paul J. Coady
27                                                 Attorneys for Defendant
                                                   BALLY TOTAL FITNESS
28                                                 CORPORATION

20