1  PAUL J. COADY (SBN: 81698)
   Email:  pcoady@winston.com
2  S. SHANE SAGHEB (SBN: 109878)
   Email:  ssagheb@winston.com
3  WINSTON & STRAWN LLP
   333 South Grand Avenue, 38th Floor
4  Los Angeles, CA  90071-1543
   Telephone:     213-615-1700
5  Facsimile:     213-615-1750

6  JOAN B. TUCKER FIFE (SBN: 144572)
   Email:  jfife@winston.com
7  WINSTON & STRAWN LLP
   101 California Street, Suite 3900
8  San Francisco, CA 94111
   Telephone:     415-591-1000
9  Facsimile:     415-591-1400

10 Attorneys for Defendant
   BALLY TOTAL FITNESS CORPORATION

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15

16 | FRANCISCO E. SALAZAR, JR., on behalf of | **No. C 08-00175 JSW**
   | himself, the general public and as an "aggrieved |
17 | employee" under the California Labor Code |
   | Private Attorneys General Act, | **DECLARATION OF MARIAH**
18 | | **MACHNIKOWSKI IN SUPPORT OF**
   |             Plaintiff, | **DEFENDANT, BALLY TOTAL FITNESS**
19 | | **CORPORATION'S, MOTION TO**
   |             vs. | **COMPEL ARBITRATION ON AN**
20 | | **INDIVIDUAL BASIS AND TO STAY**
   | BALLY TOTAL FITNESS a Delaware | **FURTHER PROCEEDINGS PENDING**
21 | corporation doing business within the State of | **ARBITRATION**
   | California, and each of its subsidiaries doing |
22 | business in California, and DOES 1 through 50, |
   | inclusive, | Date:      August 15, 2008
23 | | Time:      9:00 a.m.
   |             Defendants. | Dept:      Courtroom of Hon. Jeffrey S. White

24

25

26

27

28

*Left margin:* Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

I, Mariah Machnikowski, declare as follows:

I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently thereto, under oath.

1.      I am currently employed by Bally Total Fitness Corporation ("Bally" or the "Company") as Regional Director of Human Resources.  I have held this position since August 2003.  Prior to this, I held the position of Human Resources Manager from October 2000 until August 2003.  Previously, I held the position of Training and Recruiting Manager.  I have worked at Bally since 1989.  My current responsibilities include employee relations and compliance, including compliance with Bally's employment and human resources policies.  Among other things, I ensure that Bally's policies relating to paychecks, timekeeping, meal and rest breaks, and overtime are implemented and enforced at our clubs.  I am also familiar with Bally's employee and personnel records and information systems.

2.      The plaintiff in this action, Francisco E. Salazar, Jr., was employed by Bally from May 6, 2005 until September 26, 2005.  At the time of his termination, he was employed as a Sales Manager at the Bally club in Chatsworth, California.  Mr. Salazar was involuntarily terminated on September 26, 2005 for stealing money from a member.  He then attempted to be rehired by Bally by submitting fraudulent reinstatement paperwork.  Mr. Salazar's attempt to be rehired through false pretenses was unsuccessful, and he has not been employed at Bally since the time of his termination in September 2005.

3.      In connection with his employment, Mr. Salazar executed a written agreement entitled "Bally Total Fitness Corporation Employment Dispute Resolution Procedure" (or "EDRP").  A true and correct copy of the EDRP signed by Mr. Salazar is attached hereto as Exhibit A.

4.      Bally is committed, and long has been committed, to ensuring that all of its employees are fully educated about their employment rights, creating an environment and mechanisms by which employees are encouraged to raise any issues or complaints about their employment rights, and ensuring that they are protected against reprisals and retaliation of any form if they avail themselves of their rights.  Bally has also unequivocally made known to its employees, including those in California, that they have the right to bypass any and all members of management

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    above them, if they choose, and to present their concerns and complaints directly to senior members

2    of the Human Resources department and/or upper level management.

3        5.    Bally has comprehensive policies and practices informing employees of their

4    employment rights and obligations.  These include policies requiring employees to record their time

5    accurately, policies requiring employees to be paid for all time worked, including any overtime,

6    policies relating to paychecks, and for California employees in particular, policies providing

7    employees with appropriate meal and rest periods.  From the very start of their employment and

8    frequently throughout their employment, Bally employees also are told of the numerous avenues

9    available to them to report any problems or complaints; they are encouraged to report any problems

10   or complaints; and they are told that they will face no retaliation for doing so.  These

11   communications are made both orally and in writing.

12       6.    For example, on the first day of their employment, Bally employees are given a

13   number of policies, which they are to read and acknowledge, as well as an *Employee Handbook*.  A

14   Trainer reviews these policies with the new employees.  In addition, the employees participate in

15   formal new employee orientation, where Bally policies are again reiterated.

16       7.    One of the documents that is distributed to and reviewed with employees on their first

17   day of work is a notice entitled "*Report All Time Worked*," a true and correct copy of which is

18   attached hereto as Exhibit B.  This notice requires that employees immediately report any

19   timekeeping violation, and provides that they will not be retaliated against for doing so:  It states

20   specifically, "Any employee who is not being paid in accordance with these policies or who has

21   knowledge that they are being violated must **IMMEDIATELY** report the violation, in confidence,

22   to the Department Manager, Area Director or Regional Director of Human Resources.  Employees

23   will not be punished for making such a report." (Emphasis in original.)

24       8.    Another document that is distributed to and made available for review by every

25   employee at the outset of their employment is the *Employee Handbook.  See* Exhibits C and D for

26   true and correct relevant excerpts of the *Employee Handbook*.  The employee must acknowledge

27   receipt of the *Employee Handbook*, and verify that he or she understands that it is his or her

28   responsibility to become familiar with the procedures, policies, and benefits contained in the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

3

1   *Employee Handbook.* The employee further acknowledges that if there is something he or she does

2   not understand, it is his or her responsibility to request an explanation from the employee's

3   supervisor. As an example of a true and correct copy of such acknowledgement, *see* Exhibit E,

4   attached hereto.

5         9.    The *Employee Handbook* is an extensive and detailed description in everyday

6   language of Bally employees' employment rights and obligations. For example, the *Employee*

7   *Handbook* contains the following policies:

8         10.    A section entitled "Timekeeping" provides detailed information regarding accurately

9   recording time worked. Among other things, it states, "You must clock in at the beginning of your

10   work day, out and in for meals, and out at the end of your work day;" "Time sheets must be filled

11   out on the day you worked those hours and may not be filled out on another day;" "Non-exempt

12   [hourly] employees are paid for all time worked;" "There is no such thing as donated time, time

13   worked 'off the clock,' or compensatory time off;" "Misuse of the timekeeping system will result in

14   your dismissal." *See* Exhibits C, D.

15         11.    A section entitled, "Overtime," provides detailed information regarding the

16   Company's overtime policy, and a section entitled "PayDay," which makes clear that if employees

17   have questions about their paychecks, they should contact their supervisors. *See* Exhibits C, D.

18         12.    The *Employee Handbook* also contains a section related to meals and rest breaks,

19   which informs employees that their supervisors will provide them specific times for their meal and

20   rest periods. The policy urges employees to take their meal and rest periods at their scheduled times.

21   *See* Exhibits C, D.

22         13.    Also on the first day of employment, all new hires at Bally attend a *New Hire*

23   *Orientation* training program. The New Hire Orientation training program makes clear that if

24   someone has a concern or a complaint about any employment-related issue, he should not hesitate to

25   report the concern through a number of channels including: up the chain of command, outside the

26   chain of command, or directly to Human Resources. In this training, employees are given the

27   identity and contact information for the employee's Regional Human Resources Director for the

28   express purpose of allowing them access to reporting wage and hour concerns to Human Resources.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

4

14.     Bally also has distributed a notice to employees entitled, "*Company Timekeeping Policies*," a true and exact copy of which is attached hereto as Exhibit F.  This policy details the correct timekeeping procedures that employees must follow.  This policy informs employees that they must immediately report **any** timekeeping violation "to the Department Manager, Area Director, Regional Director of Human Resources or the company confidential report line 1-866-572-2559." (Emphasis added.)  This notice assures employees that they will not be punished for making such a report.

15.     Bally also distributes to employees annually a notice entitled, "*Statement of Understanding Regarding Timekeeping Obligations*," a true and exact copy of which is attached hereto as Exhibit G.  This notice requires employees to verify that it is "my responsibility to record all hours that I work [which] means that I must clock in before I begin work, clock out at the beginning of my meal breaks, clock back in at the end of my meal breaks, and clock out when I end work for the day."  It further states, "I also understand that I may not volunteer time, work 'off the clock' or work 'on my own time,' even if I would like to do so and even if a supervisor or manager requests or instructs me to do so."  This policy also makes clear how employees should report timekeeping concerns and specifically provides that there will be no retaliation for reporting such concerns.  It states in part that if the employee is "asked or instructed to work off the clock, or if my time has been changed to deny me overtime that I have worked, I am to **IMMEDIATELY** contact my District Manager of the Human Resources Department.  I may also use Bally's hotline, which is 1-866-572-2559 and may send an email to payroll@ballyfitness.com to report any such conduct."  It further states, "I further understand that if any such conduct occurs, it is my obligation to submit a complaint in writing to Bally management under the Employee Problem Solving Procedure contained in the *Employee Handbook*.  Under that procedure, in submitting a complaint, I am entitled to bypass any supervisor or manager that I believe has engaged in the misconduct I am complaining about, and instead may direct my complaint to a higher level of Bally management and/or Bally's Human Resources Department."

16.     The clubs also have the required California postings prominently displayed for all to read, advising employees of their rights under California law relating to meal and rest breaks, their

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

5

1   rights to be paid for overtime, and comprehensive statements of the criteria for various exemptions

2   under state law. *See* a true and exact copy of the California Wage Order No. 2, attached hereto as

3   Exhibit H.

4       17.    In addition to the numerous policies mentioned above, which make clear the various

5   avenues employees can raise concerns about wage and hour issues, Bally also has a highly detailed

6   "Employee Problem Solving Procedure ("EPSP"), set out in the *Employee Handbook*. The EPSP is

7   essentially an internal grievance procedure where employees can raise any issue, conflict or concern

8   to various different individuals all the way up to the Area Director and the Vice President of Human

9   Resources, and the employee is entitled to a prompt and objective resolution of any concern. *See*

10  Exhibits C, D.

11      18.    Bally also has other policies that unequivocally state that the Company encourages

12  the reporting of any complaints or concerns, and ensures there will be no reprisal for the raising of

13  such complaints or concerns. For instance, a posting at all facilities alerts employees to the

14  confidential Bally Hotline, and tells employees that they may confidentially "report any violations of

15  company policy or procedures to [their] Human Resources Representative." The posting further

16  advises that if employees are "unsure how to contact [their] HR representative or prefer not to report

17  the incident to [their] local representative, then contact the [Hotline] number," listed on the poster.

18  The poster makes clear that the each employee's "report will be kept in strict confidence." A true

19  and exact copy is attached hereto as Exhibit I.

20      19.    Additionally, **every** pay stub for every employee states, "Please report any

21  timekeeping &/or payroll discrepancies to your manager, the Human Resources Department, the

22  employee HR Hotline @ 1-866-572-2559 or payroll @ballyfitness.com." A true and exact copy is

23  attached hereto as Exhibit J.

24      20.    Bally also has an "Open Door Policy," set forth in the *Employee Handbook,* which

25  provides: "Bally is committed to its open door policy. You are urged to bring comments, criticism,

26  suggestions and questions to your Supervisor. By keeping our doors open to you we hope to keep

27  problems and frustrations from lessening your spirit for the job of pleasing our members. . . Bally

28  also offers many resources to resolve your issues and/or concerns. Managers, Supervisors, Area

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

6

Directors and Human Resources representatives are all available to assist our employees. We at Bally encourage everyone to maintain open communications. Do not hesitate to let your Supervisor know about problems or questions you may have. Every Bally employee has this right without fear of retaliation." *See* Exhibits C, D.

21.    In my position as Regional Director of Human Resources, in addition to the written policies and notices, which are distributed to employees at the beginning of their employment, and throughout their employment, I routinely take a number of additional steps to ensure that all employees understand Bally's wage and hour policies and their rights as employees, and that they feel free to raise any concerns without fear of retaliation.

22.    For instance, I frequently visit clubs and meet with club employees throughout the year. During these visits, I often ask the club employees whether they are getting their meal and rest breaks as scheduled, and answer any questions they have about the meal and rest break policy. When an issue has arisen, I also audit time cards to ensure that the employees are taking meal breaks. I make myself approachable and visible when I am in the clubs, and encourage employees to contact me with any concerns.

23.    In my club visits, I also remind the managers I visit in California about the California meal and rest period requirements, the requirement that all employees must accurately record their meal periods, the requirements that all employees must be paid for all time worked, including overtime, the prohibition of any off the clock work, and how to resolve concerns surrounding paychecks.

24.    Bally managers must attend a ninety minute wage and hour compliance training presented by the Human Resources Group approximately once every year throughout the state of California, and elsewhere. In this training, we review the California obligations to pay overtime and meal and rest period requirements, and train managers how to respond to employees' concerns surrounding paychecks, and how to ensure employees are paid correctly. With respect to meal periods, we make certain that managers understand that all nonexempt employees are entitled to a 30-minute, uninterrupted, duty-free meal period, that must commence before the beginning of the sixth hour of work, for any shift of more than five hours, and a second meal period for a shift longer

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

than ten hours. We also train managers that nonexempt employees are entitled to one ten minute rest break for every four hours worked, and that they must be relieved of all duty, and that such rest break should be given in the middle of the four hour block. We make clear that the Company is obligated to pay overtime to all nonexempt employees for work over eight hours in one day or more than 40 hours in one workweek, as well as for the first eight hours on a seventh consecutive day of · work in a workweek. We train managers that nonexempt employees are entitled to a duty-free, uninterrupted meal period of at least 30 minutes for any shift of more than five hours, and a second meal period for a shift longer than ten hours. During these trainings, we instruct managers to return to their clubs and ensure that club employees are adhering to these requirements. We also inform managers how they can and should audit time cards to ensure that their employees are complying with Company policy and California law. If I thereafter learn that a manager is not taking this training back to the employees at the club and ensuring compliance, I impose discipline against the manager, up to and including termination.

25.     We distribute acknowledgements to the managers at the end of the training, and collect the signed acknowledgements from each manager. In this acknowledgment, the manager states that his or she is "responsible for making sure timekeeping is done accurately by my subordinates," and that "[t]imekeeping MUST reflect the time worked and be consistent with state laws and company policy." The manager further acknowledges, "I also understand that if I violate this policy I am subjecting myself to disciplinary action up to and including suspension, demotion or termination." A true and exact copy of a form Acknowledgement is attached hereto as Exhibit K.

26.     I also host conference calls approximately twice per year with all managers in my region, and remind the California managers on the conference calls of the California meal and rest period requirements, the requirement that all employees must accurately record their meal periods, and the requirements that all employees must be paid for all time worked, including overtime.

27.     If an employee in my region complains about not being given meal or rest breaks or any other wage and hour violations, and that complaint is not resolved at the club level, the complaint is forwarded to me. I investigate the concern and resolve it. I remind the manager(s) involved, as necessary, of the legal requirements in California to provide meal and rest breaks, to

8

1   pay for all time worked, including all overtime. If necessary, I ensure that any manager who is

2   found to have violated Bally's policies is disciplined or counseled.

3       28.    In my experience, virtually every wage and hour concern that has come to me has

4   been resolved. I do not know of a single employee who has been subject to retaliation in any forum

5   or internally, after raising such a concern.

6       29.    When I learn of a wage and hour concern from a third party, involving an employee

7   in my region, I take the initiative to investigate the concern and resolve it as appropriate, even where

8   the person at issue did not raise a concern. I do not wait for an employee to raise a concern if I know

9   of a potential wage and hour issue. I am proactive, and investigate and resolve the issue.

10      30.    The Human Resources personnel and I address any concerns raised to us or

11  forwarded to us promptly and confidentially, and we do everything we can to ensure that there is no

12  retaliation against any employee for raising a complaint or concern, including any complaint or

13  concern regarding wage and hour compliance. This is Bally's policy, not only my own.

14      31.    It has been Bally's policy for many years in this region that club managers cannot

15  terminate employees without the involvement of and approval of Human Resources. *I am unaware*

16  *of any termination implemented in my region without the approval of Human Resources*. This

17  process ensures that no employee who has raised any concern or made any complaint is ever

18  retaliated against.

19

20      I declare under the penalty of perjury under the laws of the United States of America and the

21  State of California that the foregoing is true and correct. Executed on July _10_, 2008, in _Norwalk_,

22  California.

23

24                                      _M. Machnikowski_

25                                      Mariah Machnikowski

26

27  SF:210732.2

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

9

# EXHIBITS A thru G
# TO
# DECLARATION OF MACHNIKOWSKI

**Exhibit A**

## BALLY TOTAL FITNESS CORPORATION
## EMPLOYMENT DISPUTE RESOLUTION PROCEDURE
### ("EDRP")

BALLY TOTAL FITNESS CORPORATION (hereinafter referred to as "Bally" or the "Employer") considers it in everyone's best interest that all employment-related Disputes be submitted exclusively to final and binding arbitration, pursuant to the Bally Employment Dispute Resolution Procedure ("EDRP"). Bally recognizes that differences may arise between the Employer and the Employee arising out of or relating to the Employee's employment with the Employer, or the termination of that employment, and recognizes that resolution of any differences or Disputes is often time consuming and expensive. The Employer and the Employee (collectively hereinafter referred to as the "Parties") agree to submit, for resolution, as provided in this EDRP, any Covered Disputes, in order to gain the mutual benefit of resolving employment-related disputes in a timely and cost-effective manner. Each Party's promise to resolve Disputes in accordance with the provisions of this EDRP is consideration for the other Party's like promise. Because the employment relationship can be terminated by either the Employee or the Employer for any reason not otherwise prohibited by law, with or without cause, it is agreed that the Employee's employment and/or continued employment is additional consideration to Employee for Employee's promises herein.

THIS EDRP IS A TERM AND CONDITION OF EMPLOYMENT AND, THEREFORE, THE EMPLOYEE'S EMPLOYMENT OR CONTINUED EMPLOYMENT ON OR AFTER MAY 1, 2002 SHALL BE DEEMED TO BE ACCEPTANCE OF THE EMPLOYER'S OFFER TO RESOLVE DIFFERENCES OR DISPUTES PURSUANT TO THIS EDRP.

EMPLOYEES ARE URGED TO REVIEW THIS EDRP IN DETAIL. EMPLOYEES ARE FREE TO SEEK REVIEW OF THIS EDRP BY LEGAL COUNSEL.

1.    <u>Covered Disputes</u> (hereinafter referred to as "Dispute(s)")

1.1    Except as set forth below, the parties agree to submit to this EDRP, any and all Disputes between the parties that arise from or relate to the Employee's employment with the Employer, and that concern legally protected rights for which a court or administrative tribunal, in the absence of this EDRP, would be authorized by law to grant relief. By way of example, the type of claims covered by this EDRP include, but are not limited to, failure to hire, wages or other compensation due, breach of any contract or covenant, express or implied, torts, discrimination and/or harassment, including, but not limited to, discrimination and/or harassment based on race, color, sex, pregnancy, religion, national origin, ancestry, age, marital status, sexual orientation, mental or physical disability (actual or perceived), medical condition, veteran status, or any other protected status under state, local or federal law, benefits, whistleblower, defamation, violation of public policy and violations of any federal, state, or other governmental constitution, statute, ordinance or regulation.

1.2    For purposes of this EDRP, the term "Employer" is understood to include each of the Employer's subsidiary and/or affiliated entities, predecessors and successors, and all of their respective owners, stockholders, directors, officers, employees and pension or benefit plans and their fiduciaries.

1.3    For purposes of this EDRP, the term "Employee" is understood to include current and former employees and applicants for employment.

1.4    The following claims are not Disputes covered by this EDRP:

      1.    claims for workers' compensation benefits, monetary or otherwise;

      2.    claims for unemployment compensation benefits;

      3.    claims subject to the exclusive jurisdiction of the National Labor Relations Board; and

      4.    claims based upon an employee pension or other benefit plan, the terms of which contain an arbitration or other non-judicial dispute resolution procedure, unless and until those procedures have been exhausted.

1.5    This EDRP shall apply to any Dispute whether it arises or is asserted during or after termination of the Employee's employment with Employer.

1.6    Retaliation against any Employee for using this EDRP is prohibited, and claims of such retaliation are to be resolved under this EDRP.

1.7    Any disagreement concerning the formation, applicability, interpretation or enforceability of this EDRP, including any claim that all or any part of this EDRP is void or voidable, shall be resolved by the Arbitrator selected in accordance with Paragraph 8.3, and not by any federal, state, or local court or agency, except that either party may initiate a legal action in state or federal court to compel the parties to resolve any Disputes pursuant to this EDRP.

## 2.    Exclusivity, Exhaustion, Waiver and Binding Effect

2.1    All Disputes shall be presented for resolution pursuant to this EDRP.

2.2    Resolution of any Dispute pursuant to this EDRP is intended to be final and binding on the Parties to the fullest extent permitted by law.

2.3    The failure of a Party to initiate this EDRP within the time limits set forth in Article Four shall be deemed a waiver and release by that Party with respect to any Disputes relative to that Party in any forum, unless otherwise expressly agreed to in writing by the Employee and by the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2.4    Once this EDRP is initiated to adjudicate a Dispute, the failure of the opposing Party to state a counterclaim of which the opposing Party is or should have been aware within the time limits of Paragraph 6.5 shall be deemed a waiver and release by the opposing Party with respect to that counterclaim in any forum, unless otherwise expressly agreed to in writing by the Employee and by the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2

2.5    As to any Dispute, the Parties intend this EDRP to substitute for court action and any administrative action as the exclusive, final, and binding method to resolve the Dispute, whether based on federal, state or other governmental constitution, statute, ordinance or regulation, except as otherwise provided in Paragraph 2.7. The Parties shall be precluded from bringing or raising in court or before another forum, any Dispute which could have been brought or raised pursuant to this EDRP, unless otherwise expressly agreed to in writing by both the Employee and the president or other representative of the Employer specifically set forth in Paragraph 6.2.

2.6    Notwithstanding any claim or judicial determination that this EDRP is not the exclusive forum for final and binding resolution of Disputes, such Disputes shall be submitted for resolution hereunder (even if that resolution is determined to be non-binding) before filing or pursuing such Disputes in any other forum, except as otherwise provided in Paragraph 2.7.

2.7    Nothing herein shall preclude the Employee from pursuing or participating in administrative proceedings of the Equal Employment Opportunity Commission, or similar applicable state agency, or the National Labor Relations Board. However, if an agency issues a right to sue notice or letter, or an Employee seeks to intervene as a private party in a lawsuit commenced by such agency, final and binding arbitration pursuant to this EDRP will be the sole and exclusive remedy or formal method of resolving the Employee's Disputes.

### 3.    Distribution of EDRP

3.1    The Employer will give a copy of this EDRP to the Employee: a) at the time the Employee makes application for employment, b) for current employees, as soon as this EDRP is adopted by the Employer, c) at any time, upon Employer's receipt of a written request for a copy of this EDRP from Employee, or d) at any time the Employer deems appropriate, in its discretion, during an Employee's employment.

### 4.    Time Limit on Submitting Disputes

4.1    The Parties are committed to resolving their Disputes expeditiously. Accordingly, as to any Dispute(s), except Disputes arising under State or Federal statutory law, the Parties agree to waive all statutes of limitations that would apply in a court of law or administrative proceeding, and initiate this EDRP no later than one (1) year after the Dispute arises. As to any Dispute(s) arising under State or Federal statutory law, that statute's limitations period shall apply. Failure to initiate this EDRP within these time limits is intended to, and shall to the furthest extent permitted by law, be a waiver and release with respect to the Dispute, and, in the absence of a timely submitted Dispute, an Arbitrator has no authority to resolve the Dispute or render an Award. The time limit for initiating this EDRP shall not be subject to tolling, equitable or otherwise.

### 5.    Representation

5.1    The Employee and the Employer have the right to consult with an attorney or other representative at any phase of this EDRP, and the right to be represented by an attorney or other representative at any phase of the mediation or arbitration process; provided, however, that no current or former supervisory or managerial employee of the Employer shall represent

3

another Employee. If a Party intends to use a representative during mediation or arbitration, that Party must notify the other Party, in writing, of the name, address and telephone number of its representative prior to the entrance of the representative into the dispute resolution process.

### 6.    Initiation of EDRP and Time Limit for Counterclaim

6.1    It is specifically understood between the Parties that prior to initiation of this EDRP, the Parties must first exhaust the Bally Employee Problem Solving Procedure found in the Employee Handbook.

6.2    For an Employee to initiate this EDRP to resolve a Dispute, the Employee shall give written notice to the Employer as follows:

| | |
|---|---|
| Harold Morgan | cc:  Cary A. Gaan, Esquire |
| Senior Vice President of Human | Senior Vice President & General |
| Resources | Counsel |
| Bally Total Fitness | Bally Total Fitness |
| 8700 W. Bryn Mawr, 2nd Floor | 8700 W. Bryn Mawr, 2nd Floor |
| Chicago, IL  60631 | Chicago, IL  60631 |

This notice must be served within the time limit set forth in Paragraph 4.1 and in the manner specified in Article 7. The Employee's notice shall also state the address which the Employee will use for the purpose of this EDRP.

6.3    For the Employer to initiate this EDRP to resolve a Dispute, the Employer shall give written notice to the Employee pursuant to Paragraph 7.3. This notice must be postmarked within the time limit set forth in Paragraph 4.1.

6.4    The initiating Party's notice (hereinafter, the "Notice of Claim") shall state in detail the nature of the Party's claim(s), the date when the Dispute first arose, the names, work locations, and telephone numbers of any co-workers, members, or supervisors with knowledge of the Dispute and the relief requested.

6.5    Within thirty (30) calendar days after a Party's Notice of Claim is given, the opposing Party shall give a written answer to the claim(s) (the "Answer") and set forth any counterclaim(s) (the "Counterclaim") then known to the opposing Party.

6.6    Within thirty (30) calendar days after a Counterclaim is given, the Party initiating the EDRP shall give the counterclaiming Party a written statement of defenses to the Counterclaim ("Answer to Counterclaim").

6.7    Within thirty (30) calendar days after the filing of the Answer or the Answer to Counterclaim, whichever is later, the Parties shall hold an in-person meeting in an attempt to informally resolve all Disputes, including the Counterclaim, if any.

6.8    If the Parties are unsuccessful in resolving a Dispute, including any counterclaims, pursuant to a meeting held in accordance with Paragraph 6.7, the Parties shall select a mediator within sixty (60) calendar days thereafter from a list of mediators supplied by

Rev. 3/10/02

the American Arbitration Association ("AAA"). The Parties shall hold the mediation no later than sixty (60) calendar days after selection of the mediator. The mediator may make settlement suggestions to the Parties, but shall not have the power to impose a settlement upon them. If the Dispute is resolved in mediation to the satisfaction of the Parties, the matter shall be deemed resolved. If the Dispute is not resolved in mediation and proceeds to arbitration, any proposals or compromises suggested by either of the parties or the mediator shall not be referred to in the arbitration proceeding, and the Arbitrator will neither admit into the record nor consider any such proposals and compromises. The mediator cannot also serve as the Arbitrator in the subsequent proceeding unless all Parties expressly agree in writing. The Employer shall be solely responsible for the expenses of the mediation (other than the Employee's attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any Employee witnesses).

6.9    Except as otherwise provided in this EDRP, any mediation shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time of receipt from the other party of written notice of the Dispute.

7.    **Timing and Method of Giving Notice**

7.1    Service of any notice and/or submission, commencing with notice given pursuant to Article Six, shall be made by certified United States mail, return receipt requested, and shall be deemed effective on the date postmarked.

7.2    Service may also be made by a non-U.S. Postal Service package delivery service which provides a return receipt as proof of delivery such as Federal Express or similar overnight delivery services and shall be deemed effective on the date tendered and accepted by such service.

7.3    The Employer shall use the address last listed by the Employee with the Employer for income tax withholding in order to give the Employee any notices required hereunder, unless the written notice of the Employee required to commence this EDRP pursuant to Paragraph 6.2. specifies a different address. For all purposes, the Employee shall use the Employer's address specified in Paragraph 6.2.

7.4    The production of an affidavit of service or a signed and dated return receipt shall be adequate proof to presume delivery.

7.5    Any notices and/or submissions made by any Party pursuant to this EDRP to the Arbitrator shall also be made contemporaneously on the opposing Party. There shall be no communication by or with the Arbitrator by one Party without the participation of all other Parties.

8.    **Request for Arbitration and Motions to Dismiss**

8.1    In the event that mediation in accordance with Paragraph 6.8 is unsuccessful, the Party initiating this EDRP may file a request for arbitration with the AAA office nearest the county of venue specified in Paragraph 9.1. The request for arbitration shall be filed within thirty (30) calendar days after completing mediation in accordance with Paragraph 6.8 and shall

5

include copies of the Notice of Claim, the Answer, the Counterclaim, if any, the Answer to Counterclaim, if any, and a copy of this EDRP. All documents filed by a Party with the AAA shall be served at the same time on the other Party as specified in Article Six and in the manner provided for in Article Seven.

8.2     Any Dispute will be decided by a single decision maker called the "Arbitrator."

8.3     The Parties will confer and attempt to agree on the selection of the Arbitrator. If the Parties cannot so agree, the Employer shall request a list of proposed arbitrators from the AAA. The list shall consist of at least seven proposed arbitrators with the educational and professional biographies of each. Each proposed arbitrator must reside within the state of venue as specified in Paragraph 9.1 and must be a licensed attorney with experience in employment disputes. The Employer and Employee may each reject one entire list of proposed arbitrators before beginning the selection process. The Arbitrator shall be selected by the Parties by alternately striking names from the list. The Employee strikes first. The last name remaining on the list shall be the Arbitrator selected to resolve the Dispute(s). The Employer and Employee shall make every reasonable effort to complete selection of the Arbitrator within ninety (90) calendar days after a request for arbitration is filed pursuant to Paragraph 8.1.

8.4     Unless the Employee and the president or other representative of the Employer specifically set forth in Paragraph 6.2 jointly agree otherwise in writing, all Disputes related to the Employee, and no Disputes relating to any other employee, shall be submitted in the same proceeding to the Arbitrator selected pursuant to this Article Eight.

8.5     The Employer shall notify the Arbitrator within ten (10) calendar days after his/her selection and provide the Arbitrator with a copy of this EDRP, whereupon the Arbitrator shall promptly notify the Parties of proposed hearing dates.

8.6     If a Party contends that some or all of the claims set forth in the Notice of Claim or the counterclaim filed pursuant to Paragraph 6.4 or 6.5 are barred as a matter of law, that Party may file with the AAA a Motion to Dismiss, setting forth the legal authorities in support of its position, within thirty (30) calendar days after the request for arbitration is filed pursuant to Paragraph 8.1. The non-moving Party shall have twenty (20) calendar days to respond to the Motion to Dismiss. Motions to Dismiss and responses must be in writing and served on the opposing Party, and the Arbitrator, if selected as of the due date.

8.7     Absent good cause, the Arbitrator shall issue a written decision resolving a Motion to Dismiss filed pursuant to Paragraph 8.6 within fifteen (15) calendar days of the filing of the non-moving party's response or fifteen (15) calendar days after the Arbitrator has been notified of his selection, whichever is later, but in no circumstances shall the decision be rendered later than sixty-five (65) calendar days after the Arbitrator has been notified of his selection. Discovery shall be stayed until issuance of the Arbitrator's decision.

## 9.     Venue, Time and Place of Hearing and Applicable Law

9.1     For failure to hire Disputes, the venue of any Dispute shall be the county where the Employee made application for employment. For all other Disputes, the venue shall be the county in which the Employee performed the principal duties of his/her job.

6

9.2    Unless the Parties otherwise agree, or the Arbitrator otherwise directs, any hearing shall be conducted and the arbitration shall be held in the AAA office nearest the county of venue.

9.3    The hearing shall be conducted no earlier than four (4) months nor later than eight (8) months from the date the Arbitrator receives notice of his/her selection unless the Arbitrator sets an earlier or later date. The hearing shall not be interrupted or postponed, but shall continue from day to day, without interruption, until completed, unless the Parties and the Arbitrator all agree otherwise on the record.

9.4    No later than thirty (30) calendar days prior to the hearing, the Arbitrator shall hold a formal, in-person settlement conference in a final attempt to resolve the Dispute prior to the formal arbitration hearing. The parties may waive this final settlement conference if both parties agree, after consulting with the Arbitrator, that such final settlement conference would be futile and such a conference could compromise the neutrality of the Arbitrator.

9.5    Except as otherwise provided in this EDRP, any arbitration shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time this EDRP is initiated pursuant to Article Six.

9.6    The Arbitrator shall resolve Disputes in accordance with Federal law, if applicable, and the internal substantive law of the state of venue as specified in Paragraph 9.1 without reference to that state's choice of law rules.

## 10.    Discovery, Submission of Briefs and Dispositive Motions

10.1    The Parties shall cooperate in the voluntary exchange of such documents and information as will serve to expedite the arbitration.

10.2    Discovery shall be conducted after selection of the Arbitrator in the most expeditious and cost-effective manner possible. All discovery shall be limited to that which is relevant, as determined by the Arbitrator. The Parties shall not engage in any harassing discovery techniques.

10.3    Upon request, the Employer shall be entitled to take the deposition of the Employee, the Employee shall be entitled to take the deposition of the Employer's representative designated by the Employee, and each deposition shall not exceed eight (8) hours in length. In addition, each party shall be entitled to take one additional deposition of any person, and said deposition is not to exceed four (4) hours in length. Further, each Party may take the deposition from any expert designated by the other Party and all other depositions are subject to the Arbitrator's discretion under Paragraph 10.5. The Parties shall also be entitled to otherwise use and exercise all of the same rights, remedies and procedures, including interrogatories and documents requests, and be subject to all of the same duties, liabilities and obligations as provided in the Federal Rules of Civil Procedure to the extent they do not conflict with the provisions of this EDRP.

10.4    Any discovery disputes shall be presented to the Arbitrator for final and binding resolution.

7

10.5    The Arbitrator may grant either Party's request for discovery in addition to or limiting that for which this Article Ten expressly provides as the Arbitrator considers necessary for a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. The Arbitrator shall have authority to extend the hearing deadline specified in Paragraph 9.3 to accommodate the Parties' discovery requests to the extent determined by the Arbitrator to be reasonable and necessary. The Arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties as can or may be imposed in like circumstances in a civil action under the Federal Rules of Civil Procedure.

10.6    All discovery must be concluded not later than sixty (60) calendar days before the hearing. Each party shall be responsible for all costs associated with discovery which that party initiates (e.g., depositions), except that the party or third party witness being deposed shall be responsible for the cost of a copy of the transcript if he/she chooses to order a copy.

10.7    The Parties may stipulate in writing not later than forty-five (45) calendar days before the hearing that the Dispute be decided based upon the written briefs in lieu of a hearing. Upon receipt of a timely submitted stipulation, the Arbitrator will promptly confer with the Parties and determine a briefing schedule providing for the contemporaneous submission of briefs and contemporaneous replies. All briefs and replies must be submitted not later than sixty (60) calendar days after the briefing schedule is determined. The Arbitrator shall issue his/her Award within sixty (60) calendar days after all briefs and replies are submitted. The Arbitrator's Award shall comply with the provisions of Article Seventeen of this EDRP.

10.8    If the Parties do not stipulate as provided in Paragraph 10.7, the Parties may submit pre-hearing motions for summary judgment, as defined by Federal Rule of Civil Procedure 56. All dispositive motions and briefs in support thereof must be submitted to the Arbitrator not less than forty-five (45) calendar days before the hearing. Opposition briefs must be submitted within fifteen (15) calendar days after the motion is received. Reply briefs must be submitted within ten (10) calendar days after the opposition brief is received. The Arbitrator shall issue written rulings on all dispositive motions not less than fifteen (15) calendar days before the hearing. The Arbitrator shall continue the hearing date if dispositive motions have been timely submitted and remain pending within fifteen (15) calendar days of the hearing. The Arbitrator is empowered to dispose of any and all Disputes, in whole or in part, on dispositive motions. Such ruling(s) shall have the same effect as an Award and shall comply with the provisions of Article Seventeen of this EDRP.

11.    **Subpoenas**

11.1    Upon the request of any Party, the Arbitrator may issue a subpoena to compel the production of witnesses or documents to the same extent permitted under the Federal Rules of Civil Procedure in a judicial proceeding.

11.2    Unless the Arbitrator directs otherwise, the Party requesting the production of any witnesses or documents shall bear the costs of such production.

8

**12.   Order of Presentation**

12.1   At the hearing, the Party initiating this EDRP shall first present his evidence unless the Parties and the Arbitrator agree that a different order is warranted due to the unique circumstances of a particular issue.

12.2   The order of presentation as to any other issue, including counterclaims, shall be determined by the Arbitrator.

12.3   At the conclusion of a Party's case in chief, the opposing Party may submit a motion for judgment as a matter of law, which the arbitrator shall resolve in accordance with the standards set forth in Rule 50 of the Federal Rules of Civil Procedure.

12.4   Each Party shall have the right to present closing argument at the conclusion of all testimony.

12.5   In addition to or in lieu of closing argument, each Party.shall have the right to submit a post-hearing brief not later than thirty (30) calendar days after the close of the hearing. The Arbitrator shall determine the exact due date and procedure such that all Parties' briefs are submitted on the same date.

**13.   Standard and Burden of Persuasion**

13.1   In order for a Party to prevail on any claim or counterclaim, the Party shall have the burden of proving each element of each of that Party's claim or counterclaim as governed by applicable law.

13.2   Each Party bears the burden of persuasion by a preponderance of the evidence or as otherwise required by law on any claim or counterclaim raised by that Party under this EDRP.

**14.   Evidence and Argument**

14.1   The Arbitrator shall afford each Party a full and fair opportunity to present any relevant proof, to call and cross-examine witnesses, to rebut evidence presented by an opposing Party, and to present its argument.

14.2   The Arbitrator shall not be bound by any formal rules of evidence with the exception of applicable law regarding attorney-client privilege and work product. The Arbitrator shall not accept affidavits, except as provided by Paragraph 7.4 or in support of or opposition to a motion for summary judgment pursuant to Paragraph 10.8.

14.3   The Arbitrator shall decide the relevance of the evidence offered, and the Arbitrator's decision on any question of evidence or relevance shall be final and binding. The Arbitrator shall be guided by the Federal Rules of Evidence on issues of relevance.

14.4   Evidence of any proposals or compromises suggested by either Party in an effort to informally resolve the Dispute(s) shall not be admissible to the Arbitrator except that the Employer may enter into evidence any unconditional offers of hire, rehire, reinstatement, promotion, or transfer as may be related to the Employee's request for damages or other relief.

9

14.5    All testimony shall be under oath. Oaths shall be administered by the Arbitrator or a court reporter.

14.6    At the request of any Party, the Arbitrator shall order the sequestration of witnesses, except for the Employee, a representative of the Employer, and counsel for any Party.

### 15.    Confidentiality

15.1    All aspects of the arbitration pursuant to this EDRP, including the hearing and record of the proceedings, are confidential and shall not be open to the public, except: a) to the extent both Parties agree otherwise in writing, b) as may be appropriate in any subsequent proceedings between the Parties, or c) as may otherwise be appropriate in response to a governmental agency or legal process.

### 16.    Expenses

16.1    The Employer shall be solely responsible for the expenses of the arbitration (other than the Employee's attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any Employee witnesses). The "expenses of the arbitration" shall mean the expenses of the Arbitrator (such as daily fee and travel) and filing fee and shall exclude the Parties' respective attorneys' fees and disbursements, expenses of witnesses and costs of producing other evidence.

### 17.    The Award

17.1    The Arbitrator shall render his/her decision and Award (collectively the "Award") based solely on the evidence and authorities presented, the applicable law argued by the Parties and the provisions of this EDRP as interpreted by the Arbitrator.

17.2    The Award shall be in writing and signed and dated by the Arbitrator and shall contain express findings of fact (including findings on each issue of fact raised by a Party), the rationale for the Award, and, if necessary to dispose of any issues of law, conclusions of law and discussions of legal authorities. The Arbitrator shall give signed duplicate original copies of the Award to each Party.

17.3    The Award shall be issued within sixty (60) calendar days after the later of: a) the close of the hearing or b) the submission of post-hearing briefs.

17.4    Unless applicable law provides otherwise, the Award shall be final and binding and not subject to review or appeal.

### 18.    Record of Proceeding

18.1    A record of the hearing shall be made, at the expense of the Employer, by audio or video tape or by verbatim transcription.

18.2    The Arbitrator shall be responsible, in cooperation with the Parties, for assembling the record of the proceeding and shall maintain possession of the record for at least

Rev. 3/10/02

one (1) year after issuing the Award unless the Parties, with the Arbitrator's consent, agree otherwise.

18.3   The record of the proceeding shall include, at a minimum, the following: the notice and any statements required by Article Six; any documents, briefs, motions and depositions discovered pursuant to Article Ten; any evidence and argument (including any briefs) submitted pursuant to Article Fourteen; the record of the hearing pursuant to Paragraph 18.1 and the Award pursuant to Article Seventeen.

19.   **Damages and Relief**

19.1   The Arbitrator is permitted to award any remedies available in law or equity that are requested by the Parties and that the Arbitrator determines to be supported by the credible, relevant evidence.

19.2   A Party may apply all or any portion of an Award and/or an Award of sanctions in favor of that Party pursuant to Article Twenty as a set-off against any monetary relief awarded by the Arbitrator to the opposing Party.

19.3   Any final Award of front pay provided by the Arbitrator shall be paid by the Employer to the Employee, bi-weekly over the regularly scheduled pay periods, just as if the Employee were in fact employed during said period. In the event the Employee obtains future employment after receiving an award of front pay, front pay shall be eliminated if the future employment is at a rate equal to or greater than the bi-weekly front pay award, or if the future employment compensation is less than the bi-weekly award, the bi-weekly front pay shall be reduced by an amount equal to the new earnings received from the new employment.

19.4   Except as provided in Paragraph 19.4, any final Award exceeding $50,000 in value shall be payable by the losing Party over 12 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue. Any final Award exceeding $150,000 in value shall be payable by the losing Party over 24 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue. Any final Award exceeding $300,000 in value shall be payable by the losing Party over 36 months in equal monthly payments, plus interest at the prevailing statutory judgment rate of the state of venue.

19.5   The Parties have a duty to mitigate their damages by all reasonable means including, but not limited to, in the case of the Employee, mitigation by way of seeking other work and making application for unemployment, disability, retirement or other available benefits. The Arbitrator shall take a Party's failure to mitigate into account in granting relief.

20.   **Sanctions**

20.1   The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or documents, upon a finding that the claim or counterclaim was frivolous or brought solely to harass the other Party.

11

20.2    The Arbitrator may award either Party its reasonable attorneys' fees and costs reasonably related to any of the following conduct by the other party: (a) unreasonable delay, (b) failure to comply with the Arbitrator's discovery order, (c) failure to comply with requirements of confidentiality under this EDRP; or (d) commencing or pursuing litigation or an administrative proceeding in contravention of Paragraph 23.2.

### 21.    <u>Arbitration Statute and Non-Violation of Law</u>

21.1    Any proceeding pursuant to this EDRP shall be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

21.2    The Arbitrator shall have all powers granted to arbitrators and the Arbitrator's Award shall be enforceable as would an Arbitrator's Award, pursuant to the applicable law.

21.3    If any part of this EDRP is in conflict with any mandatory requirement of applicable law, applicable law shall govern and that part of this EDRP shall be reformed and construed in conformance with the applicable law.    This EDRP shall remain otherwise unaffected and enforceable.

21.4    The Award may be vacated or modified only on the grounds specified in the applicable law.

### 22.    <u>Voluntary use of EDRP</u>

22.1    After a claim, Dispute or an issue has arisen, the Parties may agree in writing voluntarily to employ this EDRP to hear and resolve with finality that claim, dispute or issue although it is not related to matter(s) covered by this EDRP.

### 23.    <u>Court and Administrative Proceedings</u>

23.1    Nothing in this EDRP shall prevent a Party from bringing a proceeding pursuant to the applicable law to vacate or enforce an Award, to compel the submission of a Dispute for resolution under this EDRP, to compel arbitration or to seek temporary or preliminary equitable relief in aid of arbitration.

23.2    Except as provided in Paragraph 23.1, the Parties agree not to commence or pursue any litigation or administrative proceeding on any Dispute and will promptly move to discontinue any such proceeding if commenced, except as otherwise provided by Paragraph 2.7.

### 24.    <u>At-Will Employment</u>

24.1    This EDRP does not in any way alter the "At-Will" status of Employee's employment, is not a promise of employment, and is not intended to and does not change the agreement and understanding between a hired Employee and the Employer for an at-will employment relationship.    The terms of that at-will relationship are, as described in the Application for Employment and Employee Handbook, that the employment is subject to: 1) at the will or sufferance of the Employer, termination without recourse at any time for any or no reason, and 2) a hired Employee's reserved right to voluntarily terminate his/her employment with the Employer at any time for any reason.    The at-will employment relationship may be

12

modified only by written agreement signed by the Employee and the president or other representative of the Employer specified in Paragraph 6.2.

24.2    The Arbitrator shall have no authority to alter or otherwise modify the at-will relationship described in Paragraph 24.1 above and must enforce Article Twenty Four of this EDRP, except that the Arbitrator may order hire, rehire, promotion or reinstatement to the extent required by applicable law.

24.3    Captions and Section headings used in this EDRP are for convenience of reference only and shall not be deemed part of the contents of this EDRP nor affect its interpretation.

### 25.    Choice of Law

25.1    Bally is a Delaware corporation with its principal place of business in Chicago, Illinois. The Parties agree that this EDRP was entered into in the State of Illinois, and that all issues relating to the construction, formation and enforceability of this EDRP shall be governed by the FAA and, to the extent state law is applied, the internal laws of the State of Illinois, without reference to Illinois choice of law rules.

Rev. 3/10/02

26. **Voluntary Agreement**

EMPLOYEE ACKNOWLEDGES THAT HE/SHE IS OBLIGATED TO READ THIS EDRP, THAT AN ADDITIONAL COPY OF THIS EDRP WILL BE MADE AVAILABLE TO THE EMPLOYEE UPON WRITTEN REQUEST, THAT HE/SHE UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS BETWEEN THE EMPLOYEE AND THE EMPLOYER RELATING TO THE SUBJECTS COVERED IN THIS EDRP ARE CONTAINED IN IT, THAT HE/SHE IS OBLIGATED TO SUBMIT ALL COVERED DISPUTES TO MEDIATION AND/OR BINDING ARBITRATION PURSUANT TO THIS EDRP, THAT EMPLOYEE IS WAIVING HIS/HER RIGHT TO A JURY TRIAL BASED ON COVERED DISPUTES UNDER THIS EDRP AND THAT HE/SHE HAS ENTERED INTO THIS EDRP VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE EMPLOYER OTHER THAN THOSE CONTAINED IN THIS EDRP ITSELF.

EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE HAD A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS EDRP BEFORE SIGNING IT AND THAT HE/SHE HAD AN OPPORTUNITY TO DISCUSS THIS EDRP WITH HIS/HER PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT HE/SHE WISHES TO DO SO.

**BALLY TOTAL FITNESS CORPORATION**

_____
Signature of Employee

By: _____

Frank   Salazar   Jr.
Print Name of Employee

Date:   4/29/05

**REDACTED**
_____
Employee Social Security Number

Date:   4-29-05

Front  Desk
_____
Department/Club Location

14

Rev. 3/10/02

**Exhibit B**




# REPORT ALL TIME WORKED

### Important Notice to Employees
### Bally requires all employees to:
### REPORT ALL TIME WORKED

As an employee of Bally Total Fitness Corporation it is a requirement that you **REPORT ALL TIME WORKED**.  This means that you must:

- Record the exact hour and minute that you begin **ANY** work.
- Record the exact hour and minute that you stop all work, this includes break times.
- Make each entry as it occurs - do not sign in or out in advance.
- Record all work of every kind - for personal trainers, this includes prospecting time.
- Sign in and out to the exact minute - do not "round" your time entry.
- Personally make and initial any changes in your timesheet or timecard which might be necessary and have your manager initial as well.
- Sign your time card at the **END** of the pay period - this is your verification that the times listed are accurate and correct.

Bally relies upon your personal time entries to calculate your pay and to maintain accurate payroll records. Thus, a failure to accurately record all time worked will result in disciplinary action up to and including termination.  It is a violation of this policy to either under-report or over-report work time.

No deviation from these instructions is permitted. No one may ask or direct that an employee work "off the clock", "for free", or "on his/her own time" nor can an employee "volunteer time".  Any employee who is not being paid in accordance with these policies or who has knowledge that they are being violated must **IMMEDIATELY** report the violation, in confidence, to the Department Manager, Area Director or Regional Director of Human Resources.  Employees will not be punished for making such a report.

*My signature below is my acknowledgement that I have received a copy of this memo, and that it is my responsibility to adhere to this policy in its entirety:*

_____                    4-29-05
Employee Signature                                            Date

Francisco  E  Salgzar  JR                                    **REDACTED**
Printed Name                                                 Social Security #

01-0047 (04/00)          **White - Personnel File**          **Yellow - Employee**

**Exhibit C**



DEFT 000742



# GENERAL INFORMATION

## EMPLOYEE RELATIONS POLICY

We value the talents and loyalty of our staff and therefore provide the following benefits to you:

Competitive wages and benefits;

A clean, pleasant and safe working environment; and

A well trained and knowledgeable management team to give you the high quality supervision and support you deserve.

To meet the needs of our customers, we must perform as a team whose goal is to exceed the needs of our members with the best possible service. To aid in our team's performance, we follow a policy of open communication at all times. We believe that this is the best way to face our daily challenges.

## OPEN DOOR POLICY AND COMMUNICATIONS

Bally is committed to its open door policy. You are urged to bring comments, criticisms, suggestions and questions to your Supervisor. By keeping our doors open to you, we hope to keep problems and frustrations from lessening your spirit for the job of pleasing our members.

Club meetings may be held on a regular basis to discuss sales promotions, events and plans. These meetings give you an opportunity to discuss ideas, concerns and suggestions with club management. You will receive information that will keep you up-to-date on our activities, policies, strategies and goals.

On a Company-wide basis, we have the CLUB VOICE magazine, a newsletter given to Bally employees nationwide. CLUB VOICE contains feature articles on our company and the people who work here, important information about your benefits, a look at business trends and much more. If you have an idea or suggestion for CLUB VOICE, please write a letter to the editor at

CLUB VOICE, BALLY TOTAL FITNESS, 8700 W. BRYN MAWR AVENUE, 2ND FLOOR, CHICAGO, IL 60631

Bally also offers many resources to resolve your issues and/or concerns. Managers, Supervisors, Area Directors and Human Resources representatives are all available to assist our employees. We at Bally encourage everyone to maintain open communications. Do not hesitate to let your Supervisor know about problems or questions you may have. Every Bally employee has this right without fear of retaliation.

---

## GENERAL INFORMATION

Employee relations policy
Open door policy & Communications
Chain of Command
Employee status definitions
Prohibition of Discrimination &
Harassment
Equal employment opportunity
Equal access

DEFT 000745

# PAY & PERFORMANCE

## PAY & PERFORMANCE

- Payday
- Timekeeping
- Overtime
- Performance & salary reviews
- Pay advances

## PAYDAY

Generally, paychecks are handed out every two weeks. However, the exact payday may vary by region. If you have any questions about your payroll check lie, when and where checks may be picked up, your commissions or hours paid, contact your immediate Supervisor, not the Payroll Office.

## TIMEKEEPING

In order to receive your correct pay, you are responsible for recording the specific hours you work each day. You must clock in at the beginning of your work day, out and in for meals, and out at the end of your work day. Your time card must be kept in the designated area of your facility. This applies to all employees.

No employee may clock or sign in or out for another employee. No one may clock or sign in or out for you. Time sheets must be filled out on the day you worked those hours and may not be filled out on another day. At the end of your time period you are responsible for signing your time sheet and giving it to your Manager. Non-exempt (hourly) employees are paid for all time worked. There is no such thing as donated time, time worked "off the clock", or compensatory time off. Misuse of the timekeeping system will result in your dismissal.

A meal period is considered a minimum of an unpaid, uninterrupted 1/2 hour and the number of meals and/or breaks for a given work schedule will be determined by the General Manager and federal and state law.

## OVERTIME

For non-exempt (hourly) employees who are eligible for overtime (time-and-a-half), overtime is generally defined as hours worked in excess of forty (40) hours in the daily designated work week. As different states may have different definitions at this time, you should ask your Payroll Office what standard you are held to. Overtime work must have the prior approval of your direct Supervisor. In addition, there may be periods of scheduled overtime by location. Your Supervisor will have this information and will be able to answer any questions you may have.

Pay for time not worked (holiday pay, vacation pay, etc.) does not count towards hours worked when calculating overtime.

Under no circumstances can an employee work "off the clock" for any hours including overtime hours. There is no such thing as "comp" time or performing or making up work while not on the clock.

DEFT 000747

## MEALS & BREAKS

Your Supervisor will give you the times for your meal and rest breaks. The length of these breaks depends on how many hours you work.

Please follow your meal and/or break times so that your duties are taken care of and others are not inconvenienced.

REDACTED

BTFC 000990

## INTERNAL CONFLICTS OF INTEREST

While the Company has no desire to intrude into the personal lives of its employees, the avoidance of conflicts of interest, favoritism or bias by one employee toward another is essential to the proper functioning of our business. This applies to situations involving any type of relationship between employees, whether it involves relatives, spouses or close personal relationships. As an example, while the Company permits the employment of relatives of present employees or friends living in the same household, employment of such individuals in the same department, particularly in a supervisory/subordinate relationship, is discouraged. Any exceptions to this rule only will be permitted in exceptional circumstances with prior written approval of Human Resources.

For purposes of this policy, a relative is defined as a person connected with another by blood or affinity, including marriage. A close personal relationship could involve a relationship between a male and female employee or between members of the same sex where such relationship or friendship could be a possible source of bias, favoritism or conflict of interest.

While the Company welcomes friends and relatives of its employees as potential new hires, all applicants and new hires are required to identify any such relationships with current employees. The effect of any such relationship on the potential work environment will be reviewed on a case-by-case basis.

Potential conflicts of interest also may arise involving current employees where such individuals become related (e.g. marriage) or otherwise become involved in a close personal relationship, particularly in circumstances where such employees work in the same department, in a supervisory/subordinate relationship, or where one employee has access to confidential information. Each situation will be reviewed on a case-by-case basis to determine whether a change in employment status is appropriate.

Employees have an obligation to disclose any potential internal conflicts of interest consistent with this policy. Any violation of this policy will subject the employee(s) involved to disciplinary action, up to and including immediate termination.

## EMPLOYMENT RECORD

Your employment record should be kept up to date at all times. You must inform the Payroll Department, in writing, of changes to any of the following:

1. Your legal name.

2. Your address and telephone number.

3. The name of the person to be called in the case of an emergency.

4. Your dependents (anyone for whom you are responsible).

5. Verification of current automobile insurance (commensurate with minimum state requirements) and updated driver's license for any employee who is required to travel using their own or Bally vehicles for company business.

Changes in those areas can affect your medical coverage, social security records, tax rate and benefits.

Everything in your personnel record is private and only those people in Bally who have a true "need to know" can see them. Such information will not be disclosed unless required by law or in accordance with your specific written direction or permission.

## CORRECTIVE ACTIONS

Employees have the responsibility to perform their jobs in a satisfactory manner. Breaking some rules or policies may be so serious that a single violation will result in discharge. Other violations may result in increasingly serious warnings and a chance to improve prior to discharge. Bally maintains the right to start the discipline process at any logical step from counseling to immediate discharge.

## THE EMPLOYEE PROBLEM SOLVING PROCEDURE

We have given you a useful way to bring problems or questions to management's attention—the Employee Problem Solving Procedure (EPSP).

The EPSP has been designed to facilitate the resolution of any conflict which may arise within the workplace. The primary objective of the EPSP is simple: to resolve conflicts internally with a minimum of frustration and aggravation to the parties involved. To maintain a positive working environment it is essential that any and all conflicts be addressed quickly, in a fair and objective manner.

Any complaint about the terms of employment or the actions of any employee which may affect an employee's job status are subject to this procedure, with limited exceptions.

THE EMPLOYEE PROBLEM SOLVING PROCEDURE IS AS FOLLOWS:

1. Register the complaint verbally with your direct supervisor or manager within three (3) working days after its occurrence or within three (3) working days after the reason for the problem has become known to the employee. This step provides the employee and management the opportunity to quickly come to terms and resolve the complaint in an informal manner. The supervisor, after discussing the situation with the employee, will have five (5) days to offer a resolution to the employee.

2. In the event that a problem or conflict cannot be resolved verbally with the direct supervisor, it will then be referred to the Area Supervisor. The employee must submit the complaint in writing, stating the circumstances and the personnel involved. The complaint must be received

# APPLICATIONS, HIRING & TERMINATION

by the Area Supervisor within five (5) working days after unsuccessful resolution with the employee's direct supervisor.

The Area Supervisor will then have five (5) working days to contact the employee and attempt a resolution of the matter. If necessary, a meeting will be scheduled to discuss the specifics of the situation and to explore solutions.

Once the matter has been discussed and/or a meeting held, the Area Supervisor will provide the employee with a written response, offering a solution to the matter. The response will be sent no later than five (5) working days after the meeting or discussion.

3. If agreement cannot be reached through the Area Supervisor, the matter is to be submitted to the Area Director for review. The employee must submit the complaint, in written form, within five (5) working days of the Area Supervisor's response. Upon receiving written notice of the complaint, the Area Director will then have five (5) working days to contact the employee. If necessary, a meeting will be arranged to further discuss the situation.

The Area Director will then have five (5) working days after meeting or conferring with the employee to offer a resolution. If this is not accepted by the employee, the Area Director will schedule an Internal Review.

4. The Internal Review will be scheduled at a time convenient to all parties, but within thirty (30) calendar days of unsuccessful resolution attempts by the Area Director. This hearing will include the employee, the Area Director and the Regional Director of Human Resources. The employee will be given the opportunity to voice the specifics of the situation, the parties involved will then discuss details of the conflict and possible solutions. Upon conclusion of the review, the Regional Director of Human Resources will have ten (10) working days to give written notification of the Internal Review's offer of resolution to the employee.

5. If no satisfactory settlement is reached through the Internal Review, the matter will then be referred to the Vice President of Human Resources. The employee must submit a written statement describing the situation and the proceedings up to that point within five (5) working days of notice from the Internal Review.

The Vice President of Human Resources will have five (5) working days to review the material and contact the individual(s) involved. Meetings will be scheduled if necessary. The Vice President of Human Resources will then make a written offer of resolution within ten (10) days of finishing review of the materials and/or the last meeting held.

## RETURN OF EQUIPMENT & SUPPLIES

If and when you leave the company you must return any Bally equipment, supplies, documents or other items provided by the organization. This includes keys, identification, health club membership cards, all training manuals (sales and customer service), etc.

Smoking, liquor & drugs
Parking
Computer access
Phone & mail systems
Environmental policy
Bulletin boards
Solicitation/distribution of literature
Building access
Housekeeping
Meals & breaks
Visitors
Removal of equipment
Injuries & accidents
Use of equipment
Traveling on company time
Rewards & recognition

## GENERAL POLICIES

DEFT 000759

**Exhibit D**

EMPLOYEE HANDBOOK

2005 Bally Total Fitness Corporation



Bally Total Fitness®

BTFC 000995

## ACKNOWLEDGEMENT OF EMPLOYEE HANDBOOK

This handbook contains the employment policies and practices of the company in effect at the time of its publication. This handbook does not contain all the rules and regulations to which you are subject. As with any policy, Bally reserves the right to modify or delete the rules, policies and benefits contained in this handbook, at any time, with or without notice except the provision on at-will employment, which can be changed, in writing, by the President only. This manual, and the policies outlined inside, supersede all prior Employee Handbooks issued by Bally Total Fitness, all its subsidiaries, and those of all companies originally owning or operating fitness centers, offices, or other facilities currently owned or operated by Bally Total Fitness and all its subsidiaries. Any provision of this handbook in conflict with any state or local laws shall be superseded by such state or local law. Any policy addenda, approved and distributed by the Area Office shall supersede any conflicting policies as published in this handbook. No oral statements or representations can in any way change or alter the provisions of this handbook.

The final page of this handbook is a RECEIPT OF EMPLOYEE HANDBOOK. This tear-off sheet provides important information about employment with Bally Total Fitness. Read it carefully and if anything is unclear contact your supervisor immediately.

You must review the policies in this handbook, sign the receipt page, tear it off and give it to the payroll office or your Human Resources representative so it may be put in your personnel file.

Additional rights and responsibilities may apply, depending on the state in which you work. Please contact your supervisor or Human Resources if you have any questions, or for additional information regarding the provisions of this handbook.

BTFC 000998



# Employee Relations Policy

## Open Door Policy & Communications

Bally is committed to its open door policy for suggestions on improving the company. You are urged to bring comments, criticisms, suggestions and questions to your supervisor. By keeping our doors open to you we hope to keep problems and frustrations from lessening your spirit for the job of pleasing our members.

Bally also offers many resources to resolve your issues and/or concerns. Managers, Supervisors, Area Directors, Regional Vice Presidents and Human Resources representatives are all available to assist our employees. We at Bally encourage everyone to maintain open communications. Do not hesitate to let your supervisor know about problems or questions you may have. Every Bally employee has this right without fear of retaliation.

**REDACTED**

## Chain of Command

If you have a problem regarding any aspect of your employment, we ask that you first speak to your immediate supervisor. If the problem concerns your supervisor, you should contact the next level of management. The chain of command in the clubs is as follows: Immediate Supervisor (General Manager, Operations Manager, Personal Training Director, Front Desk Manager), Personal Training Supervisor, Group Exercise Supervisor, Maintenance Supervisor or Area Supervisor, Area Director and Regional Vice President. You may also consult your Human Resource Representative at any time. **[Note:** As discussed previously, because of the critical business need to immediately investigate and address any concerns of discrimination and/or harassment in the workplace, different procedures apply concerning any complaints of discrimination and/or harassment.**]**

# THE EMPLOYEE PROBLEM SOLVING PROCEDURE

The Employee Problem Solving Procedure (EPSP) is a helpful way to bring problems or questions to the company's attention and we encourage all employees to use this procedure.

The EPSP has been designed to facilitate the resolution of conflicts which may arise within the workplace. The primary objective of the EPSP is simple; to resolve conflicts internally with a minimum of frustration and aggravation to the parties involved. To maintain a positive working environment it is essential that conflicts be addressed quickly, in a fair and objective manner.

Complaints about the terms of employment or the actions of employees which may affect an employee's job status are subject to this procedure, with limited exceptions.

**The Employee Problem Solving Procedure is as Follows:**

1. Register the complaint verbally with your direct supervisor or manager within three (3) working days after its occurrence or within three (3) working days after the reason for the problem has become known to the employee. This step provides the employee and management the opportunity to quickly come to terms and resolve the complaint in an informal manner. The supervisor, after discussing the situation with the employee, generally will respond within five (5) working days, or as is practicable to offer a resolution to the employee.

2. In the event that a problem or conflict cannot be resolved verbally with the direct supervisor, it will then be referred to the Area Supervisor. The employee must submit the complaint in writing, stating the circumstances and the personnel involved. The complaint must be received by the Area Supervisor within five (5) working days after unsuccessful resolution with the employee's direct supervisor.

   The Area Supervisor generally will contact the employee within (5) working days, or is as practicable to contact the employee and attempt a resolution of the matter. If necessary, a meeting will be scheduled to discuss the specifics of the situation and to explore solutions.

   Once the matter has been discussed and/or a meeting held, the Area Supervisor will provide the employee with a written response, offering a solution to the matter. The response will be sent no later than seven (7) working days after the meeting or discussion.

3. If agreement cannot be reached through the Area Supervisor, the matter is to be submitted to the Area Director for review. The employee must submit the complaint, in written form, within five (5) working days of the Area Supervisor's response. Upon receiving written notice of the complaint, the Area Director will then contact the employee within five (5) working days, or as practicable. If necessary, a meeting will be arranged to further discuss the situation.

   The Area Director will then have seven (7) working days after meeting or conferring with the employee to offer a resolution. If this is not accepted by the employee, the Area Director will schedule an Internal Review.

BTFC 001001





4. The Internal Review will be scheduled at a time convenient to all parties, but within thirty [30] calendar days of unsuccessful resolution attempts by the Area Director. This hearing will include the employee, the Area Director and the Regional Director of Human Resources. The employee will be given the opportunity to voice the specifics of the situation, the parties involved will then discuss details of the conflict and possible solutions. Upon conclusion of the review, the Regional Director of Human Resources will have ten [10] working days to give written notification of the Internal Review's offer of resolution to the employee.

5. If no satisfactory settlement is reached through the Internal Review, the matter will then be referred to the Senior Vice President of Human Resources. The employee must submit a written statement describing the situation and the proceedings up to that point within five [5] working days of notice from the Internal Review.

The Senior Vice President of Human Resources will then review the matter, contact the individual[s] involved and generally will acknowledge receipt within five [5] working days. Meetings will be scheduled if necessary. The Senior Vice President of Human Resources will communicate with the affected parties within fifteen [15] days of completing review of the materials and/or the last meeting held.

# EMPLOYEE DISPUTE RESOLUTION PROCEDURE

In the event the EPSP fails to resolve a conflict arising within the workplace, Bally's Employee Dispute Resolution Procedure [EDRP] provides employees with an expeditious, inexpensive program of final and binding arbitration of such disputes. The EDRP is mandatory for all Bally employees, and by accepting or continuing employment an employee gives up his/her right to sue Bally in a court of law with respect to any dispute covered by the EDRP, and agrees to resolve any and all such disputes by final and binding arbitration in accordance with the terms of the EDRP, as it may be amended from time to time. The terms of the EDRP are to be viewed as incorporated in this handbook.

You have been provided with a copy of the EDRP and have had an opportunity to review it, yourself, and with an attorney if you so choose. You may obtain another copy of the EDRP at any time by contacting your supervisor or Human Resources.

# EMPLOYEE STATUS DEFINITIONS

We have three types of employees at Bally Total Fitness. They are:

> FULL-TIME: Employee who works at least thirty [30] regular hours or more per week on a consistent basis.

> PART-TIME: Employee who works fewer than thirty [30] regular hours per week on a consistent basis.

> TEMPORARY: Employee is hired to do a specific job for a temporary or limited period of time.

Eligibility for certain Bally benefits plans will depend on your status as full-time or part-time. Please refer to the Benefit Plans section for additional information. Temporary employees are not eligible for benefits.

**ANY ADDITIONAL QUESTIONS PERTAINING TO BENEFITS SHOULD BE DIRECTED TO BALLY'S BENEFITS SERVICE CENTER AT [877]477-2427.**

BTFC 001002

## PAYDAY

Generally, paychecks are handed out every two weeks. However, the exact payday may vary by region. If you have any questions about your payroll check [i.e., when and where checks may be picked up, your commissions or hours paid] contact your immediate supervisor, not the Payroll Office. It is your responsibility to review your paychecks for accuracy. Any errors in your paycheck, whether to your benefit or the company's, must be reported immediately.

## TIMEKEEPING

In order to receive your correct pay, you are responsible for recording the specific hours you work each day. You must clock or sign in at the beginning of your work day, out and in for breaks and meals, and out at the end of your work day. Your time card must be kept in the designated area of your facility. You should never give your employee ID number to another employee for any reason. This applies to all employees.

No employee may clock or sign in or out for another employee. No one may clock or sign in or out for you. Time sheets must be filled out on the day you worked those hours and may not be filled out on another day. At the end of the pay period you are responsible for signing your time sheet and giving it to your manager. There is no such thing as donated time, time worked "off the clock", or compensatory time off. Any employee who is directed otherwise should immediately contact their Regional Director of Human Resources.

Misuse of the timekeeping system will result in disciplinary action up to and including termination.

## MEALS & REST PERIODS

Your supervisor will determine the times for your meal and rest periods. Meal periods are unpaid. Any other rest breaks may vary depending upon business needs and applicable law. The specific procedures for meal breaks and other rest breaks, if any, will be reviewed with you by your supervisor.

Please follow your meal and/or break times so that your duties are taken care of and others are not inconvenienced.

## OVERTIME

Non-exempt (e.g. those who are paid hourly) employees are eligible for overtime. Overtime is generally defined as hours worked in excess of forty (40) hours in the Bally designated work-week. As different states or countries may have different definitions of this time, you should ask your supervisor what standard applies. Overtime work must, in all cases have the prior approval of your direct supervisor. Employees working unauthorized overtime will be subject to disciplinary action up to and including termination. In addition, there may be periods of scheduled overtime by location. Your supervisor will have this information and will be able to answer any questions you may have.

BTFC 001003



Pay for time not worked [holiday pay, vacation pay, etc.] does not count towards hours worked when calculating overtime.

Under no circumstances can an employee work "off the clock" for any hours including overtime hours. There is no such thing as "comp" time or performing or making up work while not on the clock.

Exempt employees may have to work hours beyond their normal schedules as business demands require. No additional compensation will be paid to exempt employees unless approved in advance.

REDACTED

BTFC 001004

REV. 03/04

# RECEIPT OF EMPLOYEE HANDBOOK

I have received a copy of the company's Employee Handbook and I understand that it is my responsibility to become familiar with the procedures, policies, and benefits contained in it. If there is anything I do not understand, I will request an explanation from my supervisor.

I understand that the purpose of this handbook is to inform me about the company's procedures, policies, and benefits, and that nothing contained in this handbook, or any other communications by the company, whether written or oral, is binding upon the company. I further understand that all the provisions of the handbook, including the General Conduct provisions, are only guidelines and that my employment can be terminated by me or the company, at any time and for any or no reason.

I understand that I am required to report all accidents (those that involve Bally employees or myself and those that involve Bally guests or members) within 24 hours.

I understand that all information presented to me in this handbook with the exception of my at-will status is subject to change or variance, with or without notice, at the sole discretion of the company. This handbook supersedes all prior editions and written and oral communications.

I understand and agree that other than the President of Bally Total Fitness, no manager, supervisor or representative of the company has authority to enter into any agreement, express or implied, for employment for any specific period of time, or to make any agreement for employment other than at-will. Only the President has the authority to make any such agreement and then only in writing signed by the President.

I further acknowledge that I have received a copy of the company's Employee Dispute Resolution Procedure ["EDRP"], that I have read it and that I understand its legal significance. I understand that by accepting and/or continuing employment at Bally, I agree to be bound by the terms of the EDRP, with respect to any dispute covered by the EDRP, and agree to resolve any and all such disputes by final and binding arbitration in accordance with the terms of the EDRP, as it may be amended from time to time.

My signature below certifies that I understand that the foregoing agreement on at-will status is the sole and entire agreement between the company and myself concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings and representations concerning my employment with the company.

DATE: _____    EMPLOYEE NAME: _____

EMPLOYEE SIGNATURE: _____

WITNESS SIGNATURE: _____

**SIGNED FORM TO BE PLACED IN PERSONNEL FILE**

BTFC 001010

**Exhibit E**

RECEIPT OF EMPLOYEE HANDBOOK

I have received a copy of the company's Employee Handbook and I understand that it is my responsibility to become familiar with the procedures, policies, and benefits contained in it. If there is anything I do not understand, I will request an explanation from my supervisor.

I understand that the purpose of this handbook is to inform me about the company's procedures, policies, and benefits, and that nothing contained in this handbook, or any other communications by the company, whether written or oral, is binding upon the company. I further understand that all the provisions of the handbook, including the General Conduct provisions, are only guidelines and that my employment can be terminated by me or the company, at any time and for any or no reason.

I understand that I am required to report all accidents [those that involve Bally employees and those that involve Bally guests or members] within 24 hours.

I understand that all information presented to me in this handbook with the exception of my at-will status is subject to change or variance, with or without notice, at the sole discretion of the company. This handbook supersedes all prior editions and written and oral communications.

I understand and agree that other than the President of Bally Total Fitness, no manager, supervisor or representative of the company has authority to enter into any agreement, express or implied, for employment for any specific period of time, or to make any agreement for employment other than at-will. Only the President has the authority to make any such agreement and then only in writing signed by the President.

My signature below certifies that I understand that the foregoing agreement on at-will status is the sole and entire agreement between the company and myself concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings and representations concerning my employment with the company.

DATE: 4-29-05    EMPLOYEE NAME: Frank Salazar Jr.
EMPLOYEE SIGNATURE:
WITNESS SIGNATURE:

SIGNED FORM TO BE PLACED IN PERSONNEL FILE

45

**Addendum to Bally's Employee Handbook**

I have received a copy of the addendum to Bally's Employee Handbook and I understand that these policies supersede ALL other policies formerly published. I acknowledge the attached policies.

I also acknowledge that the contents of this addendum in no way constitute a contract of employment between Bally's and myself. I also acknowledge that this form will be added to my personnel file.

_Francisco E Salazar .Sr_
Employee Name

_[signature]_
Employee signature

**REDACTED**

Employee Social Security Number

_4-29-05_
Date

Revised 07/97

Southern California / Fresno

**Exhibit F**



**Bally Total Fitness**

Important Notice to Employees

# COMPANY TIMEKEEPING POLICIES

As an employee of Bally Total Fitness Corporation it is a requirement that you REPORT ALL TIME WORKED. This means that you must:

- Personally clock in at the exact hour and minute that you begin ANY work using the Time Clock application
- Personally clock out at the exact hour and minute that you stop all work using the Time Clock application; this includes meal periods
- Personally clock in at the exact hour and minute that you switch from one job function to another using the Time Clock application
- Do not clock in prior to your scheduled work time without management approval
- Do not clock out beyond your scheduled end time without prior management approval
- Personally record on the Manual Timekeeping Log any hours that you are unable to clock using the Time Clock application

Bally relies upon your personal time entries to calculate your pay and to maintain accurate payroll records. Thus, a failure to accurately record all time worked will result in disciplinary action up to and including termination. It is a violation of this policy to either under-report or over-report time worked.

You should never give your employee ID number to another employee for any reason. This applies to all employees. No employee may clock/sign in or out for another employee. No one, besides you, may clock/sign in or out for you.

MISUSE OF THE TIMEKEEPING SYSTEM WILL RESULT IN DISCIPLINARY ACTION UP TO AND INCLUDING TERMINATION OF ALL EMPLOYEES INVOLVED.

No deviation from these instructions is permitted. No one may ask or direct that an employee work "off the clock", "for free" or "on his/her own time" nor can an employee "volunteer time". There is no such thing as "comp time"; Bally pays employees for all time worked. Any employee who is not being paid in accordance with these policies or who has knowledge that they are being violated must IMMEDIATELY report the violation, in confidence, to the Department Manager, Area Director, Regional Director of Human Resources or the company confidential report line 1-866-572-2559. Employees will not be punished for making such a report.

**Redacted**

Employee Signature _____    Date _____

Printed Name _____    Social Security # _____

BTFC 001189



# REPORT ALL TIME WORKED

## Important Notice to Employees
Bally requires all employees to:
### REPORT ALL TIME WORKED

As an employee of Bally Total Fitness Corporation it is a requirement that you **REPORT ALL TIME WORKED**.  This means that you must:

- Record the exact hour and minute that you begin **ANY** work.
- Record the exact hour and minute that you stop all work, this includes break times.
- Make each entry as it occurs - do not sign in or out in advance.
- Record all work of every kind - for personal trainers, this includes prospecting time.
- Sign in and out to the exact minute - do not "round" your time entry.
- Personally make and initial any changes in your timesheet or timecard which might be necessary and have your manager initial as well.
- Sign your time card at the **END** of the pay period - this is your verification that the times listed are accurate and correct.

Bally relies upon your personal time entries to calculate your pay and to maintain accurate payroll records. Thus, a failure to accurately record all time worked will result in disciplinary action up to and including termination.  It is a violation of this policy to either under-report or over-report work time.

No deviation from these instructions is permitted. No one may ask or direct that an employee work "off the clock", "for free", or "on his/her own time" nor can an employee "volunteer time".  Any employee who is not being paid in accordance with these policies or who has knowledge that they are being violated must **IMMEDIATELY** report the violation, in confidence, to the Department Manager, Area Director or Regional Director of Human Resources.  Employees will not be punished for making such a report.

*My signature below is my acknowledgement that I have received a copy of this memo, and that it is my responsibility to adhere to this policy in its entirety:*

_____    4-29-05
Employee Signature                                                     Date

Francisco  E  Salazar  JR
_____    **REDACTED**
Printed Name                                                    Social Security #

01-0047 (04/00)          **White** - Personnel File          **Yellow** - Employee

**Exhibit G**



## Statement of Understanding Regarding Timekeeping Obligations

I understand that it is, and always has been, my responsibility to record all hours that I work for Bally Total Fitness. This means that I must clock in before I begin work, clock out at the beginning of my meal breaks, clock back in at the end of my meal breaks, and clock out when I end work for the day. I also understand that I may not volunteer time, work "off the clock" or work "on my own time," even if I would like to do so and even if a supervisor or manager requests or instructs me to do so.

I also understand that if I am asked or instructed to work off the clock, or if my time has been changed to deny me overtime that I have worked, I am to **IMMEDIATELY** contact my District Manager or the Human Resources Department. I may also use Bally's hotline, which is 1-866-572-2559 and may send an email to payroll@ballyfitness.com to report any such conduct. I further understand that if any such conduct occurs, it is my obligation to submit a complaint in writing to Bally management under the Employee Problem Solving Procedure contained in the Employee Handbook. Under that procedure, in submitting a complaint, I am entitled to bypass any supervisor or manager that I believe has engaged in the misconduct I am complaining about, and instead may direct my complaint to a higher level of Bally management and/or Bally's Human Resources Department.

I further understand that any overtime is to be authorized by my General Manager and working overtime without approval may result in disciplinary action up to and including termination.

By signing this document I am acknowledging that **I have adhered to and will continue to adhere** to all the timekeeping laws of the State of California as well as all employment policies of Bally, including those that require accurate timekeeping practices. I further acknowledge that I have not worked off the clock during my employment by Bally Total Fitness.

If I have any questions regarding timekeeping, I understand that I can contact my General Manager, my District Manager or the Director of Human Resources. The phone number of the Director of Human Resources is 1-562-484-2870. I may also use the Bally hotline number, which is 1-866-572-2559 and may send an email to payroll@ballyfitness.com.

I understand that Bally is committed to providing a work place environment that abides by all state and federal labor and employment laws as well as the policies set forth in the employment handbook and the time clock policies posted in all Bally Clubs.

Name _____    Employee ID # _____    Date _____

CA

# EXHIBITS H thru K
## TO
# DECLARATION OF MACHNIKOWSKI

**Exhibit H**



# OFFICIAL NOTICE

### INDUSTRIAL WELFARE COMMISSION
### ORDER NO. 2-2001
### REGULATING
### WAGES, HOURS AND WORKING CONDITIONS IN THE

# PERSONAL SERVICE INDUSTRY

*Effective January 1, 2001 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations, effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

*This Order Must Be Posted Where Employees Can Read It Easily*

IWC FORM 1102 (Rev. 10-2006)
OSP 06 98760

● **Please Post With This Side Showing** ●

# OFFICIAL NOTICE
*Effective January 1, 2001 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations, effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

## INDUSTRIAL WELFARE COMMISSION
## ORDER NO. 2-2001
## REGULATING
## WAGES, HOURS AND WORKING CONDITIONS IN THE

# PERSONAL SERVICE INDUSTRY



**TAKE NOTICE:** To employers and representatives of persons working in industries and occupations in the State of California: The Department of Industrial Relations amends and republishes the minimum wage and meals and lodging credits in the Industrial Welfare Commission's Orders as a result of legislation enacted (AB 1835, Ch. 230, Stats of 2006, adding sections 1182.12 and 1182.13 to the California Labor Code.) The amendments and republishing make no other changes to the IWC's Orders.

## 1. APPLICABILITY OF ORDER

This order shall apply to all persons employed in the personal service industry whether paid on a time, piece rate, commission, or other basis, except that:

(A) Provisions of Sections 3 through 12 of this order shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

(1) <u>Executive Exemption.</u> A person employed in an executive capacity means any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(2) <u>Administrative Exemption.</u> A person employed in an administrative capacity means any employee:

(a) Whose duties and responsibilities involve either:

(i) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers; or

(ii) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(3) Professional Exemption. A person employed in a professional capacity means any employee who meets *all* of the following requirements:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work; or

(ii)Work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an essential part of or necessarily incident to any of the above work; and

(iii) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in subparagraphs (a) and (b).

(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515 (c) as 40 hours per week.

(e) Subparagraph (b) above is intended to be construed in accordance with the following provisions of federal law as they existed as of the date of this wage order: 29 C.F.R. Sections 541.207, 541.301(a)-(d), 541.302, 541.306, 541.307, 541.308, and 541.310.

(f) Notwithstanding the provisions of this subparagraph, pharmacists employed to engage in the practice of pharmacy, and registered nurses employed to engage in the practice of nursing, shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees.

(g) Subparagraph (f) above shall not apply to the following advanced practice nurses:

(i) Certified nurse midwives who are primarily engaged in performing duties for which certification is required pursuant to Article 2.5 (commencing with Section 2746) of Chapter 6 of Division 2 of the Business and Professions Code.

(ii) Certified nurse anesthetists who are primarily engaged in performing duties for which certification is required pursuant to Article 7 (commencing with Section 2825) of Chapter 6 of Division 2 of the Business and Professions Code.

(iii) Certified nurse practitioners who are primarily engaged in performing duties for which certification is required pursuant to Article 8 (commencing with Section 2834) of Chapter 6 of Division 2 of the Business and Professions Code.

(iv) Nothing in this subparagraph shall exempt the occupations set forth in clauses (i), (ii), and (iii) from meeting the requirements of subsection 1(A)(3)(a)-(d) above.

(h) Except, as provided in subparagraph (i), an employee in the computer software field who is paid on an hourly basis shall be exempt, if *all* of the following apply:

(i) The employee is primarily engaged in work that is intellectual or creative and requires the exercise of discretion and independent judgment.

(ii) The employee is primarily engaged in duties that consist of one or more of the following:

- The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications.

- The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

- The documentation, testing, creation, or modification of computer programs related to the design of software or hardware for computer operating systems.

(iii) The employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering. A job title shall not be determinative of the applicability of this exemption.

(iv) The employee's hourly rate of pay is not less than forty-one dollars ($41.00). The Division of Labor Statistics and Research shall adjust this pay rate on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers. *

(i) The exemption provided in subparagraph (h) does not apply to an employee if any of the following apply:

(i) The employee is a trainee or employee in an entry-level position who is learning to become proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering.

---

* Pursuant to Labor Code section 515.5, subdivision (a)(4), the Division of Labor Statistics and Research, Department of Industrial Relations, has adjusted the minimum hourly rate of pay specified in this subdivision to be $49.77, effective January 1, 2007. This hourly rate of pay is adjusted on October 1 of each year to be effective on January 1, of the following year, and may be obtained at www.dir.ca.gov/IWC or by mail from the Department of Industrial Relations.

(ii) The employee is in a computer-related occupation but has not attained the level of skill and expertise necessary to work independently and without close supervision.

(iii) The employee is engaged in the operation of computers or in the manufacture, repair, or maintenance of computer hardware and related equipment.

(iv) The employee is an engineer, drafter, machinist, or other professional whose work is highly dependent upon or facilitated by the use of computers and computer software programs and who is skilled in computer-aided design software, including CAD/CAM, but who is not in a computer systems analysis or programming occupation.

(v) The employee is a writer engaged in writing material, including box labels, product descriptions, documentation, promotional material, setup and installation instructions, and other similar written information, either for print or for on screen media or who writes or provides content material intended to be read by customers, subscribers, or visitors to computer-related media such as the World Wide Web or CD-ROMs.

(vi) The employee is engaged in *any* of the activities set forth in subparagraph (h) for the purpose of creating imagery for effects used in the motion picture, television, or theatrical industry.

(B) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.

(C) The provisions of this order shall not apply to outside salespersons.

(D) The provisions of this order shall not apply to any individual who is the parent, spouse, child, or legally adopted child of the employer.

(E) The provisions of this order shall not apply to any individual participating in a national service program, such as Ameri-Corps, carried out using assistance provided under Section 12571 of Title 42 of the United States Code. (See Stats. 2000, ch. 365, amending Labor Code Section 1171.)

## 2. DEFINITIONS

(A) An "alternative workweek schedule" means any regularly scheduled workweek requiring an employee to work more than eight (8) hours in a 24-hour period.

(B) "Commission" means the Industrial Welfare Commission of the State of California.

(C) "Division" means the Division of Labor Standards Enforcement of the State of California.

(D) "Employ" means to engage, suffer, or permit to work.

(E) "Employee" means any person employed by an employer, and includes any lessee who is charged rent, or who pays rent for a chair, booth, or space; and

(1) Who does not use his/her own funds to purchase requisite supplies; and

(2) Who does not maintain an appointment book separate and distinct from that of the establishment in which the space is located; and

(3) Who does not have a business license where applicable.

(F) "Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

(G) "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

(H) "Minor" means, for the purpose of this order, any person under the age of 18 years.

(I) "Outside salesperson" means any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities.

(J) "Personal Service Industry" means any industry, business, or establishment operated for the purpose of rendering, directly or indirectly, any service, operation, or process used or useful in the care, cleansing, or beautification of the body, skin, nails, or hair, or in the enhancement of personal appearance or health, including but not limited to beauty salons, schools of beauty culture offering beauty care to the public for a fee, barber shops, bath and massage parlors, physical conditioning, weight control salons, health clubs, and mortuaries.

(K) "Primarily" as used in Section 1, Applicability, means more than one-half the employee's work time.

(L) "Shift" means designated hours of work by an employee, with a designated beginning time and ending time.

(M) "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods.

(N) "Teaching" means, for the purpose of Section 1 of this order, the profession of teaching under a certificate from the Commission for Teacher Preparation and Licensing or teaching in an accredited college or university.

(O) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(P) "Workday" and "day" mean any consecutive 24-hour period beginning at the same time each calendar day.

(Q)"Workweek" and "week" mean any seven (7) consecutive days, starting with the same calendar day each week. "Workweek" is a fixed and regularly recurring period of 168 hours, seven (7) consecutive 24-hour periods.

## 3. HOURS AND DAYS OF WORK

(A) *Daily Overtime - General Provisions*

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless

—3—

the employee receives one and one-half (1¹/₂) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

      (a) One and one-half (1¹/₂) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7ᵗʰ) consecutive day of work in a workweek; and

      (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7ᵗʰ) consecutive day of work in a workweek.

    (2) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

  (B) Alternative Workweek

    (1) No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation. All work performed in any workday beyond the schedule established by the agreement up to 12 hours a day or beyond 40 hours per week shall be paid at one and one-half (1¹/₂) times the employee's regular rate of pay. All work performed in excess of 12 hours per day and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled number of workdays established by the alternative workweek agreement shall be paid at double the employee's regular rate of pay. Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift. Nothing in this section shall prohibit an employer, at the request of the employee, to substitute one day of work for another day of the same length in the shift provided by the alternative workweek agreement on an occasional basis to meet the personal needs of the employee without the payment of overtime. No hours paid at either one and one-half (1¹/₂) or double the regular rate of pay shall be included in determining when 40 hours have been worked for the purpose of computing overtime compensation.

    (2) Any agreement adopted pursuant to this section shall provide not less than two consecutive days off within a workweek.

    (3) If an employer whose employees have adopted an alternative workweek agreement permitted by this order requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1¹/₂) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours, and double the employee's regular rate of pay for all hours worked in excess of 12 hours for the day the employee is required to work the reduced hours.

    (4) An employer shall not reduce an employee's regular rate of hourly pay as a result of the adoption, repeal or nullification of an alternative workweek schedule.

    (5) An employer shall explore any available reasonable alternative means of accommodating the religious belief or observance of an affected employee that conflicts with an adopted alternative workweek schedule, in the manner provided by subdivision (j) of Section 12940 of the Government Code.

    (6) An employer shall make a reasonable effort to find a work schedule not to exceed eight (8) hours in a workday, in order to accommodate any affected employee who was eligible to vote in an election authorized by this section and who is unable to work the alternative workweek schedule established as the result of that election.

    (7) An employer shall be permitted, but not required, to provide a work schedule not to exceed eight (8) hours in a workday to accommodate any employee who is hired after the date of the election and who is unable to work the alternative workweek schedule established by the election.

    (8) Arrangements adopted in a secret ballot election held pursuant to this order prior to 1998, or under the rules in effect prior to 1998, and before the performance of the work, shall remain valid after July 1, 2000 provided that the results of the election are reported by the employer to the Division of Labor Statistics and Research by January 1, 2001, in accordance with the requirements of subsection (C) below (Election Procedures). If an employee was voluntarily working an alternative workweek schedule of not more than ten (10) hours a day as of July 1, 1999, that alternative workweek schedule was based on an individual agreement made after January 1, 1998 between the employee and employer, and the employee submitted, and the employer approved, a written request on or before May 30, 2000 to continue the agreement, the employee may continue to work that alternative workweek schedule without payment of an overtime rate of compensation for the hours provided in the agreement. The employee may revoke his/her voluntary authorization to continue such a schedule with 30 days written notice to the employer. New arrangements can only be entered into pursuant to the provisions of this section.

  (C) Election Procedures

  Election procedures for the adoption and repeal of alternative workweek schedules require the following:

    (1) Each proposal for an alternative workweek schedule shall be in the form of a written agreement proposed by the employer. The proposed agreement must designate a regularly scheduled alternative workweek in which the specified number of work days and work hours are regularly recurring. The actual days worked within that alternative workweek schedule need not be specified. The employer may propose a single work schedule that would become the standard schedule for workers in the work unit, or a menu of work schedule options, from which each employee in the unit would be entitled to choose. If the employer proposes a menu of work schedule options, the employee may, with the approval of the employer, move from one menu option to another.

    (2) In order to be valid, the proposed alternative workweek schedule must be adopted in a secret ballot election, before the performance of work, by at least a two-thirds (2/3) vote of the affected employees in the work unit. The election shall be held during regular working hours at the employees' work site. For purposes of this subsection, "affected employees in the work unit" may include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit. A work unit may consist of an individual employee as long as the criteria for an identifiable work unit in this subsection are met.

(3) Prior to the secret ballot vote, any employer who proposed to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits. Such a disclosure shall include meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule. An employer shall provide that disclosure in a non-English language, as well as in English, if at least five (5) percent of the affected employees primarily speak that non-English language. The employer shall mail the written disclosure to employees who do not attend the meeting. Failure to comply with this paragraph shall make the election null and void.

(4) Any election to establish or repeal an alternative workweek schedule shall be held at the work site of the affected employees. The employer shall bear the costs of conducting any election held pursuant to this section. Upon a complaint by an affected employee, and after an investigation by the labor commissioner, the labor commissioner may require the employer to select a neutral third party to conduct the election.

(5) Any type of alternative workweek schedule that is authorized by the Labor Code may be repealed by the affected employees. Upon a petition of one-third (1/3) of the affected employees, a new secret ballot election shall be held and a two-thirds (2/3) vote of the affected employees shall be required to reverse the alternative workweek schedule. The election to repeal the alternative workweek schedule shall be held not more than 30 days after the petition is submitted to the employer, except that the election shall be held not less than 12 months after the date that the same group of employees voted in an election held to adopt or repeal an alternative workweek schedule. The election shall take place during regular working hours at the employees' work site. If the alternative workweek schedule is revoked, the employer shall comply within 60 days. Upon proper showing of undue hardship, the Division of Labor Standards Enforcement may grant an extension of time for compliance.

(6) Only secret ballots may be cast by affected employees in the work unit at any election held pursuant to this section. The results of any election conducted pursuant to this section shall be reported by the employer to the Division of Labor Statistics and Research within 30 days after the results are final, and the report of election results shall be a public document. The report shall include the final tally of the vote, the size of the unit, and the nature of the business of the employer.

(7) Employees affected by a change in the work hours resulting from the adoption of an alternative workweek schedule may not be required to work those new work hours for at least 30 days after the announcement of the final results of the election.

(8) Employers shall not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek. No employees shall be discharged or discriminated against for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption or repeal. However, nothing in this section shall prohibit an employer from expressing his/her position concerning that alternative workweek to the affected employees. A violation of this paragraph shall be subject to Labor Code Section 98 *et seq.*

(D) One and one-half (1½) times a minor's regular rate of pay shall be paid for all work over 40 hours in any workweek except minors 16 or 17 years old who are not required by law to attend school and may therefore be employed for the same hours as an adult are subject to subsection (A) or (B) and (C) above.

(**VIOLATIONS OF CHILD LABOR LAWS** are subject to civil penalties of from $500 to $10,000 as well as to criminal penalties. Refer to California Labor Code Sections 1285 to 1312 and 1390 to 1399 for additional restrictions on the employment of minors and for descriptions of criminal and civil penalties for violation of the child labor laws. Employers should ask school districts about any required work permits.)

(E) An employee may be employed on seven (7) workdays in one workweek when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

(F) The provisions of Labor Code Sections 551 and 552 regarding one (1) day's rest in seven (7) shall not be construed to prevent an accumulation of days of rest when the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days; provided, however, that in each calendar month, the employee shall receive the equivalent of one (1) day's rest in seven (7).

(G) If a meal period occurs on a shift beginning or ending at or between the hours of 10 p.m. and 6 a.m., facilities shall be available for securing hot food and drink or for heating food or drink, and a suitable sheltered place shall be provided in which to consume such food or drink.

(H) Except as provided in subsections (D) and (F), this section shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

(I) Notwithstanding subsection (H) above, where the employer and a labor organization representing employees of the employer have entered into a valid collective bargaining agreement pertaining to the hours of work of the employees, the requirement regarding the equivalent of one (1) day's rest in seven (7) (see subsection (F) above) shall apply, unless the agreement expressly provides otherwise.

(J) The provisions of this section are not applicable to employees whose hours of service are regulated by:

(1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or

(2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.

(K) If an employer approves a written request of an employee to make up work time that is or would be lost as a result of a personal obligation of the employee, the hours of that makeup work time, if performed in the same workweek in which the work time was lost, may not be counted toward computing the total number of hours worked in a day for purposes of the overtime requirements, except for hours in excess of 11 hours of work in one (1) day or 40 hours of work in one (1) workweek. If an employee knows in advance that he/she will be requesting makeup time for a personal obligation that will recur at a fixed time over a succession of weeks, the employee may request to make up work time for up to four (4) weeks in advance; provided, however, that the

makeup work must be performed in the same week that the work time was lost. An employee shall provide a signed written request for each occasion that the employee makes a request to make up work time pursuant to this subsection. While an employer may inform an employee of this makeup time option, the employer is prohibited from encouraging or otherwise soliciting an employee to request the employer's approval to take personal time off and make up the work hours within the same workweek pursuant to this subsection.

## 4. MINIMUM WAGES

(A) Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:

LEARNERS. Employees during their first 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

(C) When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

(D) The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

## 5. REPORTING TIME PAY

(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

(B) If an employee is required to report for work a second time in any one workday and is furnished less than two (2) hours of work on the second reporting, said employee shall be paid for two (2) hours at the employee's regular rate of pay, which shall not be less than the minimum wage.

(C) The foregoing reporting time pay provisions are not applicable when:

(1) Operations cannot commence or continue due to threats to employees or property; or when recommended by civil authorities; or

(2) Public utilities fail to supply electricity, water, or gas, or there is a failure in the public utilities, or sewer system; or

(3) An Act of God or other cause not within the employer's control causes the interruption of work.

(D) This section shall not apply to an employee on paid standby status who is called to perform assigned work at a time other than the employee's scheduled reporting time.

## 6. LICENSES FOR DISABLED WORKERS

(A) A license may be issued by the Division authorizing employment of a person whose earning capacity is impaired by physical disability or mental deficiency at less than the minimum wage. Such licenses shall be granted only upon joint application of employer and employee and employee's representative if any.

(B) A special license may be issued to a nonprofit organization such as a sheltered workshop or rehabilitation facility fixing special minimum rates to enable the employment of such persons without requiring individual licenses of such employees.

(C) All such licenses and special licenses shall be renewed on a yearly basis or more frequently at the discretion of the Division.

(See California Labor Code, Sections 1191 and 1191.5)

## 7. RECORDS

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. The employer shall maintain an accurate production record.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

—6—

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

(D) Clocks shall be provided in all major work areas or within reasonable distance thereto insofar as practicable.

## 8. CASH SHORTAGE AND BREAKAGE

No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

## 9. UNIFORMS AND EQUIPMENT

(A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

**NOTE:** This section shall not apply to protective apparel regulated by the Occupational Safety and Health Standards Board.

(B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft. Notwithstanding any other provision of this section, employees in beauty salons, schools of beauty culture offering beauty care to the public for a fee, and barber shops may be required to furnish their own manicure implements, curling irons, rollers, clips, haircutting scissors, combs, blowers, razors, and eyebrow tweezers. This subsection (B) shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

**NOTE:** This section shall not apply to protective equipment and safety devices on tools regulated by the Occupational Safety and Health Standards Board.

(C) A reasonable deposit may be required as security for the return of the items furnished by the employer under provisions of subsections (A) and (B) of this section upon issuance of a receipt to the employee for such deposit. Such deposits shall be made pursuant to Section 400 and following of the Labor Code or an employer with the prior written authorization of the employee may deduct from the employee's last check the cost of an item furnished pursuant to (A) and (B) above in the event said item is not returned. No deduction shall be made at any time for normal wear and tear. The employee upon completion of the job shall return all items furnished by the employer.

## 10. MEALS AND LODGING

(A) "Meal" means an adequate, well-balanced serving of a variety of wholesome, nutritious foods.

(B) "Lodging" means living accommodations available to the employee for full-time occupancy which are adequate, decent, and sanitary according to usual and customary standards. Employees shall not be required to share a bed.

(C) Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than the following:

|  | Effective January 1, 2007 | Effective January 1, 2008 |
|---|---|---|
| **Lodging:** | | |
| Room occupied alone ..................................................... | $35.27 per week | $37.63 per week |
| Room shared ................................................................. | $29.11 per week | $31.06 per week |
| Apartment—two-thirds (2/3) of the ordinary rental value, and in no event more than ............................................. | $423.51 per month | $451.89 per month |
| Where a couple are both employed by the employer, two-thirds (2/3) of the ordinary rental value, and in no event more than ....................................................... | $626.49 per month | $668.46 per month |
| **Meals:** | | |
| Breakfast .......................................................................... | $2.72 | $2.90 |
| Lunch.................................................................................. | $3.72 | $3.97 |
| Dinner................................................................................. | $5.00 | $5.34 |

(D) Meals evaluated as part of the minimum wage must be bona fide meals consistent with the employee's work shift. Deductions shall not be made for meals not received or lodging not used.

(E) If, as a condition of employment, the employee must live at the place of employment or occupy quarters owned or under the control of the employer, then the employer may not charge rent in excess of the values listed herein.

## 11. MEAL PERIODS

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

## 12. REST PERIODS

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half ($3^1/_2$) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

## 13. CHANGE ROOMS AND RESTING FACILITIES

(A) Employers shall provide suitable lockers, closets, or equivalent for the safekeeping of employees' outer clothing during working hours, and when required, for their work clothing during non-working hours. When the occupation requires a change of clothing, change rooms or equivalent space shall be provided in order that employees may change their clothing in reasonable privacy and comfort. These rooms or spaces may be adjacent to but shall be separate from toilet rooms and shall be kept clean.

**NOTE:** This section shall not apply to change rooms and storage facilities regulated by the Occupational Safety and Health Standards Board.

(B) Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

## 14. SEATS

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

## 15. TEMPERATURE

(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.

(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60° F., a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 68°.

(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

(D) Federal and State energy guidelines shall prevail over any conflicting provision of this section.

## 16. ELEVATORS.

Adequate elevator, escalator or similar service consistent with industry-wide standards for the nature of the process and the work performed shall be provided when employees are employed four floors or more above or below ground level.

## 17. EXEMPTIONS

If, in the opinion of the Division after due investigation, it is found that the enforcement of any provision contained in Section 7, Records; Section 12, Rest Periods; Section 13, Change Rooms and Resting Facilities; Section 14, Seats; Section 15, Temperature; or Section 16, Elevators, would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the Division. Such exemptions shall be in writing to be effective and may be revoked after reasonable notice is given in writing. Application for exemption shall be made by the employer or by the employee and/or the employee's representative to the Division in writing. A copy of the application shall be posted at the place of employment at the time the application is filed with the Division.

## 18. FILING REPORTS

(See California Labor Code, Section 1174(a))

## 19. INSPECTION

(See California Labor Code, Section 1174)

## 20. PENALTIES

(See California Labor Code, Section 1199)

(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

(1) Initial Violation — $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

(2) Subsequent Violations — $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

(3) The affected employee shall receive payment of all wages recovered.

(B) The labor commissioner may also issue citations pursuant to California Labor Code Section 1197.1 for non-payment of wages for overtime work in violation of this order.

## 21. SEPARABILITY

If the application of any provision of this order, or any section, subsection, subdivision, sentence, clause, phrase, word, or portion of this order should be held invalid or unconstitutional or unauthorized or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

## 22. POSTING OF ORDER

Every employer shall keep a copy of this order posted in an area frequented by employees where it may be easily read during the workday. Where the location of work or other conditions make this impractical, every employer shall keep a copy of this order and make it available to every employee upon request.

**QUESTIONS ABOUT ENFORCEMENT** of the Industrial Welfare Commission orders and reports of violations should be directed to the Division of Labor Standards Enforcement. A listing of the DLSE offices is on the back of this wage order. Look in the white pages of your telephone directory under CALIFORNIA, State of, Industrial Relations for the address and telephone number of the office nearest you. The Division has offices in the following cities: Bakersfield, El Centro, Eureka, Fresno, Long Beach, Los Angeles, Oakland, Redding, Sacramento, Salinas, San Bernardino, San Diego, San Francisco, San Jose, Santa Ana, Santa Barbara, Santa Rosa, Stockton, Van Nuys.

---

**SUMMARIES IN OTHER LANGUAGES**

The Department of Industrial Relations will make summaries of wage and hour requirements in this Order available in Spanish, Chinese and certain other languages when it is feasible to do so. Mail your request for such summaries to the Department at:
P.O. Box 420603, San Francisco, CA 94142-0603.

**RESUMEN EN OTROS IDIOMAS**

El Departamento de Relaciones Industriales confeccionara un resumen sobre los requisitos de salario y horario de esta Disposicion en español, chino y algunos otros idiomas cuando sea posible hacerlo. Envie por correo su pedido por dichos resumenes al Departamento a: P.O. Box 420603, San Francisco, CA 94142-0603.

其它文字的摘錄

工業關係處測摘錄本規期中有關 工資和工時的規定，用西班牙文、中文印出。其它文字如有需要，也將同樣辦理。如果您有需要，可以來信索閱，請寄到： Department of Industrial Relations
P.O. Box 420603
San Francisco, CA 94142-0603

All complaints are handled confidentially. For further information or to file your complaints, contact the State of California at the following department offices:

**Division of Labor Standards Enforcement (DLSE)**
For labor law information and assistance for your area call the pre-recorded information lines in **bold** below. If the information you need is not provided in the pre-recorded message, please call the general office number listed.

**BAKERSFIELD**
Division of Labor Standards Enforcement
5555 California Ave., Suite 200
Bakersfield, CA 93309
661-395-2710
**661-859-2462**

**EL CENTRO**
Division of Labor Standards Enforcement
1550 W. Main St.
El Centro, CA 92643
760-353-0607
**760-353-2544**

**EUREKA**
Division of Labor Standards Enforcement
619 Second Street, Room 109
Eureka, CA 95501
707-445-6613
**707-441-4604**

**FRESNO**
Division of Labor Standards Enforcement
770 E. Shaw Ave., Suite 315
Fresno, CA 93710
559-244-5340
**559-248-8398**

**LONG BEACH**
Division of Labor Standards Enforcement
300 Oceangate, 3rd Floor
Long Beach, CA 90802
562-590-5048
**562-491-0160**

**LOS ANGELES**
Division of Labor Standards Enforcement
320 W. Fourth St, Suite 450
Los Angeles, CA 90013
213-620-6330
**213-576-6227**

**OAKLAND**
Division of Labor Standards Enforcement
1515 Clay Street, Room 801
Oakland, CA 94612
510-622-3273
**510-622-2660**

**REDDING**
Division of Labor Standards Enforcement
2115 Civic Center Drive, Room 17
Redding, CA 96001
530-225-2655
**530-229-0565**

**SACRAMENTO**
Division of Labor Standards Enforcement
2031 Howe Ave, Suite 100
Sacramento, CA 95825
916-263-1811
**916-263-5378**

**SALINAS**
Division of Labor Standards Enforcement
1870 N. Main Street, Suite 150
Salinas, CA 93906
831-443-3041
**831-443-3029**

**SAN BERNARDINO**
Division of Labor Standards Enforcement
464 West 4th Street, Room 348
San Bernardino, CA 92401
909-383-4334
**909-889-8120**

**SAN DIEGO**
Division of Labor Standards Enforcement
7575 Metropolitan, Room 210
San Diego, CA 92108
619-220-5451
**619-682-7221**

**SAN FRANCISCO**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 10th Floor
San Francisco, CA 94102
415-703-5300
**415-703-5444**

**SAN FRANCISCO – HEADQUARTERS**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 9th Floor
San Francisco, CA 94102
415-703-4810

**SAN JOSE**
Division of Labor Standards Enforcement
100 Paseo De San Antonio, Room 120
San Jose, CA 95113
408-277-1266
**408-277-3711**

**SANTA ANA**
Division of Labor Standards Enforcement
605 West Santa Ana Blvd., Bldg. 28
Santa Ana, CA 92701
714-558-4910
**714-558-4574**

**SANTA BARBARA**
Division of Labor Standards Enforcement
411 E. Canon Perdido, Room 3
Santa Barbara, CA 93101
805-568-1222
**805-965-7214**

**SANTA ROSA**
Division of Labor Standards Enforcement
50 "D" Street, Suite 360
Santa Rosa, CA 95404
707-576-2362
**707-576-2459**

**STOCKTON**
Division of Labor Standards Enforcement
31 E. Channel Street, Room 317
Stockton, CA 95202
209-948-7771
**209-941-1906**

**VAN NUYS**
Division of Labor Standards Enforcement
6150 Van Nuys Boulevard, Room 206
Van Nuys, CA 91401
818-901-5315
**818-908-4556**

EMPLOYERS:  Do not send copies of your alternative workweek election ballots or election procedures.

Only the results of the alternative workweek election shall be mailed to:

Department of Industrial Relations
Division of Labor Statistics and Research
P.O. Box 420603
San Francisco, CA 94142-0603
(415) 703-4780

Prevailing Wage Hotline (415) 703-4774

.

**Exhibit I**

Cansado de verlo?
¿Le dicen que no haga caso?
Reportelo!

**Bally Total Fitness***
**Línea Directa De Prevención De Pérdidas Y Recursos Humanos**
**1.866.572.2559**

Usted también puede reportar cualquier infracción de las políticas o los procedimientos de la compañía a su representante de Recursos Humanos. Si tiene dudas sobre cómo comunicarse con su representante de RRHH o prefiere no reportar el incidente a su representante local, llame al número indicado más arriba.

*Su reporte se tratará con la más estricta confidencia.*



Your Bally™

©2005 Bally Total Fitness Corp.

Tired of seeing it?
Told to ignore it?
Report it.

**Bally Total Fitness**
**Loss Prevention and Human Resource Hotline**
**1.866.572.2559**

Your Bally™

**Exhibit J**

# Bally Total Fitness

Suite 300
12440 E. Imperial Highway
Norwalk, California 90650-9988

Employee:

Employee Number:
Check Number:
Pay Period:        01/19/08  thru  02/01/08
Pay Date:          02/14/08

W4 Elections:                          Federal    IL
Taxable Marital Status:                Single     Single
Exemptions:                            0          0

| Earn Code | Pay Rate | Hours | Earn Code | Pay Rate | Hours |
|-----------|----------|-------|-----------|----------|-------|

## Statement of Earnings and Deductions

| Earnings | Hours | Current | Year-to-date |
|----------|-------|---------|--------------|
| REG HOURS |  |  | 2,895.48 |
| ADJ/REG WGS |  | 701.53 |  |
| HOLIDAY |  |  | 60.00 |
| COMMISSION |  |  | 43.56 |
| Gross Pay |  | 701.53 | 2,999.04 |
| Net Pay |  | 551.60 | 2,264.93 |
| Federal Taxable Wages |  | 701.53 | 2,884.86 |
| PayRate: | 8.00 |  |  |

| Deductions |  | Current | Year-to-date |
|------------|--|---------|--------------|
| Taxes | FEDERAL TAX | 75.22 | 312.70 |
|  | SOC SECURITY | 43.49 | 178.86 |
|  | MEDICARE | 10.17 | 41.83 |
|  | IL STATE TAX | 21.05 | 86.54 |
|  | Total Taxes | 149.93 | 619.93 |
| Voluntary | SGL MED DENT |  | 114.18 * |
|  | Total Deductions |  | 114.18 |
|  | Total Withheld | 149.93 | 734.11 |

* Adjustment to Federal Taxable Wages

Please report any timekeeping &/or payroll discrepancies to your manager,
the Human Resource Department, the employee HR Hotline @ 1-866-572-2559, or payroll@ballyfitness.com.

Favor de reportar cualquier discrepancia o error de tiempo o pagos de sueldo a su gerente, departamento de recursos humanos
o a la línea telefónica de emergencia de departamento de recursos humanos al 1-866-572-2559, o a payroll@ballyfitness.com.

( DETACH ALONG THIS PERF )

**Exhibit J**

# Bally Total Fitness

Suite 300
12440 E. Imperial Highway
Norwalk, California 90650-9988

Employee:

Employee Number:
Check Number:
Pay Period:          01/19/08 thru 02/01/08
Pay Date:            02/14/08

W4 Elections:                    Federal      IL
Taxable Marital Status:          Single       Single
Exemptions:                      0            0

Earn Code    Pay Rate  Hours    Earn Code    Pay Rate  Hours

## Statement of Earnings and Deductions

| Earnings | Hours | Current | Year-to-date |
|---|---|---|---|
| REG HOURS | | | 2,895.46 |
| ADJ/REG WGS | 701.53 | | |
| HOLIDAY | | | 60.00 |
| COMMISSION | | | 43.56 |
| Gross Pay | | 701.53 | 2,999.04 |
| Net Pay | | 551.60 | 2,264.93 |
| Federal Taxable Wages | | 701.53 | 2,884.86 |
| PayRate: | 8.00 | | |

| Deductions | | Current | Year-to-date |
|---|---|---|---|
| Taxes | FEDERAL TAX | 75.22 | 312.70 |
| | SOC SECURITY | 43.49 | 178.86 |
| | MEDICARE | 10.17 | 41.83 |
| | IL STATE TAX | 21.05 | 86.54 |
| | Total Taxes | 149.93 | 619.93 |
| Voluntary | SGL MED DENT | | 114.18 * |
| | Total Deductions | .00 | 114.18 |
| | Total Withheld | 149.93 | 734.11 |

* Adjustment to Federal Taxable Wages

Please report any timekeeping &/or payroll discrepancies to your manager,
the Human Resource Department, the employee HR Hotline @1-866-572-2559, or payroll@ballyfitness.com.

Favor de reportar cualquier discrepancia o error de tiempo o pagos de sueldo a su gerente, departamento de recursos humanos
o a la línea telefónica de emergencia de departamento de recursos humanos al 1-866-572-2559, o a payroll@ballyfitness.com.

[ DETACH ALONG THIS PERF ]

**Exhibit K**

---

**Bally Total Fitness**
**Wage & Hour Training**

---

**Name:** _____    **Date:** _____
**Position:** _____    **Club:** _____

I certify that I have attended the Wage & Hour Training class and understand the importance of the issues and policies discussed.  I understand that I am responsible for making sure timekeeping is done accurately by my subordinates. Timekeeping MUST reflect the time worked and be consistent with state laws and company policy.  I also understand that if I violate this policy I am subjecting myself to disciplinary action up to and including suspension, demotion, or termination.

_____
Employee's Signature