1  PAUL J. COADY (SBN: 81698)
   Email: pcoady@winston.com
2  S. SHANE SAGHEB (SBN: 109878)
   Email: ssagheb@winston.com
3  WINSTON & STRAWN LLP
   333 South Grand Avenue, 38th Floor
4  Los Angeles, CA 90071-1543
   Telephone:    213-615-1700
5  Facsimile:    213-615-1750

6  JOAN B. TUCKER FIFE (SBN: 144572)
   Email: jfife@winston.com
7  WINSTON & STRAWN LLP
   101 California Street, Suite 3900
8  San Francisco, CA 94111
   Telephone:    415-591-1000
9  Facsimile:    415-591-1400

10 Attorneys for Defendant
   BALLY TOTAL FITNESS CORPORATION

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15 FRANCISCO E. SALAZAR, JR., on behalf of     No. C 08-00175 JSW
   himself, the general public and as an "aggrieved
16 employee" under the California Labor Code
   Private Attorneys General Act,              DEFENDANT, BALLY TOTAL FITNESS
17                                             CORPORATION'S, REPLY
                   Plaintiff,                  MEMORANDUM OF POINTS AND
18                                             AUTHORITIES SUPPORTING MOTION
          vs.                                  TO COMPEL ARBITRATION ON AN
19                                             INDIVIDUAL BASIS AND TO STAY
   BALLY TOTAL FITNESS a Delaware              FURTHER PROCEEDINGS PENDING
20 corporation doing business within the State of  ARBITRATION
   California, and each of its subsidiaries doing
21 business in California, and DOES 1 through 50,  Date:     August 15, 2008
   inclusive,                                  Time:     9:00 a.m.
22                                             Dept:     Courtroom of Hon. Jeffrey S. White
                   Defendants.
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION .................................................................................................1

4

II.   THIS MOTION IS TO BE RESOLVED UNDER ILLINOIS LAW. .....................................1

5

III.  UNDER ILLINOIS LAW, THE EDRP AND ITS CLASS ACTION WAIVER ARE
      ENFORCEABLE. ................................................................................................3

6

7

IV.   UNDER CALIFORNIA LAW, THE EDRP AND ITS CLASS ACTION WAIVER
      ARE ALSO ENFORCEABLE. .................................................................................7

8

V.    CONCLUSION ..................................................................................................14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armendariz v. Foundation Health Psychare Svcs., Inc.,*
 24 Cal. 4th 83 (2000) ...................................................................................................2, 14

*Bolter v. Superior Court,*
 87 Cal. App. 4th 900 (2001) ...............................................................................................13

*Circuit City Stores, Inc. v. Mantor,*
 335 F.3d 1101 (9th Cir. 2003) ..............................................................................................1

*Davis v. O'Melveny & Myers,*
 485 F.3d 1066 (9th Cir. 2007) .............................................................................1, 7, 11, 12

*De Simas v. Big Lots Stores, Inc.,*
 2007 U.S. Dist. LEXIS 19257 (N.D. Cal. March 2, 2007) ......................................................11

*Discover Bank v. Superior Court,*
 134 Cal. App. 4th 886 (2005) ................................................................................................2

*Gentry v. Superior Court,*
 42 Cal. 4th 443 (2007) ................................................................................................ passim

*Green Tree Fin. Corp.-Alabama v. Randolph,*
 531 U.S. 79 (2000) ................................................................................................................4

*Ingle v. Circuit City Stores, Inc.,*
 328 F.3d 1165 (9th Cir. 2003) ..............................................................................................7

*Kinkel v. Cingular Wireless, LLC,*
 223 Ill. 2d 1 (2006) ..........................................................................................................4, 6

*Moreno v. Autozone, Inc.,*
 2007 WL 1650942 (N.D. Cal. June 5, 2007) ........................................................................11

*Nedlloyd Lines B.V. v. Superior Court,*
 3 Cal. 4th 459 (1992) ............................................................................................................2

*Shroyer v. New Cingular Wireless Servs., Inc.,*
 498 F.3d 976 (9th Cir. 2007) ................................................................................................7

*Skirchak v. Dynamics Research Corp., Inc.,*
 432 F. Supp. 2d 175 (D. Mass. 2006) ....................................................................................7

*Wigginton v. Dell, Inc.,*
 2008 WL 2267173 (Ill. App. 5 Dist. 2008)........................................................2, 3, 4, 5, 6

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

ii

**STATUTES**

Cal. Bus. & Prof. Code § 17203 .................................................................................................11

Cal. Civ. Code §1670.5(a) .........................................................................................................13

Cal. Civ. Proc. Code § 340 .......................................................................................................11

Cal. Civ. Proc. Code § 527.3 ..................................................................................................2, 3

Cal. Lab. Code § 2699.3 ...........................................................................................................11

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

iii

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION ON
AN INDIVIDUAL BASIS AND FOR A STAY
Case No. C08-00175 JSW

## I.      INTRODUCTION

Whether the claims asserted in the instant complaint are encompassed by the arbitration agreement at issue in this motion is not disputed.  In his opposition to defendant, Bally Total Fitness Corporation's ("Bally's"), motion to compel arbitration on an individual basis, plaintiff, Francisco E. Salazar, Jr. ("Salazar"), does not claim that his causes of action fall outside the scope of the Employment Dispute Resolution Procedure ("EDRP") that he had executed.  He claims only that the EDRP is unenforceable because it is both procedurally and substantively unconscionable.  His arguments, however, are premised on rank speculation and inapposite authorities.  Significantly, Salazar presents no evidence at all in support of his claims, thus failing entirely to satisfy his burden of proof.  As demonstrated below, the applicable authorities and the undisputed facts presented by Bally in its motion warrant the issuance of an order compelling Salazar to submit his claims to arbitration on his own behalf only.

## II.      THIS MOTION IS TO BE RESOLVED UNDER ILLINOIS LAW.

Salazar gives short shrift to Bally's argument in its moving papers that Illinois substantive law applies, and he claims that California law should apply.  According to Salazar, California "has a substantial interest in the regulation of wage and hours of work for employees employed within its borders."  *See* Opposition, p. 7, ln. 26 – p. 8, ln. 1; p. 9, lns. 1-6.  In support of this conclusion, Salazar relies on the decisions in *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101 (9th Cir. 2003), and *Davis v. O'Melveny & Myers,* 485 F.3d 1066 (9th Cir. 2007), in which the Ninth Circuit Court of Appeals applied California law because the employees who were subject to the arbitration agreements were employed in California.  In neither case, however, did the arbitration agreement at issue have a choice of law provision.  Thus, *Mantor* and *Davis* are inapposite.  The court in those cases merely made a general observation that California employees are subject to California law.  These rulings do not apply when the arbitration agreements have explicit choice of law provisions, as the EDRP has.

The presence of the Illinois choice of law provision in the EDRP requires this court to apply Illinois law, unless it finds that doing so would violate a fundamental public policy of California and

1

1    that California has a materially greater interest than Illinois in determining whether the EDRP is

2    enforceable.  *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 466 (1992); *Discover Bank*

3    *v. Superior Court,* 134 Cal. App. 4th 886 (2005).  Salazar has failed to establish that any fundamental

4    public policy of California would be violated by applying Illinois law in this motion.  In fact, no

5    such violation exists.  As the authorities cited by both parties reflect, the public policy of both states

6    regarding the enforceability of arbitration agreements and class action waivers is consistent.  Under

7    the laws of both states, arbitration agreements are to be enforced unless they are unconscionable.

8    Both states consider procedural and substantive unconscionability in this analysis.  *See e.g.*

9    *Armendariz v. Foundation Health Psychare Svcs., Inc.,* 24 Cal. 4th 83 (2000); *Wigginton v. Dell,*

10   *Inc.,* 2008 WL 2267173, *2 (Ill. App. 5 Dist. 2008).[1]  Furthermore, with respect to the enforceability

11   of class action waivers, in particular, both states recognize that such waivers may be enforced under

12   certain circumstances.  *Gentry v. Superior Court,* 42 Cal. 4th 443, 462-64 (2007); *Wigginton,* 2008

13   WL 2267173 at *6 (class action waivers are not *per se* unconscionable).  There simply is no

14   fundamental public policy in California that precludes application of Illinois law, consistent with the

15   parties' wishes as expressed in the EDRP.

16          In a vain effort to identify a California public policy that would be violated by the application

17   of Illinois law, Salazar points to the preamble and statement of policy regarding California Code of

18   Civil Procedure Section 527.3.  This public policy is irrelevant to the instant dispute, as it simply

19   declares the rights of California employees to organize, an issue that is not presented by Salazar's

20   claims in this action.  In any event, Salazar does not show that this California public policy differs in

21   any way from the public policy in Illinois.  Nor does he show how Illinois law regarding class action

22   waivers interferes with this California public policy.  In fact, there is no inconsistency at all.  As a

23   result of the fact that Illinois' and California's public policies are entirely consistent with regard to

24   the issues related to enforcement of the EDRP, the choice of law provision of the EDRP is to be

25   enforced.  Accordingly, Illinois law is to be applied in determining the outcome of this motion.  As

26

27   _____

28   [1]  A copy of the Westlaw version of *Wigginton* is attached as Exhibit A for the Court's convenience.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    demonstrated below, whether the law of Illinois or California is applied, the outcome is the same; the

2    EDRP and its class action waiver are to be enforced.

3        Salazar also claims that the EDRP's class action waiver is unconscionable under federal law,

4    *i.e.,* the Norris LaGuardia Act.  *See*  Opposition, p. 1, lns. 17-23.  He relies on and "adopts"

5    arguments that he raised in his motion to strike certain affirmative defenses raised by Bally in its

6    answer.  *Id.,* n. 2.  Bally submits that Salazar's attempt simply to "adopt" arguments that he made in a

7    different motion is improper.  To the extent that the Court nevertheless is inclined to consider those

8    arguments, Bally requests that the Court also consider the arguments raised in its opposition to the

9    motion to strike, which arguments demonstrate that Salazar's motion to strike fails and that federal

10   law does not render the EDRP's class action waiver unenforceable.

## III.    UNDER ILLINOIS LAW, THE EDRP AND ITS CLASS ACTION WAIVER ARE ENFORCEABLE.

13       In support of his claim that the EDRP and its class action waiver are unenforceable under

14   Illinois law, Salazar relies exclusively on the recent decision in *Wigginton, supra.  Wigginton* is

15   easily distinguished, however.  At issue in *Wigginton* was an arbitration agreement that contained a

16   class action waiver that the consumer (a purchaser of computer equipment) never saw before he

17   made the purchase.  The consumer made his computer purchase by telephone.  As a result, "he did

18   not see the terms and conditions [containing an arbitration provision] until after he had purchased the

19   computer systems."  2008 WL 2267173 at *3.  On this basis, the court in *Wigginton* concluded,

20   "This combination of unfair surprise and the lack of the ability to bargain over the terms of the

21   contract leads us to conclude that the contract formed between the plaintiff and Dell in the instant

22   case was at least somewhat procedurally unconscionable."  *Id.* at *4.

23       The procedural unconscionability that was present in *Wigginton* is not present in the instant

24   case.  Despite the mere speculation contained in Salazar's opposition, there is no evidence that

25   Salazar did not read the EDRP until after he started working at Bally.  In his opposition, Salazar

26   claims, "it is fair to assume Plaintiff herein was given the employment package after he was

27   hired…."  *See* Opposition, p. 9, lns. 25-26.  It is improper for Salazar to make any such assumption.

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION ON
AN INDIVIDUAL BASIS AND FOR A STAY
Case No. C08-00175 JSW

He has the burden of proving that the EDRP and its class action waiver are unenforceable. *See e.g.*

*Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91-92 (2000). Thus, it was incumbent

upon Salazar to present evidence, rather than mere assumptions, to establish procedural

unconscionability. His failure to do so, alone, is fatal to his position.

Moreover, the assumption Salazar makes is entirely inconsistent with the undisputed

evidence presented by Bally. In her declaration filed in support of Bally's motion, Mariah

Machnikowski authenticates the EDRP that Salazar executed. *See* Machnikowski Decl., ¶ 3. On its

face, the EDRP shows that Salazar executed it on April 29, 2005. *See* Exhibit A to Machnikowski

Decl. Machnikowski further stated in her declaration that Salazar did not commence his

employment with Bally until May 6, 2005, a full week ***after*** he executed the EDRP. *See*

Machnikowski Decl., ¶ 2. Salazar may not contravene this evidence by mere supposition.

The court in *Wigginton* next addressed the issue of substantive unconscionability. Relying

upon the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless, LLC,* 223 Ill. 2d 1 (2006),

on which Bally also relied in its motion, the court in *Wigginton* held:

> Substantive unconscionability concerns the actual terms of the contract
> and examines the relative fairness of the obligations assumed.
> [Citation.] Indicative of substantive unconscionability are contract
> terms so one-sided as to oppress or unfairly surprise an innocent party,
> an overall imbalance in the obligations and rights imposed by the
> bargain, and significant cost-price disparity.

*Wigginton,* 2008 WL 2267173 at *6, *quoting Kinkel,* 223 Ill. 2d at 28.

According to *Wigginton,* class arbitration waivers are not *per se* unenforceable, and "the

determination must be made on a case-by-case basis, considering such circumstances as 'the fairness

and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the

claim relative to the amount of damages that might be awarded.'" *Wigginton,* 2008 WL 2267173 at

*6, *quoting Kinkel,* 223 Ill. 2d at 42-43. "Additional circumstances to consider include whether the

contract is one of adhesion, whether the cost of arbitration is disclosed in the contract …, and

whether the underlying claim is the type of claim the average consumer would be aware of …."

*Wigginton,* 2008 WL 2267173 at *6, *citing Kinkel,* 223 Ill. 2d at 29-30, 42.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

4

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION ON
AN INDIVIDUAL BASIS AND FOR A STAY
Case No. C08-00175 JSW

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    In concluding that the class action waiver in that case was substantively unconscionable, the

2    court in *Wigginton* found that (a) the arbitration agreement in question was "a contract of adhesion

3    that was not brought to the attention of the consumer until after he had completed the purchase;" (b)

4    the cost of arbitration was not disclosed in the contract; and (c) the cost of vindicating the claims

5    asserted was "likely to exceed the potential recovery for most if not all potential Illinois class

6    members." *Wigginton,* 2008 WL 2267173 at *6-*7.  These factors are not present in the instant case.

7    First, Salazar has presented no evidence establishing that the EDRP is a contract of adhesion.  In

8    particular, he has not shown that he was precluded from bargaining or negotiating with respect to

9    any of the EDRP's terms.  He also has not shown that he had no opportunity to review and consider

10   the EDRP's terms before signing it.  In fact, he has presented no evidence at all on these subjects or

11   any other subjects related to the instant motion.  In contrast to his speculation, the undisputed

12   evidence offered by Mariah Machnikowski is that Salazar had at least a full week to review and

13   consider the EDRP before starting work for Bally, as demonstrated above.  In light of this evidence,

14   there is no basis upon which this court may conclude that the EDRP is a contract of adhesion.

15       Second, in stark contrast to the arbitration agreement in *Wigginton,* where the arbitration

16   costs that the consumer would bear were not disclosed in the contract, the EDRP does contain an

17   express provision regarding the cost of arbitration.  Under the EDRP, the cost to the employee is

18   zero.  Specifically, Section 16.1 of the EDRP provides:

19           The Employer shall be solely responsible for the expenses of the
             arbitration (other than the Employee's attorneys' fees, if any, and
20           personal expenses of the Employee, including the expenses of any
             Employee witnesses).  The "expenses of the arbitration" shall mean the
21           expenses of the Arbitrator (such as daily fee and travel) and filing fee
             and shall exclude the Parties' respective attorneys' fees and
22           disbursements, expenses of witnesses and costs of producing other
             evidence.
23
     *See* Ex. 1 to Machnikowski Decl.  This provision distinguishes the EDRP from the arbitration
24
     agreement in *Wigginton*.
25
         Third, as to whether "the cost of vindicating a claim is likely to exceed the potential recovery
26
     for most if not all potential Illinois class members" (*see* 2008 WL 2267173 at *7), Salazar again has
27
     presented absolutely no evidence on this subject.  The reason for this is self-evident:  there is no cost
28

5

to him or to potential class members of pursuing their individual claims in arbitration, as demonstrated above.  Moreover, Salazar has presented no evidence of any attorneys' fees for which he or potential class members may be responsible in pursuing such claims and, in particular, he has failed to show that counsel would not accept such representation on a contingency fee basis.  Salazar also has presented no evidence regarding the amounts that he seeks to recover or the amounts of the purported claims of unnamed putative class members.  As a consequence, there is no basis upon which the Court may make any reasoned determination as to "whether, in light of these costs and the potential recovery, the plaintiff can be made whole." *Id.* at *6, *citing Kinkel, supra,* 223 Ill. 2d at 29-30 (the court concluded that it was "an absolute certainty" that the plaintiff would not be made whole if she prevailed on the merits because her recovery would be $150, while her arbitration costs would be $125 plus attorneys' fees).  As it was Salazar's burden to present such evidence, his attack upon the EDRP's class action waiver fails.

        In his opposition to this motion, Salazar nonetheless claims that the court in *Wigginton* "found substantive unconscionability … because there was an Illinois statute specifically giving class action redress for these type of claims, thus evidencing a policy in favor of class action resolutions to protect Illinois citizens at large." *See* Opposition, p. 10, lns. 5-8.  This is a gross misinterpretation of the holding in *Wigginton.*  The court in that case merely observed that it must evaluate the cost of the arbitration and the ability of the plaintiff to be made whole not only from the perspective of the named plaintiff, himself, but also from the perspective of the individual class members.  In this regard, the court referenced the Illinois statute authorizing class treatment, noting, "The plaintiff's $500 claim is relatively small, and many class members will have claims of as little as $250." *Id.* at *7.  Based on the anticipated cost to the consumer of pursuing the arbitration, the court concluded, "the cost of vindicating a claim is likely to exceed the potential recovery for most if not all potential Illinois class members." *Id.*  On this basis, the court concluded that "enforcing the class arbitration waiver against Illinois consumers violates the public policy of this state." *Id.*  This concern is not present in the instant case.  As stated above, Salazar has presented no evidence regarding his individual potential recovery or the potential recovery of the putative class members.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    In the absence of such evidence, there is no basis to determine that the cost of vindicating Salazar's

2    claims will exceed or are likely to exceed the potential recovery, especially where Bally is

3    responsible for the costs of the arbitration.  In light of the fact that Salazar has the burden of proof on

4    this issue, his failure to present such evidence is fatal to his claim that the EDRP and its class action

5    waiver should not be enforced.

6    **IV.     UNDER CALIFORNIA LAW, THE EDRP AND ITS CLASS ACTION WAIVER ARE**

7    **ALSO ENFORCEABLE.**

8         Assuming, *arguendo,* that California law rather than Illinois law applied here, the result is

9    identical, *i.e.* the EDRP and its class action waiver cannot be found to be procedurally or

10   substantively unconscionable.  In support of his claim of unconscionability under California law,

11   Salazar relies on three decisions of the Ninth Circuit Court of Appeals, *Davis v. O'Melveny & Myers,*

12   485 F.3d 1066 (9th Cir. 2007), *Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d 976 (9th Cir.

13   2007), and *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir. 2003), relying most heavily on

14   *Davis.*  Salazar's reliance on these cases is misplaced.  All of them were decided before the

15   California Supreme Court issued its seminal decision in *Gentry v. Superior Court,* 42 Cal. 4th 443

16   (2007), which addressed specifically the enforceability of class action waivers under California law.

17   The rationale of the Ninth Circuit decisions on which Salazar relies was supplanted by *Gentry*.

18        Salazar also relies on *Skirchak v. Dynamics Research Corp., Inc.,* 432 F. Supp. 2d 175 (D.

19   Mass. 2006).  That case applied Massachusetts law to the issue of whether a class action waiver was

20   enforceable and therefore is inapposite.  *Gentry* controls to the extent that California law applies.

21        Salazar broadly claims that under California law, "waivers of statutory class action wage

22   claims in employment contracts are unconscionable…."  *See* Opposition, p. 3, lns. 4-5.  This claim is

23   belied by *Gentry,* in which the California Supreme Court recognized that not "all class arbitration

24   waivers in overtime cases are unenforceable" and that the decision does "not foreclose the possibility

25   that there may be circumstances under which individual arbitrations may satisfactorily address the

26   overtime claims of a class of similarly aggrieved employees…."  *Gentry,* 42 Cal. 4th at 462, 464.

27   The Court in *Gentry* further identified four factors that must be considered in determining whether

28

7

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   class action waivers are enforceable.  Salazar virtually ignores these factors.  Moreover, he has

2   presented no evidence that would permit the Court to conclude that these factors warrant a finding

3   that the EDRP's class action waiver is unenforceable.  In particular, Salazar has presented no

4   evidence regarding (1) the size of his potential individual recovery; (2) the potential for retaliation

5   against members of the class; (3) whether absent class members may be ill-informed about their

6   rights; and (4) any other real world obstacles to the vindication of class members' rights to overtime

7   pay through individual arbitration.  *See Gentry,* 42 Cal. 4th at 463.  Having failed to present such

8   evidence, Salazar has failed to satisfy his burden of proof.

9          By contrast, Bally has presented extensive uncontroverted evidence that it (a) goes to great

10   lengths to ensure its employees are adequately educated about their employment rights, and (b) also

11   provides them with elaborate protections against retaliation if they choose to complain about their

12   exercise of those rights or that their rights have been violated.  Machnikowski Decl., ¶¶ 4-31.

13   Moreover, Bally has presented abundant uncontroverted evidence that employees are generally not

14   inhibited from bringing single-plaintiff (*i.e.,* non-class or collective action) cases over wage and hour

15   issues, including issues implicated in this case.  *See* Sagheb Decl. and Bally's Request for Judicial

16   Notice.  This evidence negates any possible argument that the small size of the potential recovery or

17   other supposed "real world obstacles" deter employees from exercising their rights to challenge their

18   employers' treatment of them, particularly with respect to wage and hour issues.  Thus, although it

19   was not its burden to do so, Bally presented extensive evidence, which Salazar did not even attempt

20   to controvert, demonstrating that the factors identified in *Gentry* for not enforcing a class action

21   waiver are not present here.

22          Without the support of any evidence, Salazar claims that there are nine reasons that the facts

23   of the instant case nevertheless "are either on all fours [with *Gentry*], or slightly favor Plaintiff."  *See*

24   Opposition, p. 4, ln. 23.  Each of Salazar's reasons is detailed below.  None has merit.

25          1.       Salazar claims that the EDRP does not contain a 30-day opt out period as did the

26   arbitration agreement in *Gentry*.  According to *Gentry*, however, the 30-day opt out provision was

27   irrelevant to the Court's conclusion that the class action waiver in that case was unenforceable.

28

1   *Gentry,* 42 Cal 4th at 450-51.  Nothing contained in *Gentry* or in any decision construing *Gentry*

2   suggests, much less holds, that an opt out provision is necessary for an arbitration agreement to be

3   enforceable.  Thus, the absence of such an opt-out provision in the instant case is entirely irrelevant.

4         2.      Salazar claims that "the arbitration agreement in this case was buried in a bunch of

5   papers given to the employee on the day he was hired."  *See* Opposition, p. 4, lns. 24-26.  To the

6   extent that this claim of procedural unconscionability even is relevant to the enforceability of class

7   action waivers, it fails here because it is entirely unsupported by any evidence and, in fact, is

8   contrary to the uncontroverted evidence before this Court.  Salazar has submitted no evidence that

9   the EDRP "was buried in a bunch of papers," and no such evidence is before this Court.

10  Furthermore, his unsupported claim that such papers were given to him "on the day he was hired" is

11  contravened by the evidence submitted by Bally.  In particular, as stated above, the uncontroverted

12  evidence establishes that Salazar signed the EDRP a full week before he started work.

13        3.      Salazar claims, "it was a take it or leave it proposition, with a very clear 'at will'

14  statement so that if the employee rejected the agreement, or any part of it, he or she … had no

15  recourse if the employer terminated the employee."  *See* Opposition, p. 4, ln. 26 – p. 5, ln. 1.  Again,

16  Salazar has presented no evidence that the EDRP was presented as "a take it or leave it proposition"

17  or that he would have no recourse if he rejected it.

18        4.      Salazar claims that the class action waiver is "buried in language that says an

19  employee can't bring a grievance that concerns any other employee…."  *See* Opposition, p. 5, lns. 1-

20  2.  The waiver is not buried in that language; that language constitutes the waiver.  Specifically, the

21  EDRP in plain language states, "Unless the Employee and the president or other representative of the

22  Employer specifically set forth in Paragraph 6.2 jointly agree otherwise in writing, all Disputes

23  related to the Employee, ***and no Disputes relating to any other employee***, shall be submitted in the

24  same proceeding to the Arbitrator selected pursuant to this Article Eight."  EDRP, ¶ 8.4 (emphasis

25  added).  This language does not appear in a footnote or in a smaller font than the rest of the EDRP

26  language.  It is not legalese.  Salazar's claim that this language was "buried" simply is unsupported.

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.      Salazar claims, "the amount involved in an individual wage claim is typically small, and the check cashing claim even smaller…."  *See* Opposition, p. 5, lns. 4-5.  This is Salazar's only attempt to satisfy any of the four factors identified by *Gentry* as being necessary to the evaluation of the enforceability of class action waivers.  Again, however, Salazar has failed to support his claim with any evidence.  Instead, he relies solely upon an abstraction.  He thus has failed to satisfy his burden of proof.

6.      Salazar claims, "the arbitration agreement is limited to employment disputes, which favors the employer, rather than all disputes between the employee and employer arising out of any relationship."  *See* Opposition, p. 5, lns. 8-10.  This claim is frivolous.  The EDRP is bilateral and covers "any and all Disputes between the parties that arise from or relate to the Employee's employment with the Employer…."  EDRP, ¶ 1.1.  The only exceptions are claims for workers' compensation benefits, claims for unemployment benefits, claims subject to the exclusive jurisdiction of the National Labor Relations Board, and claims based upon an employee pension or other benefit plan, the terms of which contain an arbitration or other non-judicial dispute resolution procedure.  EDRP, ¶ 1.4.  These exclusions benefit the employee, not the employer, as it is the employee who almost invariably brings such claims.  Thus, the EDRP is in no way one-sided in favor of Bally.  Salazar relies on no authority in support of his brazen claim that the EDRP's coverage only of employment disputes, but not disputes unrelated to the employment relationship, somehow is unconscionable.  In fact, no such authority exists.  Furthermore, Salazar's claim simply makes no sense.  The parties' relationship was exclusively an employer/employee relationship.  Limiting the scope of the disputes subject to the EDRP to those that arise from that relationship thus is entirely reasonably.  Had the EDRP covered all unrelated disputes between Bally and Salazar, Salazar likely would have claimed that the agreement was unconscionable because it was overbroad.

7.      Salazar claims that Bally is using the EDRP to dismiss penalties due to the State of California under the Private Attorney General Act ("PAGA"), although the State is not a party to the EDRP.  Salazar has no basis to assert any right on behalf of the State, however.  The State had an opportunity to assert a claim to pursue such penalties, but it declined to do so.  Specifically, a

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION ON
AN INDIVIDUAL BASIS AND FOR A STAY
Case No. C08-00175 JSW

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    prerequisite to Salazar's filing a claim under PAGA is the giving of written notice to the Labor and

2    Workforce Development Agency (the "Agency"). Cal. Lab. Code § 2699.3(a)(1). Salazar twice

3    gave such written notice to the Agency. (Copies of Salazar's November 15, 2005 and May 19, 2006

4    notices are attached hereto as Exhibits B and C, respectively. Bally requests that the Court take

5    judicial notice of these notices, inasmuch as they are part of the Court's file, as they are part of

6    Salazar's Initial Disclosures, filed with the Court on March 26, 2008.) Only if the Agency notified

7    Salazar that it did not intend to investigate the claim did Salazar have a right to file a claim under

8    PAGA. Cal. Lab. Code § 2699.3(a)(2)(A). In fact, the Agency twice notified Salazar that it did not

9    intend to investigate his allegations. (Copies of the Agency's December 20, 2005 and June 14, 2006

10    notices are attached hereto as Exhibits D and E, respectively. Bally also requests that the Court take

11    judicial notice of these notices, inasmuch as they are part of the Court's file, as they are part of

12    Salazar's Initial Disclosures, filed with the Court on March 26, 2008.) Thus, the State has elected to

13    forego its right to investigate and prosecute Salazar's claims. Salazar may not assert rights of the

14    State that the State has already elected to forego. Moreover, Salazar's PAGA claim is time-barred.

15    A one-year statute of limitations pursuant to California Code of Civil Procedure Section 340 applies

16    to PAGA claims because such claims entitle a successful plaintiff to civil penalties. Salazar initiated

17    the instant action on October 22, 2007, more than one year after his employment by Bally ended on

18    September 26, 2005. Machnikowski Decl., ¶ 2. Therefore, any PAGA claim that could be asserted

19    by Salazar is time-barred. *See Moreno v. Autozone, Inc.,* 2007 WL 1650942 (N.D. Cal. June 5,

20    2007); *De Simas v. Big Lots Stores, Inc.,* 2007 U.S. Dist. LEXIS 19257 (N.D. Cal. March 2, 2007).

21    Salazar thus has no basis upon which he may pursue a PAGA claim, and his attack upon the class

22    action waiver, based upon a time-barred claim that he cannot lawfully pursue, is misplaced.

23             8.      Salazar claims that PAGA and California's unfair competition law (Cal. Bus.

24    & Prof. Code § 17203) ("UCL") establish "a specific policy in favor of class actions in labor code

25    violations." *See* Opposition, p. 5, lns. 14-15. In fact, it is the very language in *Davis v. O'Melveny*

26    *& Myers, supra,* upon which Salazar relies that establishes the flaw in Salazar's conclusion. The

27    court in *Davis* held that "an arbitration agreement may not function so as to require employees to

28

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO COMPEL ARBITRATION ON
AN INDIVIDUAL BASIS AND FOR A STAY
Case No. C08-00175 JSW

1   waive potential recovery for **substantive** statutory rights in an arbitral forum…." 485 F.3d 1066,

2   1082 (emphasis added). The PAGA and UCL provisions upon which Salazar relies are not

3   substantive. They are purely procedural and thus do not establish the "specific policy" that Salazar

4   claims exists. The mere fact that a statute provides that claims may be pursued on a class basis does

5   not compel a finding that a class action waiver is *per se* unenforceable, as the California Supreme

6   Court in *Gentry* has expressly held.

7           9.      In his ninth claim, Salazar refers to what he describes as the EDRP's "overbroad

8   confidentiality provision," multiple steps that must be taken before arbitration, exclusions from

9   arbitration, and the EDRP's one-year notice provision. Each of these is addressed.

10          A.      The EDRP's confidentiality provision is not overbroad. The Ninth Circuit in

11  *Davis*, on which Salazar relies, expressly observed that confidentiality provisions in arbitration

12  agreements are not *per se* unconscionable. 485 F.3d at 1079. The court in *Davis* concluded that the

13  confidentiality provision at issue in that case was too broad because it precluded any mention to

14  **anyone** even of the existence of a controversy and thus restricted employees "from contacting other

15  employees to assist in litigating (or arbitrating) an employee's case" and further handicapped "an

16  employee's ability to investigate and engage in discovery." *Id.* at 1078. By contrast, the EDRP's

17  confidentiality provision is limited to the arbitration proceeding itself, "including the hearing and

18  record of the proceedings." EDRP, ¶ 15.1. There is no blanket prohibition of communications that

19  would in any way restrict Salazar's preparation for the arbitration hearing. Furthermore, paragraph

20  15.1 of the EDRP makes clear that the requirement of confidentiality does **not** apply to a response to

21  "legal process," thus permitting third parties (*e.g.,* those involved in subsequent arbitrations) to

22  obtain by subpoena information related to the arbitration. The EDRP's limited confidentiality

23  provision, therefore, does not run afoul of the concerns raised by the court in *Davis.* (Moreover, the

24  plain difference in the language of the EDRP's confidentiality provision and the language of the

25  provision in *Davis* belies Salazar's speculation that the EDRP was drafted by O'Melveny & Myers.)

26          B.      Salazar's complaint regarding the steps to be taken before initiating an

27  arbitration proceeding under the EDRP is without merit. He cites no authority supporting his

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

12

1    suggestion that such a requirement renders an arbitration agreement unconscionable.  The steps to

2    which Salazar refers are pre-arbitration reviews designed to determine whether the dispute can be

3    resolved without the need for arbitration.  These are akin to the ADR procedures utilized by the

4    courts.  There can be no reasonable claim that such procedures, which are obviously intended to

5    promote the resolution of disputes without resort to legal process, are unconscionable.

    C. The exclusions from arbitration that Salazar references were described in

7    paragraph 6 above.  As mentioned in that paragraph, these exclusions benefit the employee, not

8    Bally.  Thus, they cannot support a finding of unconscionability.

    D. Salazar's complaint regarding the purported one-year notice of claim period is

10   unavailing.  The EDRP does not provide that all claims must be brought within one year.  In fact, it

11   expressly provides that with respect to claims arising from any state or federal statute, "that statute's

12   limitations period shall apply."  EDRP, ¶ 4.1.  Each of the claims asserted by Salazar in this action

13   expressly arises from California's statutes.  Thus, Salazar has no basis to assert that the EDRP's

14   notice period is unconscionable.  Assuming, *arguendo,* that it were unconscionable, that provision

15   could be severed without doing violence to the balance of the EDRP.  Severance of this discrete

16   provision is expressly authorized by California Civil Code Section 1670.5(a) ("If the court as a

17   matter of law finds the contract or any clause of the contract to have been unconscionable at the time

18   it was made the court … may enforce the remainder of the contract without the unconscionable

19   clause, or it may so limit the application of any unconscionable clause as to avoid any

20   unconscionable result").  Courts, in fact, have exercised their authority under this statute to sever

21   unconscionable provisions so as not to "throw the baby out with the bath water…."  *Bolter v.*

22   *Superior Court,* 87 Cal. App. 4th 900, 910 (2001).  The EDRP, itself, likewise authorizes the court to

23   sever provisions deemed to be unenforceable.  *See* EDRP, ¶ 21.3.

24     Salazar raises an additional extraneous claim that likewise fails to establish that the EDRP is

25   unconscionable.  He claims that "[t]he class action waiver provision is contained in a handbook of

26   many other terms and conditions of employment …."  *See* Opposition, p. 6, lns. 23-24.  This is

27   incorrect.  The class action waiver is contained in the EDRP, an agreement dedicated to one subject

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

13

and one subject alone – the exclusive remedy of arbitration with regard to all disputes arising out of the employment relationship.

Each of Salazar's efforts to establish that the EDRP is unconscionable thus fails. His efforts are futile. As demonstrated in Bally's moving papers, the California Supreme Court in *Armendariz, supra,* identified five factors that, if present, would warrant enforcement of an arbitration agreement in the employment context. 24 Cal. 4th at 102, 105. As further demonstrated in Bally's moving papers, each of those five factors is present in this case. *See* EDRP ¶¶ 8.1-8.3 (neutral arbitrator); 10.3, 10.5 (discovery); 17.2 (written award); 19.1 (all available remedies); 16.1 (employer bears arbitration costs). Salazar has not and cannot refute any of these factors. He simply has not sustained his burden of proving that the EDRP and its class action waiver are unconscionable. This motion, therefore, should be granted.

## V.    CONCLUSION

For the foregoing reasons and the reasons asserted in Bally's moving papers, and based on the undisputed evidence before this Court, Bally respectfully requests that Salazar be compelled to submit his claims to the EDRP for resolution on an individual basis and that he be expressly precluded from raising any claim on behalf of any other Bally employee. Bally further requests that the instant action be stayed until after the completion of such arbitration.


Dated:  August 1, 2008                              WINSTON & STRAWN LLP


                                                    By:    /s/
                                                           Paul J. Coady
                                                           Attorneys for Defendant
                                                           BALLY TOTAL FITNESS
                                                           CORPORATION

LA:219477.2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Exhibit A

Westlaw.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

Page 1

Wigginton v. Dell, Inc.
Ill.App. 5 Dist.,2008.
Only the Westlaw citation is currently available.
Appellate Court of Illinois,Fifth District.
Stephen R. WIGGINTON and Weilmuenster &
Wigginton, P.C., Individually and on Behalf of
Others Similarly Situated, Plaintiffs-Appellees,
v.
DELL, INC., f/k/a Dell Computer Corporation,
Defendant-Appellant.
**No. 5-07-0076.**

Rule 23 Order Filed April 25, 2008.
Motion to Publish Granted June 2, 2008.
Opinion Filed June 2, 2008.

**Background:** Computer purchaser brought purported
class action against manufacturer arising out of
manufacturer's alleged failure to honor a rebate it
offered to customers. On manufacturer's motion to
compel arbitration, the Circuit Court, St. Clair
County, Lloyd A. Cueto, J., struck portion of
arbitration provision barring class arbitration, and
compelled arbitration. Manufacturer appealed.

**Holdings:** The Appellate Court, Chapman, J., held
that:
(1) terms and conditions applicable to customer's
purchase were procedurally unconscionable;
(2) portion of arbitration provision that barred class
arbitration was substantively unconscionable; and
(3) portion of arbitration provision that barred class
arbitration was severable.

Affirmed.

**[1] Contracts 95 ☜1**

95 Contracts
95I Requisites and Validity
95I(A) Nature and Essentials in General
95k1 k. Nature and Grounds of Contractual
Obligation. Most Cited Cases
Under Texas and Illinois law, there are two
components to unconscionability: procedural and
substantive.

**[2] Contracts 95 ☜1**

95 Contracts
95I Requisites and Validity
95I(A) Nature and Essentials in General
95k1 k. Nature and Grounds of Contractual
Obligation. Most Cited Cases
"Procedural unconscionability" relates to the
circumstances surrounding the formation of the
contract, while "substantive unconscionability" deals
with the unfairness of the provision itself.

**[3] Alternative Dispute Resolution 25T ☜134(6)**

25T Alternative Dispute Resolution
25TII Arbitration
25TII(B) Agreements to Arbitrate
25Tk131 Requisites and Validity
25Tk134 Validity
25Tk134(6) k. Unconscionability.
Most Cited Cases
Terms and conditions applicable to customer's
purchase of computers from manufacturer, which
contained an arbitration provision that barred class
claims, were procedurally unconscionable, even if
customer was entitled to return computers for full
refund if he did not wish to be subject to the terms
and conditions; customer made purchase over the
telephone without being able to see a copy of the
terms and conditions, and customer had no power or
ability to change the terms of the contract.

**[4] Contracts 95 ☜1**

95 Contracts
95I Requisites and Validity
95I(A) Nature and Essentials in General
95k1 k. Nature and Grounds of Contractual
Obligation. Most Cited Cases
Under Texas law, a "contract of adhesion" is a
contract that is offered on a take-it-or-leave-it basis
to a party who has no bargaining power and no ability
to change the terms of the contract.

**[5] Alternative Dispute Resolution 25T ☜134(6)**

25T Alternative Dispute Resolution

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

25TII Arbitration
  25TII(B) Agreements to Arbitrate
    25Tk131 Requisites and Validity
      25Tk134 Validity
        25Tk134(6)  k.  Unconscionability.
Most Cited Cases

**Alternative Dispute Resolution 25T ☞210**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(D) Performance, Breach, Enforcement, and Contest
      25Tk204 Remedies and Proceedings for Enforcement in General
        25Tk210  k.  Evidence.  Most Cited Cases
Policy in favor of enforcing arbitration agreements does not mean that an arbitration clause can never be found unenforceable based solely on procedural unconscionability; it means only that court will resolve doubts in favor of enforceability.

**[6] Alternative Dispute Resolution 25T ☞134(1)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity
        25Tk134 Validity
          25Tk134(1)  k.  In General.  Most Cited Cases
Policy in favor of enforcing arbitration agreements does not extend to complete prohibitions on the class treatment of disputes that happen to be contained in arbitration agreements.

**[7] Alternative Dispute Resolution 25T ☞134(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity
        25Tk134 Validity
          25Tk134(6)  k.  Unconscionability.
Most Cited Cases
Although a finding of procedural unconscionability can be sufficient to render an arbitration provision unenforceable, unconscionability can be procedural, substantive, or a combination of both.

**[8] Alternative Dispute Resolution 25T ☞134(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity
        25Tk134 Validity
          25Tk134(6)  k.  Unconscionability.
Most Cited Cases
In determining whether the cost of vindicating a claim individually is prohibitively expensive, so as to render a bar on arbitration of class claims substantively unconscionable, court must consider both the arbitration fees and the attorney fees, unless the claim is one that would be easy for the average consumer to recognize and successfully arbitrate without representation; the inquiry is whether, in light of these costs and the potential recovery, the plaintiff can be made whole.

**[9] Alternative Dispute Resolution 25T ☞134(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity
        25Tk134 Validity
          25Tk134(6)  k.  Unconscionability.
Most Cited Cases
Portion of arbitration provision in computer manufacturer's terms and conditions that barred customer from arbitrating class claims violated Illinois public policy and, thus, was substantively unconscionable; cost on vindicating an individual claim would likely exceed the potential recovery for most if not all potential class members in the state.

**[10] Alternative Dispute Resolution 25T ☞140**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk140 k. Severability. Most Cited Cases
Portion of arbitration provision in computer manufacturer's terms and conditions that barred arbitration of class claims was severable from remainder of provision, and thus remainder of provision could be enforced despite the unconscionability of the prohibition on class

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

arbitration, even though rules of the particular forum selected in the contract also did not permit class arbitration; submission of dispute to a different forum if chosen forum was unwilling to alter its rules would not undermine provision's goal of arbitrating the dispute.

[11] Contracts 95 ⏦137(1)

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k135 Effect of Illegality
            95k137 Partial Illegality
               95k137(1) k. In General. Most Cited Cases
An unenforceable provision is severable unless it is so closely connected with the remainder of the contract that to enforce the valid provisions of the contract without it would be tantamount to rewriting the agreement; also relevant is whether the contract contains a severability clause.

Robert J. Bassett, Donovan, Rose, Nester & Joley, P.C., Belleville, Michael T. Brody, Jerold S. Solovy, Kathy A. Karcher, Benjamin K. Miller, Suzanne M. Courtheoux, Jenner & Block, LLP, Chicago, for Appellant.
Gail G. Renshaw, Bradley M. Lakin, Gerald R. Walters, The Lakin Law Firm, P.C., Wood River, for Appellees.
Justice CHAPMAN delivered the opinion of the court:
*1 The plaintiff, Stephen R. Wigginton, filed a class action, alleging that the defendant, Dell, Inc. (Dell), refused to honor rebates that it offered its customers to induce them to purchase computer equipment from Dell. The defendant filed a motion to compel arbitration. The court found that a prohibition on class arbitration contained in the defendant's arbitration clause was unenforceable, and it entered an order striking that prohibition and compelling arbitration. The defendant appeals, arguing that the arbitration clause in the parties' agreement is not severable and is enforceable in its entirety. We affirm.

On December 17, 2002, the plaintiff purchased $4,535.67 in computer equipment for his law firm. He was offered a $500 rebate on the equipment,

which could be redeemed after the purchase. According to the plaintiff, he made several attempts to obtain the forms necessary to claim the rebates, both by calling Dell and by attempting to download the forms from Dell's Web site. He alleges that he was not able to obtain the forms for several months. When he submitted the rebate forms, the claim was rejected on the basis that the eligibility period had expired. According to the plaintiff, he was never told that there was a limitation on the period of eligibility to claim the rebate.

On July 22, 2003, the plaintiff filed his original complaint in this matter. On September 22, the defendant filed its first motion to dismiss or, in the alternative, to compel arbitration and stay litigation pending arbitration. The defendant pointed to its terms and conditions of sale, which contain a provision that all disputes or claims against Dell are subject to binding arbitration, to be administered by the National Arbitration Forum. The arbitration clause further provides that "arbitration will be limited solely to the dispute or controversy between Customer and Dell." The terms and conditions also include a choice-of-law provision making disputes subject to Texas law.

On March 31, 2004, with the defendant's motion still pending, the plaintiff filed a first amended complaint, adding his law firm as a plaintiff. On May 7, 2004, the defendant filed a new motion to dismiss the amended complaint or, in the alternative, to compel arbitration and stay litigation pending arbitration.

On December 19, 2006, the court held a hearing in the matter. Prior to that time, both parties had submitted briefs in support of their positions. Although the plaintiff initially argued that the arbitration clause was unconscionable in its entirety, before the hearing he conceded that the dispute was subject to arbitration, but he argued that the prohibition on class arbitration was unconscionable. On January 11, 2007, the trial court entered an order striking the class arbitration prohibition and compelling arbitration. The court found that the class prohibition was unconscionable. On February 9, 2007, the defendant filed this interlocutory appeal pursuant to Supreme Court Rule 307(a) (188Ill.2dR. 307(a)).

*2 As the defendant correctly contends, this court has

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

applied Texas law to the same provision as the one at issue here and found it to be enforceable, in *Hubbert v. Dell Corp., 359 Ill.App.3d 976, 296 Ill.Dec. 258, 835 N.E.2d 113 (2005)*. We emphasize that, while the *provision* involved here is identical to the provision involved in *Hubbert,* the *circumstances* surrounding the formation of the contract in the instant case differ greatly from those in *Hubbert.* This distinction is significant for reasons we will explain in detail later. Moreover, in deciding to apply Texas law in *Hubbert,* we explained that we will only apply the law of another state pursuant to a choice-of-law provision if (1) there is some relationship between that state and the controversy at issue and (2) applying the other state's law does not violate the public policy of this state. *Hubbert,* 359 Ill.App.3d at 982, 296 Ill.Dec. 258, 835 N.E.2d at 120 (citing *Potomac Leasing Co. v. Chuck's Pub. Inc.,* 156 Ill.App.3d 755, 758-59, 109 Ill.Dec. 90, 509 N.E.2d 751, 753-54 (1987)). In *Hubbert,* we found no public policy reason not to apply Texas law. *Hubbert,* 359 Ill.App.3d at 982, 296 Ill.Dec. 258, 835 N.E.2d at 120. This conclusion has been undermined by subsequent decisions of the Illinois Supreme Court.

In *Kinkel v. Cingular Wireless, LLC,* 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250 (2006), the supreme court found a class arbitration prohibition similar to the one here at issue to be unconscionable. This holding presents a conflict between Illinois law and Texas law that did not exist when we decided *Hubbert.* See *Hubbert,* 359 Ill.App.3d at 982, 296 Ill.Dec. 258, 835 N.E.2d at 120 (noting that the result would be similar under the law of either state). For reasons we will explain, we find that it would violate the public policy of this state to enforce the provision at issue, even assuming it would be enforceable under Texas law. First, however, we turn to the impact of the differing circumstances surrounding the contract formation here and in *Hubbert.*

[1][2] Under Texas law, as under Illinois law, there are two components to unconscionability-procedural and substantive. *Hubbert,* 359 Ill.App.3d at 986, 296 Ill.Dec. 258, 835 N.E.2d at 123 (citing *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 198 (Tex.App.2003)). Procedural unconscionability relates to the circumstances surrounding the formation of the contract, while substantive unconscionability deals with the unfairness of the provision itself. *Hubbert,* 359 Ill.App.3d at 986, 296

Ill.Dec. 258, 835 N.E.2d at 123 (citing *AutoNation USA Corp.,* 105 S.W.3d at 198). When this court decided *Hubbert,* our precedents required us to find both procedural and substantive unconscionability in order to conclude that a provision was unconscionable. See *Zobrist v. Verizon Wireless,* 354 Ill.App.3d 1139, 1147, 290 Ill.Dec. 946, 822 N.E.2d 531, 540 (2004). Subsequently, the supreme court rejected this requirement, holding that unconscionability may be *either* procedural *or* substantive; although it can be a combination of the two types, it does not need to include both. *Kinkel,* 223 Ill.2d at 21, 306 Ill.Dec. 157, 857 N.E.2d at 263 (citing *Razor v. Hyundai Motor America,* 222 Ill.2d 75, 99, 305 Ill.Dec. 15, 854 N.E.2d 607, 622 (2006)). It is less clear whether Texas courts will likewise invalidate a provision on the basis of either substantive unconscionability or procedural unconscionability alone. See *In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex.2002) (holding that Texas courts "*may* consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of the arbitration provision" (emphasis added)). Our research has revealed no Texas case that squarely addresses the issue as the supreme court did in *Razor* and *Kinkel.* We note, however, that at least one Texas appeals court has found contract provisions to be unenforceable after it had addressed only procedural unconscionability. *In re Brookshire Brothers, Ltd.,* 198 S.W.3d 381, 387 (Tex.App.2006); *In re Turner Brothers Trucking Co.,* 8 S.W.3d 370, 377 (Tex.App.1999).

**\*3** [3] As previously mentioned, we found that the contract at issue was not procedurally unconscionable in *Hubbert.* However, we find the circumstances surrounding contract formation sufficiently different to warrant a different conclusion in the instant case. In *Hubbert,* we emphasized the fact that the plaintiffs there had purchased their computer systems from Dell online. To do so, they had to go to five different pages within Dell's Web site. A blue hyperlink leading online purchasers to the purchase agreement appeared at the top of each page. *Hubbert,* 359 Ill.App.3d at 979, 296 Ill.Dec. 258, 835 N.E.2d at 118. In addition, on three of these pages, a statement appeared informing customers purchasing online that " '[a]ll sales are subject to Dell's Term[s] and Conditions of Sale.' " *Hubbert,* 359 Ill.App.3d at 984, 296 Ill.Dec. 258, 835 N.E.2d at 121-22. We found that this was sufficient to put consumers on notice that there were terms and conditions that they should

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

inquire about before completing the purchase. *Hubbert,* 359 Ill.App.3d at 984, 296 Ill.Dec. 258, 835 N.E.2d at 122.

Further, the hyperlinks leading online purchasers to the terms and conditions appeared in a "contrasting blue color." *Hubbert,* 359 Ill.App.3d at 987, 296 Ill.Dec. 258, 835 N.E.2d at 124.Once a customer clicked on the hyperlink to view the terms and conditions, he or she would see a notice at the top of the agreement stating in bold, capital letters that the purchase agreement included a dispute-resolution clause. *Hubbert,* 359 Ill.App.3d at 987, 296 Ill.Dec. 258, 835 N.E.2d at 124.The arbitration clause itself appeared partially in all-capital letters, thereby drawing attention to itself. Under all of these circumstances, we found the provision to be conspicuous. *Hubbert,* 359 Ill.App.3d at 987, 296 Ill.Dec. 258, 835 N.E.2d at 124.Although, as we noted, conspicuity is not required under either Texas law or Illinois law (*Hubbert,* 359 Ill.App.3d at 986-87, 296 Ill.Dec. 258, 835 N.E.2d at 124 (citing *AutoNation USA Corp.,* 105 S.W.3d at 199)), it is a factor to be considered in determining whether a contract is procedurally unconscionable (see *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 990, 42 Ill.Dec. 25, 408 N.E.2d 403, 410 (1980) (explaining that the conspicuousness of a contract provision is an "important, albeit not conclusive [,] factor[ ]")).

In the case before us, by contrast, the plaintiff purchased his computer over the telephone. Unlike the plaintiffs in *Hubbert,* he did not go through a series of five steps during which he was repeatedly alerted to the fact that the purchase would be subject to terms and conditions that he could easily discover by clicking on a link. Unlike the plaintiffs in *Hubbert,* he did not see the terms and conditions until after he had purchased the computer systems.

We note that there is conflicting evidence regarding whether the plaintiff ever saw the terms and conditions at all. The defendant presented an affidavit in which one of its attorneys averred that Dell's policy was to include the terms and conditions of sale in the packaging for all equipment shipped to customers. Also included was Dell's total-satisfaction return policy, which provided that consumers could return the equipment for a full refund within 30 days if they were dissatisfied or did not wish to be subject

to the terms and conditions of the sale. The plaintiff alleges that the terms and conditions were not included with the equipment he ordered.

**\*4** The trial court did not resolve this conflict, and we do not believe that it was necessary for the court to do so. Accepting the defendant's version of events, there is no evidence whatsoever to suggest that the plaintiff had seen the terms and conditions of the sale prior to purchasing the computer equipment. This puts him on very different footing from consumers who purchase equipment online. Returning equipment after selecting, ordering, and paying for the equipment and waiting for it to be shipped is far more onerous than choosing to purchase equipment from a different supplier before making the purchase. This is precisely the type of unfair surprise that will lead to a finding of procedural unconscionability. See *Razor,* 222 Ill.2d at 100-02, 305 Ill.Dec. 15, 854 N.E.2d at 623 (finding a warranty provision procedurally unconscionable where it was contained in the owner's manual of the car, unavailable to the consumer until she drove the car away from the dealer).

[4] In sum, the circumstances that made the provision conspicuous and obvious to the plaintiffs in *Hubbert* prior to making their purchases are not present in the instant case. Although this fact, standing alone, does not automatically render the provision unconscionable, we are also dealing here with a contract of adhesion. Under Texas law, a contract of adhesion is a contract that is offered on a take-it-or-leave-it basis to a party who has no bargaining power and no ability to change the terms of the contract. *In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 371 n. 8 (Tex.App.2000). Illinois's definition is similar. See *Williams v. Illinois State Scholarship Comm'n,* 139 Ill.2d 24, 72, 150 Ill.Dec. 578, 563 N.E.2d 465, 487 (1990). This combination of unfair surprise and the lack of the ability to bargain over the terms of the contract leads us to conclude that the contract formed between the plaintiff and Dell in the instant case was at least somewhat procedurally unconscionable. See *Bess v. DirecTV, Inc.,* 381 Ill.App.3d 229, 239-41, 319 Ill.Dec. 217, 885 N.E.2d 488, 497-98 (2008) (finding that a provision in a form contract offered to a consumer after she ordered services from a satellite television provider demonstrated at least "a degree of procedural unconscionability," despite finding the provision enforceable).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

This conclusion does not end our inquiry. For one thing, it is not clear whether procedural unconscionability, standing alone, is sufficient to invalidate a contract provision under Texas law. Moreover, under Illinois law, a contract or provision may involve some degree of procedural unconscionability, but that may not be sufficient to render it unenforceable. In *Bess,* for example, a panel of this court found an arbitration provision presented to a consumer retroactively to be procedurally unconscionable, but it went on to conclude that the degree of procedural unconscionability was not sufficient to render the provision unenforceable without more. *Bess,* 381 Ill.App.3d at 238-39, 319 Ill.Dec. 217, 885 N.E.2d at 496.

**\*5** [5][6] In reaching this conclusion, the *Bess* court pointed to the policy in favor of enforcing arbitration agreements. *Bess,* 381 Ill.App.3d at 239-40, 319 Ill.Dec. 217, 885 N.E.2d at 497.We emphasize here that our policy in favor of enforcing arbitration agreements does not mean that an arbitration clause can never be found unenforceable based solely on procedural unconscionability. It means only that we resolve doubts in favor of enforceability. See *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 181 Ill.2d 373, 383, 230 Ill.Dec. 1, 692 N.E.2d 1167, 1172 (1998). We also emphasize that our policy in favor of enforcing arbitration agreements does not extend to complete prohibitions on the class treatment of disputes that happen to be contained in arbitration agreements. Thus, we are far more inclined to resolve any doubts regarding the procedural unconscionability in favor of the consumer in this case.

[7] The *Bess* court went on to analyze the consumer plaintiff's argument that the agreement was substantively unconscionable. There, unlike here, the provision permitted class arbitration, and there, unlike here, the contract provided that if the fee for class arbitration exceeded the filing fee applicable to bringing a similar action in court, the defendant would pay the excess. *Bess,* 381 Ill.App.3d at 243-45, 319 Ill.Dec. 217, 885 N.E.2d at 500-01.The court thus found no substantive unconscionability. *Bess,* 381 Ill.App.3d at 244-45, 319 Ill.Dec. 217, 885 N.E.2d at 501.This case differs from *Bess* in both respects. Although a finding of procedural unconscionability *can* be sufficient to render a

provision unenforceable, as previously noted, unconscionability can be procedural, substantive, *or a combination of both. Razor,* 222 Ill.2d at 99, 305 Ill.Dec. 15, 854 N.E.2d at 622.We thus consider the parties' arguments regarding substantive unconscionability. For the reasons that follow, we find that the combination of procedural and substantive unconscionability present here is enough to render the prohibition on class arbitration unenforceable.

We first acknowledge that, as we have already mentioned, we found that the provision here at issue was not substantively unconscionable under Texas law in *Hubbert.* The defendant argues that *Hubbert* controls our decision here. The plaintiff, however, asks us to reconsider our holding in *Hubbert.* He advances two principal arguments in support of his position. First, the plaintiff argues that our interpretation of Texas law in *Hubbert* was incorrect. Specifically, he contends that the Texas court that decided *AutoNation USA Corp.,* the case we relied on in reaching our conclusion, expressly declined to decide the precise issue before us. Second, he argues that in light of our supreme court's subsequent holding in *Kinkel,* enforcing the provision at issue would violate the public policy of Illinois even assuming it would be enforced under Texas law. We address these arguments in turn.

It is true, as the plaintiff contends, that the *AutoNation USA Corp.* court expressly noted that the plaintiff there did not claim that the provision at issue in that case prevented her from pursuing her claim using class arbitration. *AutoNation USA Corp.,* 105 S.W.3d at 200 n. 4. However, the court also found that her argument that the cost of individual arbitration would discourage consumers from pursuing claims for small amounts of damages to be a "generalization[ ] [that did] not satisfy her burden" of demonstrating unconscionability. *AutoNation USA Corp.,* 105 S.W.3d at 200.Although the *AutoNation USA Corp.* court acknowledged that "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness" that would support a finding of substantive unconscionability (*AutoNation USA Corp.,* 105 S.W.3d at 200), we find no significant difference between the arguments rejected in *AutoNation USA Corp.* and those raised either in *Hubbert* or in this case. We need not determine

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

whether our application of Texas law in *Hubbert* was correct, however, because we agree with the plaintiff that it would violate the public policy of this state to enforce a contract that is unconscionable under Illinois law under the circumstances of this case.

**\*6** In *Kinkel,* the supreme court adopted the following definition of substantive unconscionability:

" 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.'"*Kinkel,* 223 Ill.2d at 28, 306 Ill.Dec. 157, 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Financial Services, Inc.,* 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995)).

The court applied this definition to a prohibition on class arbitration and found it to be unconscionable. *Kinkel,* 223 Ill.2d at 42, 306 Ill.Dec. 157, 857 N.E.2d at 274.

As the defendant correctly points out, the court did not find class arbitration waivers to be *per se* unenforceable. *Kinkel,* 223 Ill.2d at 38, 306 Ill.Dec. 157, 857 N.E.2d at 273.Rather, the court held that the determination must be made on a case-by-case basis, considering such circumstances as "the fairness and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the claim relative to the amount of damages that might be awarded."*Kinkel,* 223 Ill.2d at 42-43, 306 Ill.Dec. 157, 857 N.E.2d at 275 (citing *Maxwell,* 184 Ariz. at 89, 907 P.2d at 58). Additional circumstances to consider include whether the contract is one of adhesion, whether the cost of arbitration is disclosed in the contract (*Kinkel,* 223 Ill.2d at 42, 306 Ill.Dec. 157, 857 N.E.2d at 274-75), and whether the underlying claim is the type of claim the average consumer would be aware of (*Kinkel,* 223 Ill.2d at 29-30, 306 Ill.Dec. 157, 857 N.E.2d at 267-68).

The instant case involves a contract of adhesion that was not brought to the attention of the consumer until after he had completed the purchase. The cost of arbitrating a claim is not disclosed in the contract. On its face, the provision requires only that "any claim, dispute[,] or controversy \* \* \* *against Dell* " is subject to mandatory arbitration (emphasis added). All of these factors weigh in favor of a finding of unconscionability.

[8] In determining whether the cost of vindicating a claim individually is prohibitively expensive, we must consider both the arbitration fees and the attorney fees, unless the claim is one that would be easy for the average consumer to recognize and successfully arbitrate without representation. The inquiry is whether, in light of these costs and the potential recovery, the plaintiff can be made whole. *Kinkel,* 223 Ill.2d at 29-30, 306 Ill.Dec. 157, 857 N.E.2d at 268.Here, the plaintiff asserted causes of action for a breach of contract, unjust enrichment, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)). These are not the types of claims the average consumer would be able to arbitrate successfully without the aid of an attorney.

**\*7** [9] It is important to note that the Consumer Fraud Act provides Illinois residents with both the right to proceed as a class representative and the right to be a member of a plaintiff class. See *Kinkel,* 223 Ill.2d at 35, 306 Ill.Dec. 157, 857 N.E.2d at 271 (explaining that Illinois consumers lose their statutory right "to be either the representative or a member of a class" if a class arbitration waiver is enforced). Thus, it is not only the plaintiff's ability to vindicate his claim we are concerned with here; it is the right of all potential Illinois class members. The plaintiff alleges in his complaint that he was promised $500 in rebates that the defendant refused to honor. He alleges that he purchased two computers, each of which carried a promised $250 rebate. The plaintiff's $500 claim is relatively small, and many class members will have claims of as little as $250. As noted, the arbitration fees are not disclosed in the contract. The record contains a copy of the National Arbitration Forum's rules and procedures, which provides that for consumer claims of under $2,500, the consumer must pay a filing fee of $25 and half of the $150 fee for a hearing. This amounts to a total of $100. Add to that the attorney fees and the cost of obtaining necessary evidence, and the cost of vindicating a claim is likely to exceed the potential recovery for most if not all potential

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)
**2008 WL 2267173 (Ill.App. 5 Dist.)**

Illinois class members. We thus conclude that enforcing the class arbitration waiver against Illinois consumers violates the public policy of this state. We note that we do not purport to determine whether applying the bar on class arbitration to non-Illinois consumers would likewise violate the public policy of other states. We hold only that the Illinois plaintiff cannot be prevented from seeking to arbitrate his claim as the representative of a class and that Illinois consumers cannot be prevented from being members of that class.

We next turn to the defendant's contention that the court erred in severing the prohibition on class arbitration from the remainder of the arbitration provision. We first note that, were we to accept this argument, it would not help the defendant's position. Having found the prohibition on class arbitration to be unconscionable, we will enforce the remainder of the arbitration provision only if it can be severed from the unenforceable portion of the provision. To hold otherwise would mean that courts must enforce unconscionable provisions as long as they are contained within otherwise-enforceable clauses. This would be a ludicrous result and would undermine the doctrine of unconscionability.

[10][11] In any event, we agree with the plaintiff that the prohibition on class arbitration can be severed from the remainder of the arbitration clause so that the remainder of the clause can be enforced. An unenforceable provision is severable unless it is "so closely connected" with the remainder of the contract that to enforce the valid provisions of the contract without it "would be tantamount to rewriting the [a]greement."*Abbott-Interfast Corp. v. Harkabus, 250 Ill.App.3d 13, 21, 189 Ill.Dec. 288, 619 N.E.2d 1337, 1344 (1993).* Also relevant is whether the contract contains a severability clause. *Harkabus, 250 Ill.App.3d at 21, 189 Ill.Dec. 288, 619 N.E.2d at 1343.*In the instant case, there is no severability clause, but we do not find this fact dispositive. The main goal of an arbitration clause is to choose an arbitral forum over a judicial forum. This goal can be met with or without the class arbitration bar.

*8 The defendant argues, however, that because the rules of the National Arbitration Forum, the forum selected in the contract, do not permit class arbitrations, enforcing the remainder of the clause without the prohibition would require the defendant's

chosen forum to alter its rules or else it would require the parties to submit the dispute to a different forum. Assuming the defendant's forum is only willing or able to arbitrate claims on an individual basis, we do not find that submitting the dispute to a different arbitral forum would undermine the goal of arbitrating the claim.

This court has found that where a portion of an arbitration clause is found to be unconscionable, Illinois's strong policy in favor of enforcing arbitration agreements is best served by severing the unconscionable provision and enforcing the remainder of the arbitration clause. *Kinkel v. Cingular Wireless, LLC,* 357 Ill.App.3d 556, 569, 293 Ill.Dec. 502, 828 N.E.2d 812, 823-24 (2005)*aff'd,*223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250 (2006). This is because the courts are still testing the bounds of mandatory arbitration agreements. Given this state of flux, to invalidate entire arbitration agreements every time a minor provision is found to be unenforceable would undermine this policy. *Kinkel,* 357 Ill.App.3d at 569, 293 Ill.Dec. 502, 828 N.E.2d at 824 (relying on *Spinetti v. Service Corp. International,* 324 F.3d 212, 220-21 (3d Cir.2003) (relying on *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 682 (8th Cir.2001))).

For these reasons, we affirm the order of the trial court.

Affirmed.

STEWART, P.J., and DONOVAN, J., concur.
Ill.App. 5 Dist.,2008.
Wigginton v. Dell, Inc.
--- N.E.2d ----, 2008 WL 2267173 (Ill.App. 5 Dist.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Exhibit B

# THIERMAN LAW FIRM, P.C.

CALIFORNIA AND NEVADA LABOR RELATIONS AND EMPLOYMENT LAW
7287 LAKESIDE DRIVE
RENO, NEVADA 89511
(775) 284-1500 OR (877) 99-LABOR
(775) 703-5027 OR (415) 723-7078 FAX
email: laborlawyer@pacbell.net
www.laborlawyer.net

November 15, 2005

CERTIFIED MAIL
Return Receipt Requested

California Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814

Re:    **Francisco E. Salazar Jr. v. Bally Total Fitness Corporation, Gorilla Sports, Pinnacle Fitness and Crunch Fitness**

Dear People:

This office represents the class of non-exempt managers employed by Bally Total Fitness Corporation, a Delaware Corporation, doing business in California with its main offices located at 8700 West Bryn Mawr Avenue, Chicago, Illinois 60631; Gorilla Sports, a California Corporation with its main offices located at 3476 Blackhawk Plaza Circle, Danville, California 94506; Pinnacle Fitness, a California Corporation with its main offices located at 110 Brooks Court, Simi Valley, California 93065; and Crunch Fitness, a Delaware Corporation, doing business in California with its main offices located at 8700 West Bryn Mawr Avenue, Chicago, Illinois 60631. Bally Total Fitness Corporation, Gorilla Sports, Pinnacle Fitness and Crunch Fitness are corporations and commercial operators of fitness centers in California and throughout the United States and Canada.

Pursuant to the provisions of Labor Code Section 2699.3, the non-exempt managers will seek reimbursement for checks issued by Bally Total Fitness Corporation, Gorilla Sports, Pinnacle Fitness and Crunch Fitness by an out of state bank with no in state address for presentation at no cost in violation of Labor Code Section 212. The complaint will also allege illegal chargebacks taken out of the non-exempt managers' wages in violation of Labor Code Sections 221, 223, 225 & 400-410.

As required by law, please respond to this letter within 30 days, or in the alternative, we will commence to file the class action suit.

Very truly yours,

THIERMAN LAW FIRM

MARK R. THIERMAN

Exhibit C



**THIERMAN LAW FIRM, P.C.**
CALIFORNIA AND NEVADA LABOR RELATIONS AND EMPLOYMENT LAW
7287 LAKESIDE DRIVE
RENO, NEVADA 89511
(775) 284-1500 OR (877) 99-LABOR
(775) 703-5027 OR (775) 284-1506 FAX
email: laborlawyer@pacbell.net
www.laborlawyer.net

May 19, 2006

**CERTIFIED MAIL**
Return Receipt Requested

California Labor & Workforce Development Agency
801 K Street Suite 2101
Sacramento, CA 95814

    Re:    **Francisco E. Salazar Jr. v. Bally Total Fitness Corporation, Gorilla Sports, Pinnacle Fitness and Crunch Fitness**

Dear Sir/Madam:

On November 15, 2005, we forwarded you the enclosed letter indicating our intention to commence with a class action suit against the above named. On November 28, 2005, you advised us that our letter was forwarded to the LWDA for their review. On December 20, 2005, you advised us that the LWDA "did not intend to investigate the allegations" (copies enclosed).

Bally's has indicated that our letter was never received by their offices. At this point in time, rather than argue the point, we will resubmit the matter. Balley's also now maintains they would have cashed the employee's check the company's main offices in Norwalk, California. Balley's never told any of their employees that they could have the company cash the check in Norwalk. Even the Norwalk employees are paid with out of state checks.

///

///

///

Please consider the enclosed copy of our November 15, 2005 letter a second attempt to comply with all notice provisions of Labor Code 2699.

Very truly yours,

Mark R. Thierman

MRT/lm
Cc:    **Certified Mail**
       Bally Total Fitness Corporation

       **Certified Mail**
       Gorilla Sports

       **Certified Mail**
       Pinnacle Fitness

       **Certified Mail**
       Crunch Fitness

Exhibit D

# Labor & Workforce Development Agency

December 20, 2005

Mark R. Thierman
Thierman Law Firm, P.C.
7287 Lakeside Drive
Reno, NV 89511

C.T. Corporation System
Agent for Service of Process for
Bally Total Fitness Corporation/Crunch Fitness Internation, Inc.
818 West 7th Street
Los Angeles, CA 90017

B. Gene Campbell                                    Vaughan Kastor
Agent for Service of Process for Gorilla Sports, Inc.    Agent for Service of Process
3476 Blackhawk Plaza CIR.                          For Pinnacle Fitness Corp.
Danville, CA 94506                                  110 Brooks Ct.
                                                   Simi Valley, CA 93065

Re:     LWDA No: 979
        Employer: Bally Total Fitness Corporation, et al.
        Employee: Francisco E. Salazar Jr.

Dear Employer and Representative of the Employee:

This is to inform you that the Labor and Workforce Development Agency (LWDA) received your notice of alleged Labor Code violations pursuant to Labor Code Section 2699, November 16, 2005 and after review, does not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "...civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the LWDA for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code". Labor Code Section 2699(l) specifies "[T]he superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part".

Consequently you must advise us of the results of the litigation, and forward a copy of the court judgment or the court-approved settlement agreement.

Sincerely,

José H. Millan
Deputy Secretary Enforcement

Governor
Arnold
Schwarzenegger

Secretary
Victoria L. Bradshaw

Agricultural
Labor
Relations
Board

California
Unemployment
Insurance
Appeals
Board

California
Workforce
Investment
Board

Department of
Industrial
Relations

Economic
Strategy
Panel

Employment
Development
Department

Employment
Training
Panel

Exhibit E



# Labor & Workforce Development Agency

Governor
Arnold
Schwarzenegger

Secretary
Victoria L. Bradshaw

Agricultural
Labor
Relations
Board

California
Unemployment
Insurance
Appeals
Board

California
Workforce
Investment
Board

Department of
Industrial
Relations

Economic
Strategy
Panel

Employment
Development
Department

Employment
Training
Panel

June 14, 2006

Mark R. Thierman
Thierman Law Firm, P.C.
7287 Lakeside drive
Reno, NV  89511

C.T. Corporation System
Agent for Service of Process for
Bally Total Fitness Corporation/Crunch Fitness International, Inc.
818 West 7th Street
Los Angeles, CA  90017

B. Gene Campbell                              Vaughan Kastor
Agent for Service of Process for Gorilla Sports, Inc.    Agent for Service of Process
3476 Blackhawk Plaza Cir.                     For Pinnacle Fitness Corp.
Danville, CA  94506                           110 Brooks Ct.
                                              Simi Valley, CA  93065

Re:  .  LWDA No: 979.1
          Employer:  Bally Total Fitness Corporation, et al.
          Employee:  Francisco E. Salazar, Jr.

Dear Employer and Representative of the Employee:

This is to inform you that the Labor and Workforce Development Agency (LWDA) received your notice of alleged Labor Code violations pursuant to Labor Code Section 2699, postmarked May 20, 2006 and after review, does not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "...civil penalties recovered by aggrieved employees shall be distributed as follows:  75 percent to the LWDA for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code".  Labor Code Section 2699(l) specifies "[T]he superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part".

Consequently you must advise us of the results of the litigation, and forward a copy of the court judgment or the court-approved settlement agreement.

Sincerely,

*Richard L Rice*

Richard L. Rice
Undersecretary

801 K Street, Suite 2101 ▪ Sacramento, California 95814 ▪ www.labor.ca.gov
(916) 327-9064 ▪ Fax  (916) 327-9158